IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| REX MEDICAL, L.P., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | C.A. No. 19-cv-00005-MN |
| v. | ) | |
| | ) | |
| INTUITIVE SURGICAL, INC., INTUITIVE SURGICAL OPERATIONS, INC. and INTUITIVE SURGICAL HOLDINGS, LLC, | ) ) | |
| | ) | |
| Defendants. | | |

**JOINT CLAIM CONSTRUCTION BRIEF**

# TABLE OF CONTENTS

**Page**

I.    AGREED UPON TERMS ....................................................................................... 1

II.   DISPUTED TERMS .............................................................................................. 1

     A.    "at least one of a gear and a cable operatively coupled to at least one of the first jaw and the second jaw and configured to move at least one of the first jaw and the second jaw from the first configuration to the second configuration" (Claim 4) ....................................................................... 1

          i.    Plaintiff's Opening Position ..................................................................... 1

              a.    Plaintiff's Proposed Construction Is Consistent with the Intrinsic Evidence, is Logical, and Gives Meaning to Each Claim Term ................................................................... 1

              b.    Defendants' Proposed Construction Is Improper Because It Renders Claim Terms Superfluous ................................................. 4

          ii.   Defendants' Answering Position ............................................................... 6

              a.    The Written Description & Intrinsic Evidence Require Construing "And" as a Conjunction Requiring Coupling and Moving Both Jaws ....................................................... 7

              b.    The Language in the Claims & the Case Law Require Construing "And" as a Conjunction ............................................... 12

          iii.  Plaintiff's Reply Position ....................................................................... 18

              a.    Intuitive removes "at least one of" from the claims ..................... 18

              b.    The case law supports Rex Medical's position ............................ 21

          iv.  Defendants' Sur-Reply Position .............................................................. 24

     B.    "the beam is configured to engage the first and second jaws one of entirely or substantially from therewithin" (Claim 5) ........................................ 27

          i.    Plaintiff's Opening Position ................................................................... 28

               a.    Defendants Do Not Propose Any Construction For This Term ........................................................................................... 28

              b.    Defendants' Indefiniteness Arguments Should be Rejected or Deferred ................................................................... 29

          ii.   Defendants' Answering Position .............................................................. 30

               a.    The Claim is Indefinite Because "Substantially" Improperly Broadens the Claimed Subject Matter ........................................... 31

**TABLE OF CONTENTS**
(continued)

|   |   | b. | The Record Shows the Only Failures to Provide Relevant Notice Are Attributable to Rex ..................................................... 34 |
|---|---|---|---|
|   | iii. | | Plaintiff's Reply Position ........................................................ 36 |
|   |   | a. | Intuitive's untimely construction of "from within" should be rejected ............................................................................. 36 |
|   |   | b. | "from within" does not mean "entirely from within".................... 37 |
|   | iv. | | Defendants' Sur-Reply Position............................................... 39 |
| C. | "staple pusher" (Claims 4, 6) ............................................................... 43 |
|   | i. | | Plaintiff's Opening Position ...................................................... 43 |
|   | ii. | | Defendants' Answering Position............................................... 45 |
|   | iii. | | Plaintiff's Reply Position ........................................................ 49 |
|   | iv. | | Defendants' Sur-Reply Position............................................... 51 |
| D. | "at least one of the lower portion or the upper portion configured to cause the staple pusher to move a staple" (Claim 6)..................................... 52 |
|   | i. | | Plaintiff's Opening Position ...................................................... 53 |
|   | ii. | | Defendants' Answering Position............................................... 53 |
|   | iii. | | Plaintiff's Reply Position ........................................................ 55 |
|   | iv. | | Defendants' Sur-Reply Position............................................... 58 |
| E. | "at least a portion of the first jaw and the second jaw is curved" (Claim 12)....... 59 |
|   | i. | | Plaintiff's Opening Position ...................................................... 59 |
|   | ii. | | Defendants' Answering Position............................................... 60 |
|   | iii. | | Plaintiff's Reply Position ........................................................ 64 |
|   | iv. | | Defendants' Sur-Reply Position............................................... 66 |

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*3M Innovative Properties Co. v. Tredegar Corp.*,
    725 F.3d 1315 (Fed. Cir. 2013) ........................................................................*passim*

*Altera Corp. v. PACT XPP Tech.*,
    No. 14-cv-02868-JD, 2015 WL 4999952 (N.D. Cal. Aug. 21, 2015)..............3, 16, 17, 22, 25

*Applied Med. Res. Corp. v. U.S. Surgical Corp.*,
    448 F.3d 1324 (Fed. Cir. 2006) .......................................................................... 38

*Baldwin Graphic Sys., Inc. v. Siebert, Inc.*,
    512 F.3d 1338 (Fed. Cir. 2008) ...............................................................17, 19, 24

*Bradley v. Applied Marine Sys.*,
    No. 13-cv-03941-JSC, 2015 WL 456548 (N.D. Cal. Feb. 2, 2015)....................................4, 16

*Brembo v. Alcon Components*,
    No. 04 C 5217, 2005 WL 1377858 (N.D. Ill. May 31, 2005)................................................. 43

*Burke, Inc. v. Bruno Independent Living Aids, Inc.*,
    183 F.3d 1334 (Fed. Cir. 1999) ......................................................45, 53, 58, 60

*CAE Screenplates Inc. v. Heinrich Fiedler GmbH*,
    224 F.3d 1308 (Fed. Cir. 2000) ....................................................................38, 39

*Chef Am., Inc. v. Lamb-Weston*,
    358 F.3d 1371 (Fed. Cir. 2004) ....................................................................13, 14

*Duncan Parking Technologies, Inc. v. IPS Group, Inc.*,
    914 F.3d 1347 (Fed. Cir. 2019) ....................................................................39, 42

*Eli Lilly & Co. v. Aradigm Corp.*,
    376 F.3d 1352 (Fed. Cir. 2004) .......................................................................... 61

*Eon Corp. IP Holdings v. Silver Spring Networks*,
    815 F.3d 1314 (Fed. Cir. 2016) .......................................................................... 46

*Fiber, LLC v. Ciena Corp.*,
    No. 13-cv-00840, 2017 WL 3896443 (D. Col. Sept. 6, 2017) ....................................4, 21, 25

*Fujifilm Corp. v. Motorola Mobility LLC*,
    No. 12–cv–03587, 2015 WL 1265009 (N.D. Cal. Mar. 19, 2015) ..............................4, 22, 25

## TABLE OF CONTENTS
(continued)

**Page**

*Helmsderfer v. Bobrick Washroom Equip., Inc.*,
527 F.3d 1379 (Fed. Cir. 2008) ....................................................................*passim*

*Hill-Rom Servs., Inc. v. Stryker Corp.*,
755 F.3d 1367 (Fed. Cir. 2014) ....................................................................*passim*

*Home Semiconductor Corp. v. Samsung Electronics Co.*,
701 F. App'x 1006 (Fed. Cir. 2017) .................................................................... 5

*Info. Tech. Innovation, LLC v. Motorola, Inc.*,
391 F. Supp. 2d 719 (N.D. Ill. 2005) .................................................................. 28

*Innova/Pure Water, Inc. v. Safari Water Filtration Sys.*,
381 F.3d 1111 (Fed. Cir. 2004) .......................................................................... 10

*Intel Corp. v. VIA Techs., Inc.*,
319 F.3d 1357 (Fed. Cir. 2003) .......................................................................... 38

*Intuitive Surgical, Inc. v. Auris Health, Inc.*,
No. 18-1359 (MN), 2019 WL 6840327 (D. Del. Dec. 16, 2019) ....................*passim*

*Inventio AG v. ThyssenKrupp Elevator Ams. Corp.*,
Civ. No. 08–874–RGA, 2014 WL 129799 (D. Del. Jan. 14. 2014) ................. 21, 25

*Joao Bock Transaction Sys., LLC v. First Nat. Bank*,
No. 11–6472, 2013 WL 3199981 (N.D. Ill. June 24, 2013) ............................ 22, 25

*Joao v. Sleepy Hollow Bank*,
348 F.Supp. 2d. 120 (S.D.N.Y. 2004) ................................................................ 17

*Johnson Worldwide Assocs. v. Zebco Corp.*,
175 F.3d 985 (Fed. Cir. 1999) .................................................................. 7, 10, 66

*Leader Techs., Inc. v. Facebook, Inc.*,
770 F. Supp. 2d 686 (D. Del. 2011), *aff'd*, 678 F.3d 1300 (Fed. Cir. 2012) .................... 28, 37

*Liebel-Flarsheim Co. v. Medrad, Inc.*,
358 F.3d 898 (Fed. Cir. 2004) .................................................................. 21, 50, 58

*Lifescan Scotland, Ltd. v. Shasta Techs., LLC*,
No. 11-CV-04494-WHO, 2014 WL 11206411 (N.D. Cal. Nov. 10, 2014) ........................... 29

**TABLE OF CONTENTS**
(continued)

Page

*Liquid Dynamics Corp. v. Vaughan Co.*,
   355 F.3d 1361 (Fed. Cir. 2004) ........................................................... 41

*Lizardtech v. Earth Resource Mapping*,
   433 F.3d 1373 (Fed. Cir. 2006) (Lourie, J., concurring) ....................... 27

*LMT Mercer Grp., Inc. v. Maine Ornamental, LLC.*,
   No. Civ. 10-4615, 2014 WL 183823 (D.N.J. Jan. 16, 2014) ................. 17

*Medgraph, Inc. v. Medtronic, Inc.*,
   843 F.3d 942 (Fed. Cir. 2016) ......................................... 6, 13, 17, 24, 25

*Merck & Co., Inc. v. Teva Pharmaceuticals USA Inc.*,
   395 F.3d 1364 (Fed. Cir. 2005) ........................................................ 5, 6

*Microsoft Corp. v. i4i Ltd., P'ship*,
   564 U.S. 91 (2011) .............................................................................. 30

*MorphoSys AG v. Janssen Biotech Inc.*,
   358 F. Supp. 3d 354 (D. Del. 2019) .................................................... 30

*Motionless Keyboard Co. v. Microsoft Corp.*,
   486 F.3d 1376 (Fed. Cir. 2007) .......................................................... 42

*Nautilus, Inc. v. Biosig Instruments, Inc.*,
   572 U.S. 898 (2014) ................................................................. 29, 30, 31

*Nystrom v. Trex Co.*,
   424 F.3d 1136 (Fed. Cir. 2005) .............................................. 7, 13, 27, 56

*O2 Micro Intern. v. Beyond Innovation Tech.*,
   521 F.3d 1351 (Fed. Cir. 2008) ............................................... 32, 45, 61

*Omega Eng'g, Inc. v. Raytek Corp.*,
   334 F.3d 1314 (Fed. Cir. 2003) .......................................................... 45

*Pfizer Inc. v. Ranbaxy Labs.*,
   457 F.3d 1284 (Fed. Cir. 2006) .......................................................... 31

*Pharmastem Therapeutics, Inc. v. Viacell, Inc.*,
   No. 02-148 GMS, 2003 WL 124149 (D. Del. Jan. 13, 2003) .............. 29

**TABLE OF CONTENTS**
(continued)

**Page**

*Phillips v. AWH Corp.*,
    415 F.3d 1303 (Fed. Cir. 2005) ..................................................................... *passim*

*Pitney Bowes, Inc. v. Hewlett-Packard Co.*,
    182 F.3d 1298 (Fed. Cir. 1999) ........................................................................ 38, 58

*Quest Diagnostics Invs. LLC v. Lab. Corp. of Am. Holdings*,
    C.A. No. 18-1436-MN, 2020 WL 210799 (D. Del. Jan 14, 2020) .................... 38, 59

*Radware Ltd. v. A10 Networks, Inc.*,
    No. 13–02024, 2014 WL 1572644 (N.D. Cal. Apr. 18, 2014) .......................... 21, 25

*Renishaw PLC v. Marposs Societa'*
    *per Azioni*, 158 F.3d 1243 (Fed. Cir. 1998 ........................................................ 52

*Rhine v. Casio Inc.*,
    183 F.3d 1342 (Fed. Cir. 1999) .......................................................................... 2, 5

*Select Retrieval LLC v. Amerimark Direct LLC*,
    No. 1:11-cv-00812-RGA, 2013 WL 5657565 (D. Del. Oct. 17, 2013) ................ 43

*SuperGuide Corp. v. DirecTV Enterprises Inc.*,
    358 F.3d 870 (Fed. Cir. 2004) ...................................................................... *passim*

*Tech. Licensing Corp. v. Videotek, Inc.*,
    545 F.3d 1316 (Fed. Cir. 2008) .......................................................................... 38

*Teleflex, Inc. v. Ficosa N. Am. Corp.*,
    299 F.3d 1313 (Fed. Cir. 2002) ........................................................................ 50, 58

*Teva Pharm. USA, Inc. v. Sandoz, Inc.*,
    789 F.3d 1335 (Fed. Cir. 2015) .......................................................................... 30

*Thorner v. Sony Comput. Entm't Am. LLC*,
    669 F.3d 1362 (Fed. Cir. 2012) .......................................................................... 65

*U.S. Surgical Corp. v. Ethicon, Inc.*
    103 F.3d 1554 (Fed. Cir. 1997) ........................................................................ 53, 61

*Ultratec, Inc. v. Sorenson Commc'n., Inc.*,
    No. 14-cv-66-jdp, 2015 U.S. Dist. LEXIS 121144 (W.D. Wis. Sept. 11, 2015) ................... 28

# TABLE OF CONTENTS
(continued)

**Page**

*Vederi, LLC v. Google,*
 744 F.3d 1376 (Fed. Cir. 2014) ............................................................ 41

*ViaTech Tech. Inc. v. Microsoft Corp.,*
 733 F. App'x 542 (Fed. Cir. 2018) ......................................................... 4

*Vitronics Corp. v. Conceptronic,*
 90 F.3d 1576 (Fed. Cir. 1996) ............................................................. 54

*Wilson Sporting Goods Co. v. Hillerich & Bradsby Co.,*
 442 F.3d 1322 (Fed. Cir. 2006) ..................................................... 40, 41

**Statutes**

35 U.S.C. § 282(a) ................................................................................. 30

**Other Authorities**

Fed. R. Civ. P. 8(d)(3) ........................................................................... 64

MPEP § 2173.05(b)(III)(D) (9th ed., Rev. 08.2017, Jan. 2018) .................... 41

William Strunk, Jr. & E. B. White, *The Elements of Style 27* (4th ed. 2000) ............................. 23

I.      **AGREED UPON TERMS**

None.

II.     **DISPUTED TERMS**

A.      **"at least one of a gear and a cable operatively coupled to at least one of the first jaw and the second jaw and configured to move at least one of the first jaw and the second jaw from the first configuration to the second configuration" (Claim 4)**

| Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| "at least one of a gear or a cable operatively coupled to at least one of the first jaw or the second jaw and configured to move at least one of the first jaw or the second jaw from the first configuration to the second configuration" | "at least one of a gear and a cable is connected to both the first jaw and the second jaw in a way to move the position of the jaws from the first to the second configuration" |

i.      **Plaintiff's Opening Position[1]**

Plaintiff's proposed construction is consistent with the intrinsic evidence and the relevant legal authority. Defendants' proposed construction ignores the context of the claim language and instead attempts to rewrite the claim term to further their non-infringement positions. The Court should thus adopt Plaintiff's proposed construction.

a.      **Plaintiff's Proposed Construction Is Consistent with the Intrinsic Evidence, is Logical, and Gives Meaning to Each Claim Term**

Plaintiff's proposal simply replaces the word "and" with the word "or" without interpreting or re-interpreting any other words in the phrase. This simple substitution is consistent with and gives full meaning to the phrase "at least one of" as would be understood by a person of skill in the art upon reading the claim language and the specification.  This substitution is appropriate in each instance for the following reasons.

---

[1] In their IPR Petition, Defendants argue that the claims should be given their plain and ordinary meaning, but now propose a different, unsupported construction.

The phrase "at least one of the first jaw and the second jaw…" appears twice in this claim element and, in contrast to Defendants' proposal, Plaintiff proposes that a consistent construction be applied to both instances. Plaintiff's proposal allows one of the claimed jaws to meet this limitation, as well as two (i.e., both) of the claimed jaws to meet the claim term. This is consistent with the Federal Circuit's recognition that the clear meaning of the phrase "'at least one' means that there could be only one or more than one." *See Rhine v. Casio Inc.*, 183 F.3d 1342, 1345 (Fed. Cir. 1999); *see also SuperGuide Corp. v. DirecTV Enterprises Inc.*, 358 F.3d 870, 886 (Fed. Cir. 2004).

Plaintiff's proposal is also consistent with the intrinsic evidence. It is the most logical construction of the claim term when reviewing the entire claim element itself: "at least one of a gear and a cable operatively coupled to at least one of the first jaw and the second jaw and configured to move at least one of the first jaw and the second jaw from the first configuration to the second configuration *such that the first jaw and the second jaw are in alignment.*" (Claim 4 (undisputed claim term in italics)). Neither party proposes that the italicized phrase requires construction; both parties recognize that the unmodified use of "and" when referring to "the first jaw and the second jaw" requires *both* jaws to be in alignment. In contrast, "at least one of" precedes the reference to "the first jaw and the second jaw" in the disputed phrase and yet Defendants' construction is essentially the same as for the undisputed phrase—requiring that *both* jaws be connected to the gear or cable. Thus, Defendants' proposal ignores the differentiation arising from inclusion of the term "at least one of" and instead completely reads the phrase out of the claim. Plaintiff's proposal that "at least one of" means the first jaw, the second jaw, *or* the first and the second jaw is consistent with the entirety of the claim language while Defendants' is not.

Plaintiff's proposal is also consistent with the specification. For example, the specification discloses, "The actuation cable **44** may be secured to the one of the jaws **17** including, for example,

2

the staple carrying portion **40** and is operatively coupled to the other jaw **17** including the staple forming portion **50** by a member **85** which may, for example, be a spindle, capstan or other member around which the cable **44** passes to change direction to generate the clamping force to draw the jaws **17** together." Ex. A, 4:63-5:3. Thus, the specification discloses, and the claim requires, that a cable is "operatively coupled" to only one jaw.

Based on the claim language and the specification, then, it is logical that a mechanism of some sort (the claimed "at least one of a gear and cable" addressed below) is "operatively coupled" to one or the other, or both, of the first and second jaws. In the case where it is operatively connected to one jaw, it is only logical that mechanism would be "configured to move" that jaw, the claimed "at least one". Therefore Plaintiff's construction for "at least one of the first jaw and second jaw" is consistent with the specification and the claims, and is logical.

The Court should also adopt Plaintiff's proposed construction that "at least one of a gear and a cable" means "at least one of a gear *or* a cable." Adopting Plaintiff's position provides both clarity and a consistent meaning and effect of the term "at least one of" as used in the claims. *See, e.g.*, *Altera Corp. v. PACT XPP Tech.*, No. 14-cv-02868-JD, 2015 WL 4999952, at *4-5 (N.D. Cal. Aug. 21, 2015) (opining that the term "at least one of" should be given the same construction in different uses).

Plaintiff's proposed construction is also supported by the Federal Circuit's analysis of the term "at least one of," as addressed in *SuperGuide Corp v. DirecTV Enterprises*, 358 F.3d 870 (Fed. Cir. 2004). In *SuperGuide*, one of the construed claim terms was, "first means for storing *at least one of* [i] a desired program start time, [ii] a desired program end time, [iii] a desired program service, and [iv] a desired program type." *Id.* at 884. The court ultimately concluded that this term required at least one of each of the four enumerated functions. *Id.* at 886. The court reasoned that

3

this list of four functions was "a series of categories of criteria," which combined with the conjunction "and," rendered the list conjunctive and requiring all four functions. *Id.*

In contrast, the term at issue here has no such "series of categories of criteria." In one part of the disputed term, "at least one of" is used in relation to "a gear and a cable," and in another part, it is used in relation to "the first jaw and the second jaw." Yet in both situations, "at least one of" references a closed set of two items (gear-cable; first jaw-second jaw). Courts have routinely concluded that a closed set of two items like the terms at issue here results in "at least one of" meaning *A*, *B*, or *A or B*, as Plaintiff proposes. *See, e.g., Bradley v. Applied Marine Sys.*, No. 13-cv-03941-JSC, 2015 WL 456548, at *5 (N.D. Cal. Feb. 2, 2015) (opining that "*SuperGuide* involved a series of items, not just two items joined by an 'and' as is the case here. Courts considering similar phrases involving a set of only two items have concluded that an either or both construction is proper" and collecting cases holding as such); *see also Fiber, LLC v. Ciena Corp.*, No. 13-cv-00840, 2017 WL 3896443, at *8 (D. Col. Sept. 6, 2017); *Fujifilm Corp. v. Motorola Mobility LLC*, No. 12–cv–03587, 2015 WL 1265009, at *8 (N.D. Cal. Mar. 19, 2015).

For these reasons, the Court should adopt Plaintiff's proposed construction. Unlike Defendants' proposed construction, Plaintiff's proposed construction provides meaning to each claim term, is consistent with the intrinsic evidence, and is consistent with relevant authority.

### b. Defendants' Proposed Construction Is Improper Because It Renders Claim Terms Superfluous

The Federal Circuit has repeatedly instructed that claim construction should give meaning to each term. When one party's construction gives meaning to every term and the other party's construction does not, the Court should adopt the former. *See, e.g., ViaTech Tech. Inc. v. Microsoft Corp.*, 733 F. App'x 542, 549 (Fed. Cir. 2018) (rejecting the proposed construction that did not give meaning to every claim term and opining, "a claim construction that gives meaning to all the terms

of the claim is preferred over one that does not do so") (internal quotations omitted); *Home Semiconductor Corp. v. Samsung Electronics Co.*, 701 F. App'x 1006, 1011 (Fed. Cir. 2017) ("Generally, claim construction that gives meaning to all of a claim's terms … and does not render … other parts of the claim superfluous … is favored.") (internal quotations and citations omitted); *Merck & Co., Inc. v. Teva Pharmaceuticals USA Inc.*, 395 F.3d 1364, 1372 (Fed. Cir. 2005) ("A claim construction that gives meaning to all the terms of the claim is preferred over one that does not do so.").

In violation of this basic tenet, Defendants' proposed construction renders superfluous the italicized claim terms: "…*at least one of* the first jaw and the second jaw and configured to move *at least one of* the first jaw and the second jaw." In lieu of the actual claim language, Defendants propose, "…*both* the first jaw and the second jaw in a way to move the position of *the jaws*" (italics added).  Defendants' proposal improperly nullifies the twice-repeated claim language "at least one of" as it is applied to the first jaw and the second jaw.

It is undisputed that the '650 Patent claims a stapler device with at least two jaws. *See, e.g.*, Ex. A, Claim 4 ("An apparatus for stapling tissue, comprising: a first jaw and a second jaw…"), Fig. 3. Thus, the claim term can address or refer to the claimed jaws in *only* three ways: (i) it can address one of the claimed jaws; (ii) it can address both of the claimed jaws; or (iii) it can address neither of the claimed jaws. If the claim term addresses *both* claimed jaws, that means *every* claimed jaw is referenced since there are only two such claimed jaws.

Consequently, when Defendants propose "…*both* the first jaw and the second jaw in a way to move the position of *the jaws*" (italics added), Defendants render superfluous the claim language "at least one of..." The Federal Circuit has recognized that the term "at least one of" has a clear meaning of "one or more." *See, e.g.*, *SuperGuide*, 358 F.3d at 886; *Rhine*, 183 F.3d at 1345 ("Use of the phrase 'at least one' means that there could be only one or more than one."). Because the

claim only recites a first jaw and a second jaw, if the term "at least one of" means "one or more," the claim term "at least one of the first jaw and the second jaw" must mean that (i) one jaw is being referenced, either the first jaw or the second jaw ("<u>one</u> or more"), or (ii) both jaws are referenced ("one <u>or more</u>"). Defendants' proposal that "at least one of the first jaw and the second jaw" means "both" jaws eliminates the reference to a single jaw and renders the claim language "at least one of" superfluous and meaningless.

Because there are only two recited jaws, construing the twice-repeated term "at least one of the first jaw and the second jaw" as meaning "both the first jaw and the second jaw" as Defendants propose is equivalent to construing the term as meaning "every jaw." It simply cannot be the case that "at least one of" means "every."

"At least one of" the claimed jaws must mean that one jaw can meet the limitation and that more than one jaw can also meet the limitation. Defendants' proposed construction renders superfluous the claim term "at least one of," is contrary to the law, and should be rejected in favor of Plaintiff's proposed construction. *See, e.g.*, *Merck*, 395 F.3d at 1372 ("A claim construction that gives meaning to all the terms of the claim is preferred over one that does not do so.").

### ii.    Defendants' Answering Position

Intuitive's construction interprets "and" to mean "and," i.e., a conjunction.  As taught in the claims, drawings, specification, prosecution history, and provisional and related patent applications, the first and second jaws are *both* moved together for clamping in a second, closed configuration precisely because the claimed mechanical structure, i.e., cables and gears, is connected to and moves the position of *both* jaws. Intuitive's construction of this language fits squarely within Federal Circuit precedent setting forth the rules for interpreting "and" (*see Medgraph, Inc. v. Medtronic, Inc.*, 843 F.3d 942, 949-50 (Fed. Cir. 2016)); "at least one of X and Y" (*see SuperGuide*

*Corp. v. DirecTV Enters., Inc.*, 358 F.3d 870, 886 (Fed. Cir. 2004)); and "coupled" (*see Johnson Worldwide Assocs. v. Zebco Corp.*, 175 F.3d 985, 992 (Fed. Cir. 1999)).

In contrast, Rex's construction expressly rewrites the claim language by replacing "and" with "or."  Rex's attempt to change the claim scope should be rejected because Rex "is not entitled to a claim construction divorced from the context of the written description and prosecution history."  *Nystrom v. Trex Co.*, 424 F.3d 1136, 1145-46 (Fed. Cir. 2005).

> ### a. The Written Description & Intrinsic Evidence Require Construing "And" as a Conjunction Requiring Coupling and Moving Both Jaws

Rex's construction not only directly conflicts with the claim language, but also with all other intrinsic evidence, which Rex all but ignores.  Rex addresses and mischaracterizes the other intrinsic evidence in only two sentences.  Rex incorrectly argues that its replacement of the claim language "and" with the word "or" in its proposed construction is consistent with the written description.  But as shown in Figure 12 below, the only disclosure of a cable coupled to and moving "at least one of the first jaw and the second jaw" is actuation cable 44, which moves the two jaws together and is *not* coupled "to only one jaw," as argued by Rex.  Instead, cable 44 is clearly and directly "coupled" and "connected" to both jaws 40 and 50 in order to move both from an open to a closed position:



FIG. 12

Support for the requirement in the claim language that a cable be connected to both jaws in a way to move both to a closed position, as set forth in Intuitive's construction, is clearly shown in Figures 3 and 3A and described at page 13 of provisional application 60/265,469, from which the '650 patent application claims priority (and which essentially correspond to Figs. 3 and 4 in the '650 patent). *See* Ex. L at 13. Jaws 40 and 50 are brought together ("approximated") using approximation cable 44 (which responds to rotation of drive cable 42), and approximation cable 44 is described as "connected" to first jaw 40:

> ***the staple carrying portion 40 and the staple forming portion 50 are approximated into a closed position*** such that the tissue contacting surface of the staple carrying portion 40 and the staple forming surface of the staple forming portion 50 are brought into cooperative alignment. This is accomplished by rotating an actuation knob 38 associated with handle portion 12, which causes an elongated drive cable 42 to rotate a drive screw 43, which translates in a proximal direction so as to draw an approximation cable 44 proximally within flexible body portion 14. As a result, the ***approximation cable 44, which is connected to the distal end of staple carrying portion 40 and which extends through the interior of staple forming portion 50*** (see Fig. 3A and 7), is pulled proximally ***so as to grossly approximate staple carrying portion 40 and staple forming portion 50***.

8



*Id.* at 13. *Similarly*, at page 15 of the provisional application, cable 44 is described as "associated with" the ends of both jaws to perform the claimed function of moving their position to the closed configuration: "As shown in Fig. 7, actuation cable 44 is preferably secured by a fastener 75 ***associated with*** the distal end of the upper jaw or ***staple carrying portion 40*** of stapling assembly 16, and is operatively ***associated with*** a spindle or capstan 85 disposed within the lower jaw or ***staple forming portion 50*** of stapling assembly 16." *Id.* at 15.

The '650 patent specification refers to this same cable 44 that performs the function of gross (as opposed to fine) approximation of the two jaws together as the actuation cable. Again, the written description makes clear that this cable is directly or at least "operatively" coupled to both jaws in order to move ("draw") both jaws together:

> As shown in FIGS. 3, 4 and 12, an illustrative embodiment of the
> system according to the present invention includes an actuation
> cable 44 to ***facilitate gross approximation of the jaws 17*** via

> actuation of an actuator knob 38. The actuation cable 44 may be
> **secured to the one of the jaws** 17 including, for example, the staple
> carrying portion 40 and is **operatively coupled to the other jaw** 17
> including the staple forming portion 50 by a member 85 which may,
> for example, be a spindle, capstan or other member around which
> the cable 44 passes to change direction **to generate the clamping
> force to draw the jaws 17 together**.

Ex. A, 4:59 to 5:3.

In addition to properly construing "and" to be a conjunction, Intuitive's constructions for all other terms in the disputed phrase are consistent with the written description and with Federal Circuit precedent interpreting similar claim language. The term "coupled" is a "broad and general term" that "generically describes a connection," physical or otherwise. *Johnson Worldwide Assocs. v. Zebco Corp.*, 175 F.3d 985, 992 (Fed. Cir. 1999). Thus, stating that two elements are "operatively coupled" means they are "operatively connected," which the Federal Circuit has defined to be "a general descriptive term frequently used in patent drafting to reflect a functional relationship between claimed components" and "means the claimed components must be connected in a way to perform a designated function." *Innova/Pure Water, Inc. v. Safari Water Filtration Sys.*, 381 F.3d 1111, 1118 (Fed. Cir. 2004).

In contrast, there is no support in the claim language for Rex's construction, which replaces "and" with "or," and indicates that a cable or gear operatively coupled to only one jaw can somehow be configured "to move" just one jaw to the "second configuration." The first element in claim 4 states both jaws "are separated from each other" in the claimed first configuration and both "are clamped together" in the claimed second configuration. Consequently, it is *impossible to move one jaw to the second configuration and keep the other in the first configuration*—both jaws are either separated from each other or clamped together. Consequently, the phrase, "move at least one of the first jaw *and* the second jaw from the first configuration to the second configuration," cannot be interpreted as allowing only one or the other of the jaws to be so moved.

Similarly, there is no support in the written description for Rex's construction, which allows for a cable or gear that is operatively coupled to only one jaw to somehow move both jaws into the claimed "second configuration" for clamping. Every disclosed structure in the '650 patent specification for closing and clamping the jaws is connected to both in order to move and change the positions of both. This applies not only to cable 44 used for "gross" approximation, but also to the C-clamp 60 and I-beam member 70 that are used for "fine" approximation of the same two jaws for clamping. See cable 44 disclosed in Figs. 3, 4, 12; clamping member 60 disclosed in Figs. 5, 7, 16 & 18, which has upper and lower clamping beams 114a and 114b "for urging the jaws 17 toward one another," Ex. A, 5:60-67, and which is defined in patent claim 3 as "coupled around the first jaw and the second jaw," and I-beam member 70 disclosed in Figs. 11, 13 & 15, where I-beam 70 travels in channel 90 "defined in the opposing jaws 17." Ex. A, 5:45-54.

Rex ignores the prosecution history and its related patent applications, which confirm that any cable used to clamp these two jaws together must be coupled to both to move both jaws from an open configuration (the claimed "first" configuration) to a closed configuration (the claimed "second" configuration). During prosecution, the Patent Office issued a rejection consistent with Intuitive's construction, which requires a cable and gear be connected to both jaws.

In an Office Action dated Apr. 26, 2016, the Patent Office indicated the prior art Green '209 patent anticipated all elements in '650 patent application claim 24, which corresponds to patent claim 4. According to the Examiner:

> With regard to claim 24, Green discloses an apparatus (figs. 1, 52, 90) for stapling tissue, comprising: a first jaw (712) and a second jaw (715) . . . ; at least one of a gear (788, 790 fig. 60) and a cable (752 fig. 58) operatively coupled to at least one of the first jaw (712) and the second jaw (715) and configured to move at least one of the first jaw and the second jaw from the first configuration to the second configuration such that the first jaw and the second jaw are in alignment . . .

11

Ex. E at 5.  This text indicates the Patent Office interpreted, "at least one of a gear and a cable operatively coupled to at least one of the first jaw and the second jaw," as requiring *both* elements be coupled to *both* jaws.  *Id.*

The '650 Patent is one in a long line of applications.  Rex has repeatedly presented claims directed at use of a cable to approximate (bring together) the jaws.  But in every instance where a cable and jaws are mentioned in those claims, there are structural limitations recited requiring the cable be coupled to *both* jaws.  In particular, the only original claim in the '650 patent application to mention a cable is application claim 16, which recites: "the cable extends around a pivot member *coupled to one* of the first and second jaws *to couple to the other* of the first and second jaws."  This same language is used in issued claim 11 of related U.S. Patent No. 6,835,199.  *See* Ex. M, claim 11.  And issued claims 4 and 16 of related U.S. Patent No. 8,424,741, as well as issued claim 19 of related U.S. Patent No. 9,271,727, state the cable is "fixed" to the first jaw and "threaded around" a spindle in the second jaw. *See* Ex. N, claims 4, 16; Ex. O, claim 19.

### b.    The Language in the Claims & the Case Law Require Construing "And" as a Conjunction

Controlling precedent confirms Intuitive's proposed construction.  The Federal Circuit has ruled the phrase "at least one of" in conjunction with "and" has a plain and ordinary meaning in which "the phrase 'at least one of' modifies each member of the list."  *SuperGuide*, 358 F.3d at 886 (it "requir[ed] that the user select at least one value for each category; that is, at least one of a desired program start time, a desired program end time, a desired program service, and a desired program type.").  And the Federal Circuit has explained that there are only limited circumstances where

"and" will be given a disjunctive construction, e.g., when the term "conjoins mutually exclusive[2] possibilities." *Medgraph*, 843 F.3d at 949-50.  As explained by *Medgraph*, claims reciting the conjunctive term "and" are only given disjunctive interpretations where, unlike here, the specification compels a disjunctive construction:

> Indeed, all cases cited by [Patentee], most of them district court cases that are not binding on this court, have a common theme that distinguishes them from this case: the specification *compels* a disjunctive construction for "and." . . . Because the written description does not compel a disjunctive construction for "and," the claim term should be given its plain and ordinary meaning.

*Id.* (emphasis in original).

As detailed in the preceding section, the intrinsic evidence indicates any structure for bringing the jaws together for clamping must be connected to both jaws in a way to move both to a closed position.  As a result, the intrinsic evidence does not "compel" the Court to rewrite and broaden this claim limitation by replacing "and" with "or," as proposed by Rex.  "Broadening of the ordinary meaning of a term in the absence of support in the intrinsic record indicating that such a broad meaning was intended violates the principles articulated in *Phillips*."  *Nystrom*, 424 F.3d at 1145-46.

Moreover, there is no factual or legal basis for rewriting a claim whenever it "is logical" to do so, as argued by Rex.  First, there is no logic in doing that here because the written description makes no mention of moving/clamping jaws together using a mechanism that is coupled to only one jaw.  Second, even though Rex regrets using "and" in this limitation and believes "or" would be preferable, courts do not rewrite claims based on a patentee's hindsight, even in cases where the original language was illogical.  For example, in *Chef Am., Inc. v. Lamb-Weston,* the written

---

[2] Rex cannot rely on this exception here because claims in the '650 patent that recite mutually exclusive conditions use the term "or" instead of "and."  *See* claim 15 ("one of simultaneously or serially"); claim 17 ("one of fixedly coupled or movably coupled").

description indicated a claim limitation incorrectly recited heating dough to a temperature of at least 400° instead of at that temperature, but the Court refused to replace the claim limitation, "to," with a different word, "at," explaining that "we construe the claim as written, not as the patentees wish they had written it."  358 F.3d 1371, 1374 (Fed. Cir. 2004).

Here, the claim limitation "and" should not be replaced with "or," as Rex proposes, for the additional reason that the language used in other '650 patent claims indicates to the public that the patentee deliberately recited "at least one of X *and* Y" as a conjunction requiring both elements. Indeed, the patentee chose different language, "at least one of X *or* Y," whenever a disjunctive meaning was intended.  *See Phillips*, 415 F.3d at 1314: "Other claims of the patent in question, both asserted and unasserted, can also be valuable sources of enlightenment as to the meaning of a claim term."

Specifically, claims 10 and 22 use the same "at least one of" form as the disputed claim limitation.  But as shown below, the patentee clearly chose a conjunctive meaning instead of a disjunctive meaning by replacing the term "or" in claim 10 with the term "and" in claim 22:

| Claim 10 | Claim 22 |
| --- | --- |
| "one or more actuators including **at least one of** an actuator handle, a lever, a trigger, a knob **or** a cable." | "wherein the control handle includes **at least one of** an actuation handle, a lever, a trigger, a knob **and** a cable." |

Similarly, the language of claims 3 and 6 similarly shows the patentee knew how to recite "at least one of X *and* Y" when both of two recited elements are required, and chose different language, "at least one of X *or* Y," if one of two recited elements can be used.  In the '650 patent's written description, I-beam member 70 has a web portion 84 that travels within a channel 90 defined by *both* jaws, as shown in Fig. 11, while staple pushers 118 can be engaged using either upper portion 82a or lower portion 82b of I-beam 70, as shown in Fig. 15.  Ex. A, 5:45-54, 6:26-40.  This difference in contacting the staple pushers 118 using only one of two end portions of the I-beam compared to having the I-beam engage and close both jaws is reflected in the use of different claim

language.  Claim 3 recites "and" to indicate web portion 84 extends through both jaws, while claim 6 recites "or" to indicate one or the other, or both, of elements 82a and 82b cause a staple pusher to move staples, as shown below:

| '650 Patent Claim | Claim Term |
|---|---|
| Claim 3 | "an I-beam including a web that extends through **at least one of** the first jaw **and** the second jaw." |
| Claim 6 | "the beam comprises an upper portion and a lower portion and a web coupled between the upper portion and the lower portion, **at least one of** the lower portion **or** the upper portion configured to cause the staple pusher to move a staple as the beam moves from a proximal location to a distal location" |

In view of the controlling case law, the language in the claims, and the intrinsic evidence, Rex's arguments that its construction "gives meaning to each claim term" and that Intuitive's construction "renders claim terms superfluous" borders on nonsensical.  To begin with, Rex admits at that start of the second paragraph of its argument that its proposal "replaces the word 'and' with the word 'or.'"

And the entire text for this disputed element, as shown below, is consistent with Intuitive's construction and the patent's written description, which requires the cable and gear be connected to both jaws in a way to move both into the closed second position:

| '650 Patent Claim | Claim Term |
|---|---|
| Claim 4 | "**at least one of** a gear **and** a cable operatively coupled to **at least one of** the first jaw **and** the second jaw and configured to move **at least one of** the first jaw **and** the second jaw from the first configuration to the second configuration such that the first jaw and the second jaw are in alignment" |

As explained in the preceding section, the language in the first element of claim 4 states that the two jaws "are separated from each other" in the claimed first configuration and "are clamped together" in the claimed second configuration.  Consequently, the phrase, "move at least one of the first jaw *and* the second jaw from the first configuration to the second configuration," cannot be

15

interpreted as allowing only one or the other of the jaws to be so moved.  It is *impossible* (and certainly not disclosed) how one jaw can move into the second configuration while the other jaw remains in its first configuration—both jaws are either separated from each other or clamped together.

Equally unavailing are Rex's attempts to distinguish the Federal Circuit's holding in *SuperGuide*, 358 F.3d 870, based on inapplicable lower court decisions.  Contrary to Rex's argument, *Bradley v. Applied Marine Systems* is not an example of courts "routinely" concluding that "a closed set of two items like the terms at issue here results in 'at least one of' meaning A, B, or A or B, as Plaintiff proposes."  Instead, *Bradley* distinguished over *SuperGuide* by focusing on claim language that recited "any of" (instead of claim language that recited "at least one of," as used in claim 4 of the '650 patent):

> grammatically, the phrase "any of a selected" is not the same as "at least one of" where, as here, there is an adjective that modifies both items in the phrase. If the sentence here were reworded to say: I went to the store and I told my son he could choose any of a selected strawberry and chocolate ice cream, one would not read the sentence to require that he select both the strawberry and chocolate ice cream; rather, he could select either.

*Bradley v. Applied Marine Systems*, No. 13-CV-03941-JSC, 2015 WL 456548 at *4-5 (N.D. Cal. Feb. 2, 2015).

Ironically, Rex argues based on a decision in *Altera Corp. v. PACT XPP Tech.* that the phrase "at least one of . . . and . . .", when used in different claims in the same patent, "should be given the same construction in different uses" for purposes of consistency.  But in the '650 patent, the phrase "at least one of X *and* Y" appears in claims 3 and 22 and can only be interpreted to mean "and," i.e., the both or all recited elements are required.  Therefore, if Rex's rationale is correct that "at least one of . . . and . . ." must be interpreted the same way in all claims, consistency requires construing this phrase in claim 4 as conjunctive, i.e., the same way it must be construed in claims 3 and 22.

Moreover, *Altera Corp. v. PACT XPP Tech.* is distinguishable because, unlike here, the court found that "a number of claims are intelligible only under [patentee]'s reading."  And the challenger's proposed conjunctive reading would have also resulted in the Summary of the Invention not describing a single invention claimed in one of the patents.  No. 14-cv-02868-JD, 2015 WL 4999952, at *4-5 (N.D. Cal. Aug. 21, 2015).  Therefore, the *Altera* decision is consistent with the Federal Circuit's opinion in *Medgraph,* 843 F.3d at 949-50, which indicates "and" must be interpreted as conjunctive unless the specification *compels* a disjunctive construction.  *See also LMT Mercer Grp., Inc. v. Maine Ornamental, LLC.*, No. Civ. 10-4615, 2014 WL 183823, at *27 (D.N.J. Jan. 16, 2014) ("In *Joao v. Sleepy Hollow Bank*, the primary reason the court construed 'at least one of ... and' to mean 'at least one of ... or' was because the former construction would be nonsensical in the context of the patent at issue. In this case, it is entirely plausible that the light diffusing means could be comprised of both a coating and a physical variation.")

Rex is also incorrect in arguing that Intuitive's construction somehow reads the phrase "at least one of" out of the claim.  According to Rex, "[t]he Federal Circuit has recognized that the term 'at least one of' has a clear meaning of 'one or more.'"  But all that claim language means is the phrase "at least one of" can be replaced with the term "a" in the disputed claim limitation and have exactly the same meaning, i.e., "one or more."  *See Baldwin Graphic Sys., Inc. v. Siebert, Inc.*, 512 F.3d 1338, 1342 (Fed. Cir. 2008): "This court has repeatedly emphasized that an indefinite article 'a' or 'an' in patent parlance carries the meaning of 'one or more' in open-ended claims containing the transitional phrase 'comprising.'"

Indeed, substitution of the term "at least one of" with the equivalent term "a" confirms that this claim limitation is conjunctive:

| '650 Patent Claim | Claim Term |
|---|---|
| Claim 4 | "**at least one of** a gear **and** a cable operatively coupled to **at least one of** the first jaw **and** the second jaw and configured to move **at least one of** the first jaw **and** the second jaw from the first configuration to the second configuration such that the first jaw and the second jaw are in alignment" |
| Claim 4 (substitute "a" for "at least one of") | "**a** gear **and** a cable operatively coupled to **a** first jaw **and a** second jaw and configured to move **a** first jaw **and a** second jaw from the first configuration to the second configuration such that the first jaw and the second jaw are in alignment" |

A gear and a cable are operatively coupled and configured to move "*a* first jaw and *a* second jaw," which indicates the gear and cable are connected to both jaws and move the position of both to the closed position, as set forth in Intuitive's construction.

Lastly, Intuitive's construction does not render "at least one of" superfluous because it allows for one or more gears, one or more cables, or one or more pairs of staple carrying and staple forming jaws. As discussed in the preceding section, Figures 3 and 3A described at page 13 of provisional application 60/265,469, which correspond to Figs. 3 and 4 in the '650 patent, show two cables, i.e., drive cable 42 and approximation cable 44, are involved in bringing together jaws 40 and 50. And Figures 4A, 4B, 5A, and 5B described at pages 13-14 of the provisional application, which correspond to Figs. 6-7 and 9-10 of the '650 patent, show that two gears, i.e., pinion gears 62b and 72b, can be used to rotate drive cables. Nothing in the claim language or patent specification rules out a stapling apparatus having an additional staple carrying portion 40 or staple forming portion 50, and gears and cables could be similarly coupled to additional jaws.

### iii. Plaintiff's Reply Position

#### a. Intuitive removes "at least one of" from the claims

Intuitive's proposed construction rewrites this claim limitation to require <u>both</u> a gear and a cable operatively coupled to <u>both</u> the first and the second jaw and configured to move <u>both</u> the first

jaw and the second jaw from the first configuration to the second configuration. (*See supra* at 6.)[3] This reading eliminates the inventors' deliberate use of the broadening phrase "at least one of" to instead require an inappropriately narrow—and at times, contradictory—application. Instead of disregarding the inventor's intent and changing their choice of words, the better avenue is to give meaning to each of the words in the claims and construe this phrase to harmonize with the remaining limitations—as well as common sense.

To support its limiting construction, Intuitive resorts to making absolute declarations without supporting analysis. Looking to the first element in claim 4, Intuitive declares that "it is *impossible to move one jaw to the second configuration and keep the other in the first configuration*." (*See supra* at 10 (emphasis original).) From this, Intuitive concludes that "the phrase, 'move at least one of the first jaw *and* the second jaw from the first configuration to the second configuration,' cannot be interpreted as allowing only one or the other of the jaws to be so moved." (*Id.* (emphasis original).) This interpretation completely disregards claim 4's requirement of "at least one of the first jaw and the second jaw being ***moveable with respect to the other*** of the first jaw and the second jaw." (Ex. A, claim 4 (emphasis added).) Intuitive's position also contradicts the specification's disclosures that the jaws can be moved "relative to one another" (*id.* at 2:2-3; 3:65-4:7) and contravenes the common-sense explanation that one jaw may remain fixed while the other moves, as suggested in FIGs 12, 13, and 15. Relative movement or movement "with

---

[3] Intuitive's argument that "at least one of" actually means "both" runs contrary to the analysis contained in its IPR. (*See* Ex. U at 41.) Claim 14 contains the limitation "at least one of firing staples and cutting tissue." (Ex. A, claim 14.) Under Intuitive's litigation-driven view, this limitation would require that a prior art reference <u>both</u> fire staples and cut tissue. Intuitive's IPR does not continue this argument, however, relying on a reference that only allegedly cuts tissue and does not fire staples. (*See* Ex. U at 41.) As with its construction of "curved" discussed below, Intuitive is willing to advance whatever claim construction serves its immediate interest with little regard for the actual plain and ordinary meaning of the terms.

respect to the other" jaw necessarily contemplates the possibility that "only one or the other of the jaws [is] so moved." (*See supra* at 10.)[4]

Intuitive makes similarly unsupported and unexplained declarations with respect to its belief that both a gear and a cable must be coupled to both the first jaw and the second jaw. (*See supra* at 10-11.) Referring to an April 26, 2016 Office Action, Intuitive claims that the Patent Office interpreted this claim term as "requiring *both* elements be coupled to *both* jaws." (*Id.* at 12.) But the Office Action makes no such claim. Rather, the Examiner's comments are nothing more than a verbatim recitation of the claim limitations with the preface that the prior art discloses those limitations. (*See* Ex. E.) Intuitive is merely stating its position and claiming that the Patent Office agreed without providing further analysis. Intuitive similarly argues that "there are structural limitations recited requiring the cable be coupled to *both* jaws" without identifying any such structural limitations. (*See supra* at 12.) In fact, the claims cited by Intuitive actually support Rex Medical's position. These claims—unlike claim 4 of the '650 patent—make explicit that a cable is coupled to both the first and second jaw. (*Id.*) This difference suggests that the terms have a different

---

[4] Intuitive's interpretation stems from its misreading of "first configuration" and "second configuration." Intuitive reads each configuration as applying individually to each jaw. (*See supra* at 10 ("[I]t is impossible to move *one* jaw to the second configuration and keep the *other* in the first configuration.") (emphasis added).) But that is not what claim 4 requires; it reads: "a first configuration in which the first jaw and the second jaw are separated from each other at a first distance to receive tissue and a second configuration in which the first jaw and the second jaw are clamped together at a second distance to hold tissue therebetween for stapling." (Ex. A, claim 4.) The claim language thus makes clear that the first and second configurations are determined by the distance between the jaws (*i.e.*, a first distance vs. a second distance) as well as the function of the configuration (*i.e.* to receive tissue vs. to hold tissue therebetween for stapling). (*Id.*) As illustrated in FIGs 13 and 15, these two configurations can be achieved while one jaw remains stationary. Clearly, it is not only possible to move only one jaw, such movement is expressly disclosed in the specification. As such, the phrase "move at least one of the first jaw and the second jaw from the first configuration to the second configuration" is properly interpreted as allowing at least one of the jaws to move relative to the other—contrary to Intuitive's interpretation.

meaning and the Court should thus presume that coupling to both jaws is *not* required by claim 4. *See Phillips v. AWH Corp.*, 415 F.3d 1303, 1314 (Fed. Cir. 2005).

In addition to its conclusory and contradictory analysis of the claim language, Intuitive improperly imports limitations from the specification into the claim language and seeks to limit the scope of the claims only to disclosed embodiments. *See Hill-Rom Servs., Inc. v. Stryker Corp.*, 755 F.3d 1367, 1371-72 (Fed. Cir. 2014) ("While we read claims in view of the specification, of which they are a part, we do not read limitations from the embodiments in the specification into the claims.") (citing *Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 904 (Fed. Cir. 2004)). By referencing "illustrative" embodiments over several pages (*see supra*. at 7-11) and arguing the claims should be limited only to those disclosures rather than focusing on the plain import of the claim language, Intuitive asks the Court to commit a cardinal sin of claim construction. The Court should instead give the claim terms their full intended scope—a scope which does not replace "at least one of" with "both."

### b.      The case law supports Rex Medical's position

As numerous courts around the country have found, a rigid application of *SuperGuide* is inappropriate where "at least one of" modifies only two choices or is directed to a concrete element instead of a category of choices. *See, e.g., Inventio AG v. ThyssenKrupp Elevator Ams. Corp.*, Civ. No. 08–874–RGA, 2014 WL 129799, at *3 (D. Del. Jan. 14. 2014) (construing "at least one of [A] and [B]" as "[A], [B], or [A] and [B]") (alterations original); *Fiber, LLC v. Ciena Corp.*, No. 13-cv-00840, 2017 WL 3896443, at *8 (D. Col. Sept. 6, 2017) (distinguishing *SuperGuide* because claim limitation involved "a discrete object, not a category of values"); *Radware Ltd. v. A10 Networks, Inc.,* No. 13–02024, 2014 WL 1572644, at *7 (N.D. Cal. Apr. 18, 2014) (construing "based on at least one of" hops and latency as "based on hops alone, latency alone, or both hops and latency together"); *Joao Bock Transaction Sys., LLC v. First Nat. Bank,* No. 11–6472, 2013

WL 3199981, at *7 (N.D. Ill. June 24, 2013) (construing "the phrase 'one of ... and ...' in connection with a list or a pair of items to mean 'one or more of the items in the list' or 'either or both of the items in the list') (ellipses original); *see also Fujifilm Corp. v. Motorola Mobility LLC*, No. 12–cv–03587, 2015 WL 1265009, at *8 (N.D. Cal. Mar. 19, 2015) ("*SuperGuide* did not erect a universal rule of construction for all uses of "at least one of" in all patents.") (collecting cases); *Altera Corp. v. PACT XPP Tech. AG*, No. 14-cv-02868-JD, 2015 WL 4999952, at *3-6 (N.D. Cal. Aug. 21, 2015) (construing "at least one of ... and ..." as "at least one of ... and/or ...") (ellipses original).[5] Just as in those cases, slavishly adhering to the guideline that "at least one of . . . and. . ." should be interpreted conjunctively would contradict the intrinsic record in this case or lead to nonsensical grammatical results.

As discussed above, the intrinsic record does not require both jaws must move or that both a gear and a cable is required or that both must be coupled to both jaws. (*See supra* Section II.iii.a.) Importing these limitations into the claim language violates core tenets of claim construction and contradicts the inventors' choice of broadening qualifiers to describe the scope of their invention. (*See id.*)

Application of one of the grammatical rules cited in *SuperGuide* to the claim language of the '650 patent reveals just how inconsistent and incoherent Intuitive's proposal is. In *SuperGuide*, the Federal Circuit specifically credited "The Elements of Style" for the canon that "an article of a

---

[5] Intuitive's citation to *SuperGuide* for the proposition that its construction "fits squarely within Federal Circuit precedent setting for the rules for interpreting . . . 'at least one of X and Y'" is misleading at best. (*See supra* at 6-7.) First, *SuperGuide* involved a list of four categories of potential options, *not* a binary choice between "X and Y." 358 F.3d at 885. Second, as numerous courts have observed, "*SuperGuide* did not erect a universal rule of construction for all uses of "at least one of" in all patents." *Fujifilm*, 2015 WL 1265009 at *8. Contrary to Intuitive's claims, *SuperGuide* neither addressed the construction of "at least one of X and Y" nor set a precedential rule for claim construction that must be blindly followed.

preposition applying to all the members of the series must either be used only before the first term or else be repeated before each term." *SuperGuide v. DirecTV Enterprises, Inc.*, 358 F.3d 870, 886 (Fed. Cir. 2004) (citing William Strunk, Jr. & E. B. White, *The Elements of Style 27* (4th ed. 2000).) In this instance, application of this principle would add "at least one of" to each member of all the two-member series. As shown in the below table, this renders the modified claim language nonsensical:

| Claim 1, 4 | Modified Claim 1, 4 |
|---|---|
| "**at least one of** the first jaw and the second jaw being movable with respect to the other of the first jaw and the second jaw" | "**at least one of** the first jaw and **at least one of** the second jaw being movable with respect to the other of the first jaw and the second jaw" |
| "**at least one of** a gear and a cable operatively coupled to **at least one of** the first jaw and the second jaw configured to **at least one of** the first and the second jaw" | "**at least one of** a gear and **at least one of** a cable operatively coupled to **at least one of** the first jaw and **at least one of** the second jaw configured to **at least one of** the first and **at least one of** the second jaw" |
| **Claim 2** | **Modified Claim 2** |
| "**at least one of** the first jaw and the second jaw is curved." | "**at least one of** the first jaw and **at least one of** the second jaw is curved." |
| **Claim 3** | **Modified Claim 3** |
| "including a web that extends through **at least one of** the first jaw and the second jaw." | "including a web that extends through **at least one of** the first jaw and **at least one of** the second jaw." |
| **Claim 14** | **Modified Claim 14** |
| "configured to enable **at least one of** firing staples and cutting tissue." | "configured to enable **at least one of** firing staples and **at least one of** cutting tissue." |

Rex Medical's proposed construction eliminates these grammatical absurdities and

comports with the scope of the claims intended by the inventors of the '650 patent.

### iv.   Defendants' Sur-Reply Position

The main argument in Rex's reply brief, i.e., that Intuitive "rewrites" this limitation, is at odds with Rex's opening brief, which asks the Court to adopt a proposal that "replaces the word 'and' with the word 'or'." The ordinary meaning of "and" is conjunctive, i.e., "both." And since Rex is unable to meet the test set forth in *Medgraph, Inc. v. Medtronic, Inc.*, 843 F.3d 942, 949-50 (Fed. Cir. 2016), which holds that "and" must be interpreted as conjunctive unless the specification *compels* a disjunctive construction, Rex's reply ignores the test and this controlling precedent.

Rex's reply argues that Intuitive's reading "eliminates the inventors' deliberate use" of "broadening" language in the claims, and that a broadening construction is required to eliminate "grammatical absurdities" and reflect the scope "intended by the inventors." The intrinsic evidence ignored by Rex shows the opposite is true.

Rex offers no explanation why "at least one of X *or* Y" is used in some claims, such as claims 6 and 10, while "at least one of X *and* Y" is used in other claims, i.e., claims 3 and 22. As a result, it is Rex's proposal that "ignores the differentiation" in claim language referred to in Rex's opening brief, while Intuitive's proposal is supported by the patentee's deliberate use of broadening language ("X *or* Y") in the claims.

Intuitive interprets "at least one of" to mean what it says, i.e., one or more. The word "a" in claims has the same meaning, *see Baldwin Graphic Sys. v. Siebert*, 512 F.3d 1338, 1342 (Fed. Cir. 2008), and Intuitive showed in its answering brief that the term "a" can coherently and consistently replace every instance of the phrase "at least one of" in the disputed phrase.

When a claim lists structural components, i.e., a gear, cable, staple-carrier, anvil, handle, lever, trigger, and knob, the phrase "at least one of" ensures the claim covers embodiments in which there are one or more of each item. The list in claim 4 falls squarely under the conjunctive rule in

*Medgraph*, 843 F.3d at 949-50, and *SuperGuide*, 358 F.3d at 886 (Fed. Cir. 2004).[6]  As explained in Intuitive's answering brief and undisputed by Rex, "at least one of" recognizes the preferred embodiment includes two cables, i.e., drive cable 42 and approximation cable 44, to bring together jaws 40 and 50, and discloses two gears, i.e., pinion gears 62b and 72b, to rotate drive cables.  *See* Ex. L, Figures 3, 3A; Ex. A, Figs. 3-4, 6-7, 9-10.  Moreover, reciting "at least one" first jaw and second jaw allows for multiple staple-carriers 40 or anvils 50, as suggested by the interaction in Fig. 2c of jaws 36a and 36b with jaws 40 and 50, and by the express disclosure that the apparatus can have "any number of rows" of staple slots.  Ex. A, 5:54-59.  Rex states that Intuitive's construction is nonsensical, but Rex ignores that embodiments that include two cables and two gears are actually taught in the specification.

In contrast, Rex's disjunctive construction contradicts the claim language and specification because the claimed function cannot be performed unless these components are connected to and move both jaws.  Rex has dropped the demonstrably false argument from its opening brief that "the specification discloses, and the claim requires, that a cable is 'operatively coupled' to only one jaw."  But in the same paragraph where Rex accuses Intuitive of making "absolute declarations

---

[6] Other courts reach a different conclusion only if: (1) claim rendered nonsensical (*see* Intuitive answering brief distinguishing *Joao Bock* and *Altera* because result unintelligible/nonsensical); or (2) claim recites different type of list, such as mutually exclusive conditions or actions/ functions that are either performed or not.  *See* Intuitive answering brief at n.1 and *compare* claim 4 *with* claim 14 ("firing staples and cutting tissue"); claim 15 ("one of simultaneously *or* serially"); claim 17 ("one of fixedly coupled *or* movably coupled").  In the other cases cited in Rex's reply, the claims listed conditions or actions instead of components that can be counted.  *See Inventio AG v. ThyssenKrupp Elevator Ams. Corp* ("input" of reports and "recognition" of codes); *Fiber, LLC v. Ciena Corp.* (operative for "positioning" different beam-directing devices); *Radware Ltd. v. A10 Networks* (determining proximity "based on" hops and latency); *Fujifilm Corp. v. Motorola Mobility LLC* ("transmitting data" and "receiving data").

without supporting analysis," Rex defies Newton's laws of motion with its "common-sense explanation that one jaw may remain fixed while the other moves, as suggested in FIGs 12, 13, and 15." This argument is taken further in Rex's footnote, where Rex argues that "it is not only possible to move only one jaw, such movement is expressly disclosed in the specification." However, Rex's new argument is contradicted by intrinsic and extrinsic evidence.

The specification does not "suggest," let alone "expressly disclose," a stapler where one jaw remains stationary while the other jaw moves. *Every* structure[7] for closing or clamping the jaws is connected to *both* jaws to perform the claimed functions of moving and changing the positions of *both* jaws.

Contrary to Rex's position quoted above, "common-sense" is not evidence and does not overrule Newton's laws. When force is applied to both jaws using cable 44, clamping member 60, or beam 70, both jaws at the end of flexible body portion 14 will move. No mechanism or structure is shown that grounds either jaw to make it immovable when force is applied. And Rex's unsupported attorney argument about what is "suggested" by the drawings is refuted by the expert opinions set forth in the Rebuttal Declaration of Dr. Robert Howe (attached as Ex. EE). He explains a POSA would understand the specification only discloses movement of both jaws. *See* Ex. EE, ¶¶ 8-13.

Under Rex's construction, a cable need only be coupled to one jaw, even though the stapler would not work because it lacks sufficient structure to close the two jaws. Rex's attempt to broaden

---

[7] This applies to cable 44 in Figs. 3, 4, and 12, which generates the force to "draw the *jaws* 17 together," Ex. A, 5:1-3; to clamping member 60 in Figs. 5, 7, 16 and 18, which has upper and lower clamping beams 114a and 114b "for urging the *jaws* 17 toward one another," *id.*, 5:60-67; and to I-beam member 70 in Figs. 11, 13 and 15, where I-beam 70 travels in channel 90 "defined in the opposing *jaws* 17." *Id.*, 5:45-54. Similar language appears in the original claims and the Summary of the Invention, i.e., "the jaws being moveable with respect to one another," *Id.*, 1:57-58; Ex. DD, claims 1, 17.

the claim scope without intrinsic support is contrary to law. *Nystrom*, 424 F.3d at 1145-46; *see also Lizardtech v. Earth Resource Mapping*, 433 F.3d 1373, 1375 (Fed. Cir. 2006) (Lourie, J., concurring) ("Claims are not necessarily limited to preferred embodiments, but, if there are no other embodiments, and no other disclosure, then they may be so limited. One does not receive entitlement to a period of exclusivity for what one has not disclosed to the public.")

Finally, Rex's attempts to deprecate Intuitive's construction as "litigation-driven" ring hollow based on its own actions. In the IPR cited at footnote 2 of Rex's reply, Intuitive explained this limitation is met "under Patent Owner's apparent construction" because cable 146 shown below in McGuckin moves the upper staple-forming shell 22/lip 26 relative to the lower staple-carrying shell 24/lip 28 from a first (open) to a second (closed/aligned) configuration:



*See* Ex. U at 70-76; Ex. FF at 17:57-18:65, 21:8-22:7, 23:60-24; Figs. 1B, 13-15, 18. But contrary to its construction here, Rex in the IPR is not urging a broadening construction that ignores the ordinary meaning of "and" and replaces it with "or," but instead submitted a declaration stating: "I do not believe that any terms require explicit construction at this time." Ex. GG, ¶ 26. And in its validity contentions on January 10, 2020, Rex necessarily applied a different construction, because it declares without explanation that the disputed element is "not disclosed by McGuckin." Ex. HH at 29.

**B.** **"the beam is configured to engage the first and second jaws one of entirely or substantially from therewithin" (Claim 5)**

27

| Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| Not indefinite. Plain and ordinary meaning. | Indefinite. |

### i.    Plaintiff's Opening Position[8]

#### a.    Defendants Do Not Propose Any Construction For This Term

Defendants did not propose an alternative construction for this term, and they have not disputed any particular aspect of Plaintiff's proposed construction of plain and ordinary meaning; rather, Defendants baldly argue that the term is indefinite. (D.I. 51). Under such circumstances, Defendants have waived the right to propose alternative constructions. *See Leader Techs., Inc. v. Facebook, Inc.*, 770 F. Supp. 2d 686, 700 (D. Del. 2011), *aff'd*, 678 F.3d 1300 (Fed. Cir. 2012) (rejecting Facebook's attempt to limit the Court's construction "to include limitations that were not proposed by Facebook during claim construction"); *Info. Tech. Innovation, LLC v. Motorola, Inc.*, 391 F. Supp. 2d 719, 724 (N.D. Ill. 2005) (holding that, where defendants contended terms were indefinite and did not propose alternative constructions, "Defendants have waived their right to present alternative constructions of the terms"); *see also Ultratec, Inc. v. Sorenson Commc'n., Inc.*, No. 14-cv-66-jdp, 2015 U.S. Dist. LEXIS 121144, at *21 n.2 (W.D. Wis. Sept. 11, 2015) ("Defendants did not timely raise this issue in their claim construction contentions, and thus the issue is waived."). The Court may thus adopt Plaintiff's proposed construction for this disputed claim term.

---

[8] In their IPR Petition, Defendants argue that the claims should be given their plain and ordinary meaning, but now simply argue that this claim term is indefinite.

**b.** **Defendants' Indefiniteness Arguments Should be Rejected or Deferred**

Indefiniteness requires a determination of whether a patent claim, when read in light of the specification and prosecution history, "fail[s] to inform, with reasonable certainty, those skilled in the art about the scope of the invention." *Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898, 898-899 (2014). Here, a determination of indefiniteness is premature because Defendants have not identified their indefiniteness challenges sufficiently to put Plaintiff on notice of the specific basis for this defense. Nor have the parties conducted expert discovery or completed claim construction. While "a determination of indefiniteness is necessarily intertwined to some degree with claim construction," courts have found determining indefiniteness prior to claim construction to be premature. See *Pharmastem Therapeutics, Inc. v. Viacell, Inc.*, No. 02-148 GMS, 2003 WL 124149, at *1 n.1 (D. Del. Jan. 13, 2003) ("[I]t is clear that the court must first attempt to determine what a claim means before it can determine whether the claim is invalid for indefiniteness."). "[W]here extrinsic evidence of the perspective of someone skilled in the art is relevant to the indefiniteness inquiry, it is appropriate to defer the indefiniteness determination until after the close of discovery." *Lifescan Scotland, Ltd. v. Shasta Techs., LLC*, No. 11-CV-04494-WHO, 2014 WL 11206411, at *3–4 (N.D. Cal. Nov. 10, 2014).

Nevertheless, Defendants' vague indefiniteness challenge is unavailing. As a preliminary matter, Defendants assert in the Joint Claim Construction Chart that the claim term is allegedly indefinite without setting forth any arguments in support thereof. (D.I. 51). Defendants' indefiniteness arguments set forth in their Supplemental Invalidity Contentions served on December 20, 2019 (Ex. C) lack sufficient detail to notify Plaintiff of the actual bases for Defendants' position. Defendants devote just over five pages to "invalidity based on indefiniteness or written description." (Ex. C at 90-95). Four of those pages simply cite general case law (*id.* at

90-94), with the remainder of the "argument" consisting of mere conclusory and unsupported statements (*id.* at 94-95). About half of Defendants' cited case law relates to § 112, ¶ 1's written description and enablement requirements—issues entirely separate from definiteness. In the Joint Claim Construction Chart and throughout the meet and confer process, Defendants provided no further insight into their indefiniteness theories, instead simply alleging that the disputed claim term is "indefinite." (D.I. 51).

Issued patents are presumed valid, and indefiniteness must be proven by clear and convincing evidence. 35 U.S.C. § 282(a); *Microsoft Corp. v. i4i Ltd., P'ship*, 564 U.S. 91, 95 (2011); *Teva Pharm. USA, Inc. v. Sandoz, Inc.*, 789 F.3d 1335, 1345 (Fed. Cir. 2015); *MorphoSys AG v. Janssen Biotech Inc.*, 358 F. Supp. 3d 354, 376 (D. Del. 2019) ("[Defendant] has failed to meet its burden to show, by clear and convincing evidence, that the…Claims are indefinite."). Section 112, ¶ 2 strikes a "delicate balance" between "the inherent limitations of language" and providing "clear notice of what is claimed." *Nautilus*, 572 U.S. at 909-910. Absolute precision is not a requirement.

Defendants have not and cannot meet their high burden of showing indefiniteness, as the '650 Patent's specification and prosecution history reveal the disputed term is sufficiently definite. If Defendants set forth additional support for their indefiniteness assertion, Plaintiff will respond accordingly.

ii.     **Defendants' Answering Position**

The language in this dependent claim improperly covers broader subject matter than the independent claim on which it depends. As a result, the limitation is indefinite because it violates Section 112(4), which requires (emphasis added): "a claim in dependent form shall contain a reference to a claim previously set forth and then *specify a further limitation* of the subject matter claimed."

Comparison of the limitations of dependent claim 5 with corresponding limitations in independent claim 4 demonstrates the scope of claim 5 is broader in at least some respects:

| Independent Claim 4 | "a beam configured to engage the first and second jaws *from within* the first and second jaws" |
|---|---|
| Dependent Claim 5 | "the beam is configured to engage the first and second jaws one of entirely *or substantially from therewithin*" |

Claim 4 covers a beam that engages jaws only from "within," while claim 5 more broadly covers a beam that engages jaws "substantially" from therewithin.  On its face, this claim limitation is indefinite because it violates Section 112(4).  *See Pfizer Inc. v. Ranbaxy Labs.*, 457 F.3d 1284, 1292 (Fed. Cir. 2006) ("Ranbaxy correctly argues that claim 6 fails to 'specify a further limitation of the subject matter' of the claim to which it refers . . . We must therefore reverse the district court with respect to this issue and hold claim 6 invalid for failure to comply with § 112, P4.").

> a. **The Claim is Indefinite Because "Substantially" Improperly Broadens the Claimed Subject Matter**

A claim term is indefinite if the term, when read in light of the specification and the prosecution history, "fail[s] to inform, with reasonable certainty, those skilled in the art about the scope of the invention." *Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898, 898-899 (2014). Given the Section 112 requirement that this dependent claim must "*specify a further limitation*" of the subject matter recited in claim 4, the scope of claim 5 is fatally indefinite because the term "substantially from therewithin" is broader than the term "from within."

It is telling that, in response to a definiteness challenge based on the overbreadth of claim 5 compared to claim 4, Rex indicates the limitation should be construed according to its "plain and ordinary meaning," but refuses to state what that meaning is.  The real problem faced by Rex here

is that any *reasonable* interpretation it offers would result in "substantially from therewithin" being broader than "from within," while any proposed construction that results in "substantially" being narrower would be *unreasonable* and contrary to the "plain and ordinary meaning" of the limitation. Under these circumstances, the Federal Circuit has held district courts are required to construe the disputed phrase and determine the proper scope of the claim.  *See O2 Micro Intern. v. Beyond Innovation Tech.*, 521 F.3d 1351, 1361 (Fed. Cir. 2008):

Consequently, this Section 112 issue should be resolved by claim construction because it boils down to whether the phrase "from within" in independent claim 4 completely encompasses all of the subject matter covered by the phrase "substantially from therewithin" in dependent claim 5.  Intuitive contends that it clearly does not, as demonstrated by the plain and ordinary meaning of "substantially," the written description, the prosecution history, and any extrinsic evidence that the Court may want to consider, such as the expert opinions set forth in the Declaration of Dr. Robert Howe (attached as Ex. D).

Here, the ordinary, broadening meaning of "substantially" should be applied to this claim limitation because this term (as well as the term "entirely") does not appear anywhere in the '650 patent's written description with respect to a beam engaging the jaws.  Nowhere in the written description of the '650 patent is there a mention of any structure, including I-beam member 70, engaging another structure either "entirely from therewithin" or "substantially from therewithin." Instead, the term "within" is only used in connection with the relationship between an I-beam's upper and lower portions with respect to the jaws:

> A leading edge 84a of the central web portion 84 may preferably define a cutting blade for incising tissue as the I-beam member 70 is moved distally as described below.  As shown in FIG. 11, an arcuate channel 90 within which the central web portion 84 travels, is defined in the opposing jaws 17 radially inward of the arcuate lines of staple carrying slots (not shown).

Ex. A at 5:47-53.

Instead, this claim limitation only appeared after a personal interview with the Examiner on May 19, 2016, and subsequent amendment (Ex. F at 3) in which Rex introduced the disputed claim limitation into dependent claim 5 in an apparent attempt to indirectly broaden the scope of independent claim 4:

|  | **Claim Term before Interview & Amendment** | **Claim Term as Amended on May 19, 2016** |
|---|---|---|
| **Independent claim 4 (application claim 24)** | No recitation of "a beam" | "a beam configured to engage the first and second jaws _from within_ the first and second jaws" |
| **Dependent claim 5 (application claim 25)** | "a beam configured to engage the first and second jaws _from therewithin_" | "the beam is configured to engage the first and second jaws _one of entirely or substantially from therewithin_" |

The Examiner agreed during the interview that an independent claim would be allowable if limited to include a beam that is configured to engage the first and second jaws _from within_ the first and second jaws, as formerly recited in the dependent claim. But the prosecution history shows no agreement and no discussion about the scope of a claim directed to a beam configured to engage the jaws "substantially from therewithin." *See* Ex. MM, page 2, which instead refers to language in issued claim 4 indicating "the second distance and the alignment being maintained by a beam configured to engage the first and second jaws from within the first and second jaws."

In summary, Rex was told by the Examiner that he would allow claims that included an existing limitation in dependent claim 5 reciting "a beam configured to engage the first and second jaws from therewithin." Ex. F at 8. Rex then chose to amend independent claim 4 to incorporate the "from within" limitations that were formerly in dependent claim 5. But Rex did not cancel the dependent claim. Instead, Rex amended it to include language defining the relationship between

the I-beam member and jaws in a manner that does not appear anywhere in the written description, i.e., the beam engages the jaws *one of entirely or substantially* *from therewithin.*" The result is dependent claim 5 covers subject matter outside the scope of claim 4, i.e., beams can engage jaws "substantially" from within instead of "from within."  As shown, the result is that dependent claim 5 covers subject matter outside the scope of claim 4, i.e., beams can engage jaws "substantially" from within instead of "from within."

The Declaration of Dr. Howe includes his opinion that a POSA would have unequivocally understood that reciting that the beam is configured to engage the jaws "one of entirely or substantially from therewithin" is broader than reciting that the beam is configured to engage the jaws "from within."  Ex. D, ¶¶ 16, 21.  Furthermore, a POSA would not have been able to ascertain with reasonable certainty the scope of claim 5 due to its purported breadth beyond the scope of claim 4.  *See id.*, ¶ ¶ 17, 19, 20, 22-24.  A POSA also would not understand, with reasonable certainty, how the term "from within" in claim 4 could encompass and be broader than the term "substantially from therewithin" in claim 5, when read in light of the specification and the prosecution history.  *Id.*, ¶ 21.  Applying any reasonable interpretation of the limitation indicating the beam engages jaws "*substantially* from therewithin," claim 5 violates Section 112(4) and the limitation is therefore indefinite.

### b.     The Record Shows the Only Failures to Provide Relevant Notice Are Attributable to Rex

Rex's claim that Intuitive has "not disputed any particular aspect of Plaintiff's proposed construction" is completely disingenuous, as is any claim that it lacks notice of Intuitive's defense or that it lacks any necessary discovery.

To begin with, Rex has refused to provide any explanation as to how its proposed "plain and ordinary meaning" construction provides definiteness to the broader dependent claim.

Furthermore, Intuitive indicated this limitation was indefinite in the list it provided on December 3, 2019, while Rex's list said every term "should be accorded their plain and ordinary meaning" without saying what those meanings are. *See* Ex. X at 2; Ex. Y at 1. Intuitive's letter to Rex counsel dated December 11th asked for Rex's constructions, stating "Intuitive cannot engage in a meaningful meet and confer with you, or agree to filing of a Joint Claim Construction Chart, without knowing what Rex's construction are for the 13 terms on our List." *See* Ex. Z. Rex still failed to provide a proposed construction, even during a meet-and-confer on December 23. In Intuitive's email communication to Rex counsel dated December 26, we again indicated that Rex was required to provide its proposed constructions, and stated: "Intuitive will ask the Court to preclude Rex from later offering a specific construction for the term" for any term that Rex indicated should be construed according to ordinary meaning "without stating what that meaning is." But in every draft of the Joint Claim Construction Chart, and in the final version submitted to this Court, Rex indicated this limitation should be construed according to its "plain and ordinary meaning" and refused to state what that meaning is. *See* Ex. G.

Additionally, Rex's claim that it lacks notice and discovery is also specious. AS acknowledged in Rex's brief, Intuitive provided Supplemental Invalidity Contentions on December 20, 2019. In those contentions, Intuitive gave notice of the same indefiniteness challenge to claim 5 that is being made here, expressly stating that claim 5 "improperly broadens independent claim 4 by reciting 'configured to engage the first and second jaws one of entirely or substantially from therewithin,' whereas claim 4 recites the narrower recital of "beam configured to engage the first and second jaws from within the first and second jaws." *See* Ex. C at 94. Rex has never asked Intuitive to meet and confer on providing more detailed invalidity contentions. Instead, Intuitive

had to send a letter to Rex counsel dated December 10, 2019, setting up a meet and confer regarding Rex's failure to provide responsive validity contentions to Intuitive.  *See* Ex. AA. [9]

And finally, Rex's counsel cannot with a straight face argue that he needs to obtain discovery from Intuitive about the meaning and definiteness of this phrase.  The language of claim 5 does not appear in the written description and was solely authored by its lead attorney in this case, Mr. Erik Milch.  He is the same attorney who prosecuted the application, the same attorney who discussed the "from within" language with the Examiner during a personal interview on May 19, 2016, and the same attorney who submitted an amendment on that date to include language in dependent claim 5 indicating the beam engages the jaws "one of entirely or substantially from therewithin."

### iii.    Plaintiff's Reply Position

#### a.    Intuitive's untimely construction of "from within" should be rejected

Intuitive's indefiniteness attack is based on an erroneous—and previously undisclosed—construction of claim 4's phrase "from within." For the very first time in its Answering Brief, Intuitive argues that "from within" actually means "entirely from within." (*See* Howe Decl. ¶ 15 ("A POSA reading this limitation would have understood it to mean that the beam is configured to engage the first and second jaws *entirely* from within the first and second jaws.") (emphasis added).) At no point prior to filing its Answering Brief did Intuitive argue that this phrase required construction—much less propose a construction that fundamentally alters the scope of the claim.

---

[9] Nor is Rex's argument that Intuitive argued, in its IPR petition, that the claims be construed according to their plain and ordinary meaning persuasive.  As shown in the IPR petition, Intuitive expressly stated that the scope of the claims is "unclear".  *See* Ex. U at 31, 59 and 83.  Intuitive also expressly reserved the right to "challenge the definiteness of any claim in the underlying litigation" (*Id.* at 9) – particularly because indefiniteness arguments cannot be raised during IPR proceedings.

For this reason alone, the Court should reject Intuitive's indefiniteness challenge and adopt Rex Medical's proposed construction. *See Leader Techs., Inc. v. Facebook, Inc.*, 770 F. Supp. 2d 686, 700 (D. Del. 2011), *aff'd*, 678 F.3d 1300 (Fed. Cir. 2012).

### b.    "from within" does not mean "entirely from within"

Intuitive's indefiniteness challenge also fails on the merits for a very simple reason: the phrase "from within" does not mean "***entirely*** from within." (*See* Ex. LL ¶¶ 14-15, 17.) Rather, "from within" encompasses a wider range of options, including "entirely from within" as well as "substantially from within." (*Id.* at ¶ 17.) As such, claim 4's requirement that the beam engage "from within" the jaws is broader than claim 5's requirement that the beam engage "either substantially or entirely from therewithin" and Section 112 ¶ 4 is inapplicable.[10]

Although not clear from the body of its brief, Intuitive's expert declaration makes explicit that Intuitive's indefiniteness challenge is premised on improperly limiting the phrase "from within" to add the requirement that the beam must engage "***entirely*** from within." (*See* Ex. D ¶ 15.) Without this added limitation, Intuitive's challenge fails. If "from within" is given its ordinary meaning—which includes "entirely from within" as well as "substantially from within" as well as lesser degrees—then dependent claim 5 necessarily imposes a further limitation on its independent claim 4. (Ex. LL ¶¶ 16, 18.)

Nothing in the intrinsic record suggests—much less requires—adding the word "entirely" to the plain claim language. The only support for Intuitive's addition comes from Dr. Howe's declaration. (*See* Ex. D ¶ 15.) Dr. Howe's two-sentence *ipse dixit*, however, is insufficient to

---

[10] To the extent the Court finds that both parties' interpretations are practicable, Rex Medical submits that the Court should adopt Rex Medical's interpretation so as to preserve the validity of claim 5. *See Phillips*, 415 F.3d at 1327 (acknowledging maxim that claims should be construed to preserve their validity).

overwrite the words used in the claims themselves.[11] *See Quest Diagnostics Invs. LLC v. Lab. Corp. of Am. Holdings*, C.A. No. 18-1436-MN, 2020 WL 210799, at *2 (D. Del. Jan 14, 2020) ("Where the intrinsic record unambiguously describes the scope of the patented invention, reliance on any extrinsic evidence is improper.") (citing *Pitney Bowes, Inc. v. Hewlett-Packard Co.*, 182 F.3d 1298, 1308 (Fed. Cir. 1999)).[12]

Unlike Dr. Howe, claims 4 and 5 use different terms (*i.e.,* "from within" and "entirely from therewithin"). Federal Circuit "precedent instructs that different claim terms are presumed to have different meanings." *Helmsderfer v. Bobrick Washroom Equip., Inc.*, 527 F.3d 1379, 1382 (Fed. Cir. 2008) (citing *Applied Med. Res. Corp. v. U.S. Surgical Corp.*, 448 F.3d 1324, 1333 n.3 (Fed. Cir. 2006) ("[T]he use of two terms in a claim requires that they connote different meanings"); *see also CAE Screenplates Inc. v. Heinrich Fiedler GmbH,* 224 F.3d 1308, 1317 (Fed. Cir. 2000) ("In the absence of evidence to the contrary, we must presume that the use of these different terms in the claims connotes different meanings."). Dr. Howe's declaration does precisely the opposite. By

---

[11] To support his argument that the limiting construction of "within" is consistent with how the term is used "throughout the '650 patent," Dr. Howe cites to two appearances of "within" in the specification of the '650 patent. (Ex. D ¶ 15 (citing Ex. A at 3:34-35; 4:19).) Setting aside that these two instances have nothing to do with the claim limitation at issue, Dr. Howe's "analysis" ignores other uses of "within" which contradict his assertion. (*See, e.g.,* Ex. A, 3:12-17 (FIGs. 21 and 22 "show[] a system in accord with the present invention <u>within</u> the stomach," despite the figures showing the system not *entirely* within the stomach); 5:50-54 ("an arcuate channel **90** <u>within</u> which the central web portion **84** travels" despite the central web portion not being *entirely* within the channel").)

[12] Indefiniteness must be proven by clear and convincing evidence. *See Quest Diagnostics*, 2020 WL 210799, at *3 (citing *Intel Corp. v. VIA Techs., Inc.*, 319 F.3d 1357, 1366 (Fed. Cir. 2003); *see also Tech. Licensing Corp. v. Videotek, Inc.*, 545 F.3d 1316, 1338 (Fed. Cir. 2008)). Because the claim language is clear, Rex Medical does not believe that extrinsic evidence is necessary to show that Intuitive has failed to meet this high bar. To the extent the Court wishes to entertain expert testimony, Mr. Juergens' declaration further demonstrates that Intuitive has not met its burden. (Ex. LL ¶¶ 14-18.)

conflating the meaning of two different terms from the same claim, Dr. Howe asks the Court to commit reversible error. *See Helmsderfer*, 527 F.3d at 1382.[13]

In addition to violating established precepts of claim construction jurisprudence, the Federal Circuit has expressly rejected the exact type of argument that Intuitive now makes. In *Duncan Parking Technologies, Inc. v. IPS Group, Inc.*, the Federal Circuit reversed a district court's claim construction, finding that it had "erred by construing 'receivable within' as meaning 'capable of being contained [entirely] inside.'" 914 F.3d 1347, 1363 (Fed. Cir. 2019) (alteration original). The Federal Circuit specifically faulted the district court for adding a "requirement that the 'entire' lower portion of the device must be contained within the housing." *Id.* at 1364. The addition of the word "entirely" rendered the district court's construction "much narrower than the plain meaning of the claim limitation" and was thus improper. *Id.* Just as the defendant did in that case, Intuitive is arguing for the exact same addition. And just as the Federal Circuit did, the Court should reject the argument.

For all the foregoing reasons, Rex Medical submits that Intuitive's construction of "from within" as "entirely from within" is improper, contrary to the law, and contrary to the plain meaning of the claims.

### iv.     Defendants' Sur-Reply Position

---

[13] Dr. Howe's analysis of the prosecution history also misses the mark. (Howe Decl. ¶¶ 22-23.) Dr. Howe claims to be confused by the applicant's discussion and distinguishing of the Young reference. (*Id.* ¶ 23.) But the prosecution history is clear: Young was distinguished by adding the "from within" limitation because "*[n]o part* of the 'upper portion' and 'lower portion' of the structure in Young engages the head 16 *from therewithin as claimed*." (Ex. F at 9 (emphasis added).) Young thus failed to disclose the limitation at issue because *no* part of the beam engaged the jaws from within. (*Id.*) The allowed claims were thus distinguishable because they required *some* part of the beam to engage from within, not because they required the *entire* beam to engage from within.

The dispute boils down to whether "*substantially* from []within[14]" in dependent claim 5 is broader or narrower than "from within" in independent claim 4.   Rex's expert admits that "*substantially* . . . from therewithin" is a term of degree for the limitations in claim 4.  Ex. LL, ¶ 17. Accepting Rex's contentions that ordinary meaning should be applied and that "substantially" is a term of degree, claim 5 is invalid under Section 112(2) and (4) because the controlling case law holds that "substantially X" is broader than "X."

The lion's share of Rex's reply is devoted to its argument that "'from within' does not mean 'entirely from within.'"  Most importantly, Rex's argument is irrelevant to a determination of the *relative* scope of claims 4 and 5.  Whatever latitude is given to the term "from within" in claim 4, the term "*substantially* from therewithin" in claim 5 is entitled to more.

Rex and its expert come to the remarkable conclusion that "from within" in claim 4 is a "broader limitation" than "substantially from within" in claim 4.  But Mr. Juergens never explains why and refers to no specific intrinsic or extrinsic evidence to support this opinion.  Similarly, Rex's reply fails to say what the ordinary meaning is of "from within," other than to conclude that it "includes 'entirely from within' as well as 'substantially from within' as well as lesser degrees."

Case law makes clear that reciting an element is "substantially X" is *broader* than reciting an element is "X."  In *Wilson Sporting Goods Co. v. Hillerich & Bradsby Co.*, 442 F.3d 1322 (Fed. Cir. 2006), the Court contrasted claim 1, which required an insert having "a circular cross-section," with claim 18, which required an insert having "a *substantially* circular cross-section," explaining "[t]he term 'substantial' implies 'approximate,' rather than 'perfect.'  Therefore, in contrast to the

---

[14] The parties agree there is not "a meaningful distinction between the '650 patent's use of 'from within' [in claim 4] and 'from therewithin' [in claim 5]."  Ex. LL, ¶ 17, n.1.

insert of claim 1, the insert in [claim 18] need not be perfectly circular."  442 F.3d at 1329.[15]  And use of "substantially" to broaden claim scope is well-known to patent lawyers: "The term 'substantially' is often used in conjunction with another term to describe a particular characteristic of the claimed invention.  *It is a broad term*."  Ex. II, MPEP § 2173.05(b)(III)(D) (9th ed., Rev. 08.2017, Jan. 2018) (emphasis added).

Rex's request that "from within" be construed according to its ordinary meaning results in claim 4 not covering subject matter that is "outside."  This is confirmed by the intrinsic evidence, which shows beam 70 is enclosed "inside" jaws 40 and 50.  *See* Ex. A, Figures 11, 13, 15.  Rex never mentions what the specification discloses about the beam's location.  Nor does Rex point to any mention of a beam engaging jaws "substantially" instead of entirely from within.

The argument that "substantially" is a narrowing term of degree is also refuted by how Rex uses the term "substantially" in other claims.  Claim 16 recites "additional slots are arranged in a second row *substantially parallel* to the first row of slots."  If Rex's ordinary meaning for "substantially" is correct, claim 16 is narrower than a claim that recites "additional slots are arranged in a second row *parallel* to the first row of slots."

Rex expressly relied on "from within" to distinguish prior art beams that were mostly but not entirely within the jaws.  *See, e.g.*, Ex. Q, support beam 52 in Figs. 1-3.  To distinguish that prior art, Rex amended claim 4 to incorporate "from within" limitations that were originally in dependent claim 5.  Claim 5 also had to be amended, which resulted in the broadening term "substantially" appearing for the first time.  Ex. F at 3, 8.  The only place where Rex addresses the

---

[15] The Court in *Vederi, LLC v. Google*, 744 F.3d 1376, 1383-84 (Fed. Cir. 2014), found the district court erred in construing "substantially elevations" as "requiring elevation, and 'elevation' alone in the strict sense" because "substantially" "takes on important meaning" to cover a broader range. *See also Liquid Dynamics Corp. v. Vaughan Co.,* 355 F.3d 1361, 1368 (Fed. Cir. 2004) ("term 'substantial' is a meaningful modifier implying 'approximate,' rather than 'perfect'").

criticality of its beam being "within" the jaws is in a footnote, where Rex's attorneys (but not its expert) disagree with Dr. Howe.  Rex argues, "Young thus failed to disclose the limitation at issue because **no** part of the beam engaged the jaws from within," but this argument is unsupported because the actual quote shows only the "upper portion" and "lower portion" of Young's beam 52 are not "within" the jaws.

Any argument that Rex is entitled to broaden "within" to cover a beam that is partly outside is belied by Rex's related application 16/185,506.  The PTO required Rex to amend a claim "to include detailed language about the beam," i.e., to state the jaws were engaged "***entirely from within*** an outermost surface" of the jaws.  Ex. JJ; Ex. KK at 3 (emphasis added).  This language was added to overcome the same Young patent (Ex. Q) and the reasons for allowability indicate the PTO considered part of the beam in Young to be within the jaws.  Ex. KK at 6 (Young fails to disclose end portions "configured to engage at least one of the first jaw and the second jaw *entirely from within . . . .*") (emphasis added).

Because of the similarity in intrinsic evidence, the reasoning in *Motionless Keyboard Co. v. Microsoft Corp.*, 486 F.3d 1376 (Fed. Cir. 2007) is applicable16 here.  The Court held that "[b]y using the terms 'concavity in said housing' and 'keyboard within said concavity,' the patentee defined a depression within the housing of the device and set the keyboard *entirely within* that depression."  486 F.3d at 1380 (emphasis added).  This construction was consistent with the specification and drawings, which showed the keyboard totally within the concavity.  *See also*

---

[16] Because of the difference in intrinsic evidence, use of "from within" in claim 4 is distinguishable from use of "within" in *Duncan Parking Technologies*.  In that case, use of "entirely" in construing "receivable within" was not only "unsupported by either the specification or the prosecution history," but also excluded the preferred embodiment of the patent-in-suit.  914 F.3d 1347 at 1364.

*Brembo v. Alcon Components*, No. 04 C 5217, 2005 WL 1377858, at *4-7 (N.D. Ill. May 31, 2005) (construing "inside" in "duct formed inside the caliper body" as meaning "entirely within").

Finally, Intuitive's invalidity and claim construction contentions for claim 5 are timely. Intuitive identified this element in its initial list of terms for construction, and Intuitive made the same invalidity argument it is making here in Supplemental Invalidity Contentions served on December 20, 2019. *See* Ex. C at 94. And the scope of "substantially . . . from therewithin" in dependent claim 5 is determined in comparison to "from within" in independent claim 4, which is exactly what Intuitive and Dr. Howe have done.

## C.    "staple pusher" (Claims 4, 6)

| Plaintiff's Proposed Construction | Defendants' Proposed Construction |
| --- | --- |
| Plain and ordinary meaning. | Ordinary meaning, i.e., component that presses against a staple |

### i.    Plaintiff's Opening Position[17]

The plain and ordinary meaning of this term is clear, and no specific construction is necessary. *See, e.g.*, *Intuitive Surgical, Inc. v. Auris Health, Inc.*, No. 18-1359 (MN), 2019 WL 6840327, at *2, 9-10 (D. Del. Dec. 16, 2019) (this Court concluding that the plain and ordinary meaning of the term applies, and consequently no construction was needed)[18]; *Select Retrieval LLC v. Amerimark Direct LLC*, No. 1:11-cv-00812-RGA, 2013 WL 5657565, at *4 (D. Del. Oct. 17, 2013) ("[Claim term] needs no construction as the term adopts the plain and ordinary meaning as

---

[17] For this and the following terms, Defendants propose that the terms' ordinary meaning should apply, but then propose specific constructions that contradict, are inconsistent with, or needlessly import limitations into the plain and ordinary meaning. These terms are not complex technical terms with special meanings that require an explanation as to their plain and ordinary meaning. They are simple terms and phrases that are readily understood in plain English. The Court should reject Defendants' approach of masking its specific contradictory and inconsistent constructions under the guise of "ordinary meaning."

[18] Tellingly, Intuitive Surgical, Inc. did not propose specific constructions for plain and ordinary meaning terms in another case from this District.

regularly understood by one skilled in the art."). The Court should reject Defendants' unnecessary proposed construction.

While both parties agree that the plain and ordinary meaning should apply to this term, Defendants also propose a specific construction, adding words that are unnecessary and inconsistent with the plain and ordinary meaning. The '650 Patent's specification provides examples of what a "staple pusher" is and does: "The staple pushers **118** are positioned so that, when contacted by the driving stem **115**, each staple pusher **118** is driven through a corresponding one of the staple slots to drive a staple housed therein from the slot out of the staple carrying portion **40**, through both thicknesses of the folded portion of tissue clamped between the jaws **17** and against the staple forming surface **50**a of the staple forming portion **50** to couple the two thicknesses of tissue to one another." Ex. A, 6:6-14.[19] Thus, as the term implies, a "staple pusher" is simply something that pushes staples.

Defendants' unnecessary, added limitation of "press[ing] against a staple" should be disregarded. *See, e.g.*, *Intuitive Surgical, Inc.*, 2019 WL 6840327, at *2, 9-10. Not only does Defendants' proposed construction ignore the role of moving/pushing staples,[20] their construction adds a "presses against" limitation. While a "staple pusher" may press against a staple, it is an added limitation not part of the claim, and should thus be disregarded. *See, e.g., 3M Innovative Properties Co. v. Tredegar Corp.*, 725 F.3d 1315, 1321 (Fed. Cir. 2013) ("While we construe the claims in light of the specification, limitations discussed in the specification may not be read into the

---

[19] *See also* Ex. A, Fig. 18, 6:26-36 ("When the I-beam member **70** is driven by the pusher **80**, the sloped leading edge of the upper beam portion **82** a contacts sequentially each of a plurality of staple pushers **118** to drive them through their respective staple slots to *drive the staples housed therein from each slot out of the staple carrying portion* **40**, through both thicknesses of the folded portion of tissue clamped between the jaws **17** and into the staple forming pockets **122** formed in the staple forming surface **50** a of the staple forming portion **50** to couple the two thicknesses of tissue to one another.") (italics added).

[20] For example, even two *stationary* objects can "press against" each other.

claims."); *Burke, Inc. v. Bruno Independent Living Aids, Inc.*, 183 F.3d 1334, 1340 (Fed. Cir. 1999) (opining that "[c]onsistent with the principle that the patented invention is defined by the claims, we have often held that limitations cannot be read into the claims from the specification or the prosecution history" and concluding the district court "improperly read additional limitations into [the] claim"); *see also Omega Eng'g, Inc. v. Raytek Corp.*, 334 F.3d 1314, 1323 (Fed. Cir. 2003) (opining that there is "a heavy presumption that claim terms carry their full ordinary and customary meaning, … unless the patentee unequivocally imparted a novel meaning to those terms or expressly relinquished claim scope during prosecution" (internal quotations and citations omitted)).

### ii.     Defendants' Answering Position

Intuitive's construction is that this limitation is directed to the "component that presses against a staple."  This construction corresponds to the ordinary meaning of the term and is directly supported by the written description and other intrinsic evidence.

For this limitation, Rex argues that plain and ordinary meaning applies but refuses to say what that meaning is.  A material dispute exists because Rex argues that Intuitive's six-word construction contains words that are "unnecessary and inconsistent" without providing any alternate phrase that only includes words that are necessary and consistent.

In particular, it has become apparent from Rex's contentions in this case that its simplistic answer that a staple pusher is "something that pushes staples" has been stretched to mean *anything* that pushes staples, as well as *anything that pushes anything* that pushes staples.  Under these circumstances, the court is required to construe the disputed phrase; *O2 Micro Intern. v. Beyond Innovation Tech.*, 521 F.3d 1351, 1361 (Fed. Cir. 2008); and cannot resolve the dispute by simply rejecting the only proposal offered.  See *Eon Corp. IP Holdings v. Silver Spring Networks*, 815 F.3d 1314, 1319 (Fed. Cir. 2016):

> By determining only that the terms should be given their plain and ordinary meaning, the court left this question of claim scope unanswered, leaving it for the jury to decide.  This

was legal error. . . . [S]imply rejecting one proposed construction does not mean that a general jury instruction to give terms their plain and ordinary meaning resolves the relevant dispute.  The court remained obligated to provide the jury with a clear understanding of the disputed claim scope . . .

Intuitive's construction exactly corresponds to the plain and ordinary meaning for staple pusher and is superior to Rex's empty column because it does not ensnare "something" merely because it pushes something else.  The first dictionary definition provided in Merriam-Webster for the word "push" is "*to press against* with force in order to drive or impel." Ex. S (emphasis added).  Thus, the word "press" is necessary to and consistent with the specific purpose of a staple pusher.

The specification, drawings, and prosecution history all support Intuitive's construction.  As shown in Figures 15 and 18 below, staple pushers 118 are the components that must necessarily "press against" the staples to drive them through tissue and into staple forming pockets 122: "The staple pushers **118** are positioned so that, when contacted by the driving stem **115**, each staple pusher **118** is driven through a corresponding one of the staple slots to drive a staple housed therein from the slot out of the staple carrying portion **40**, through both thicknesses of the folded portion of tissue clamped between the jaws **17** and against the staple forming surface **50***a* of the staple forming portion **50** to couple the two thicknesses of tissue to one another." Ex. A, 6:6-14.



FIG. 15

FIG. 18

The claims in the provisional application from which the '650 patent claims priority also support Intuitive's definition. A claim directed to staple pushers indicated they included "angled drive surfaces configured . . . to urge surgical staples from the slots." Ex. L, claim 3. This language confirms that a "staple pusher" in the context of the '650 patent is a component that must press against a staple.

During prosecution, the examiner cited element 284 of U.S. Patent No. 5,645,209 as corresponding to the claimed staple pusher. *See* Ex. E at 5. Element 284 is shown in Figure 16 below and is described as follows: "[a] plurality of *pusher elements 284* are disposed in cartridge 280 in *abutment with a plurality of corresponding staples 285*." Ex. P at 15:61-63 (emphasis added). This cited prior art also describes an embodiment having "a plurality of surgical fasteners 825 and a plurality of corresponding staple pushers 827," as shown in Figure 66 below. *Id*. at 29:36-40. Thus, the prosecution history also indicates a "staple pusher" should be construed as corresponding to a component that actually presses against a staple.

 

Ex. P at Fig. 16 (partial); *Id.* at Fig. 66 (partial).

In contrast, the mischief caused by Rex's "something that pushes" interpretation can be demonstrated by identifying all of the different components disclosed in the '650 patent drawings

47

and specification.   A surgical stapler is a mechanical device having a number of different components with different functions that push against one another, but components 118 in the '650 patent are the only "staple pushers" because they actually perform the function of driving staples out of staple carrying portion 40.   But these staple pushers 118 are sequentially contacted by the upper beam portion 82a of I-beam member 70, which in turn is driven by flexible pusher 80, which in turn is driven by linear drive screw 76 shown in Fig. 10, which in turn is rotated by staple driving cable 74, which in turn is rotated by pinion gear 72b shown in Fig. 9, which in turn is rotated by gear rack 72a, which is operated by pressing upper clamping handle 12b.

If a jury is instructed only to apply "plain and ordinary meaning" and is exposed to Rex's vague and undefined requirement that a staple pusher is "something that pushes staples," everything in the chain between a surgeon's hand and staples may potentially qualify as a "staple pusher," including the I-beam, flexible pusher, driving cable, drive screw, pinion gear, gear rack, and handle. As shown below, the claim charts prepared by Rex that were provided with Plaintiff's First Amended Complaint point to "something" in that chain that never touches a staple, and conveniently label it as a staple pusher because it pushes against other moving parts.  Ex. W at 7, 11; *see also* Ex. V at ¶¶ 58, 62.





Consequently, construction of this term is required because Rex is using its unbounded definition of "staple pusher" as a license to point to any moving structure in a stapler.

### iii.    Plaintiff's Reply Position

This is a simple term with a simple meaning. As explained in Rex Medical's opening brief, a staple pusher is simply a component that pushes staples. (*See supra* Section II.C.i.) Intuitive cannot earnestly dispute that pushing staples is the defining characteristic of a "staple pusher." Instead, Intuitive asks the Court to require that a "staple pusher" must also physically "press against" a staple. This requirement is nowhere to be found in the claims. Indeed, the claim language requires only that the staple pusher is "configured to cause the staple to move from a first position . . . to a second position." (Ex. A, claim 4.) In even simpler terms, this limitation shows that the staple pusher pushes staples. There is nothing in the claims that requires the staple pusher to be in physical contact with (or "press against") the staples.

Instead, Intuitive turns to the exemplary embodiments disclosed in the specification to limit the claim's scope. (*See supra* at 46-47 (citing FIGs 15-18).) Intuitive's request to read in limitations based on disclosed embodiments violates the Federal Circuit's repeated admonishments against doing exactly that. *See Hill-Rom*, 755 F.3d at 1371-72 ("While we read claims in view of the

specification, of which they are a part, we do no read limitations from the embodiments in the specification into the claims.") (citing *Liebel-Flarsheim*, 358 F.3d at 904). In Intuitive's view, because the embodiments disclosed in the specification show a specific type of staple pusher (i.e., one that contacts the staples directly), the '650 patent's invention is limited to only staple pushers that contact staples directly. This is directly contrary to the Federal Circuit's consistent guidance on this issue: "[e]ven when the specification describes only a single embodiment, the claims of the patent will not be read restrictively unless the patentee has demonstrated a clear intention to limit the claim scope using 'words or expressions of manifest exclusion or restriction.'" *Liebel-Flarsheim*, 358 F.3d at 906 (quoting *Teleflex, Inc. v. Ficosa N. Am. Corp.*, 299 F.3d 1313, 1327 (Fed. Cir. 2002)). Here, the specification describes multiple, exemplary embodiments. (*See e.g.*, Ex. A, 3:21-23; 3:37-46; 4:59-63; 6:1-20; 6:21-26; 6:41-56; 7:33-37.) Although these embodiments include figures showing staple pushers in contact with the staples, nothing in the claims, specification, or prosecution history comes close to "a clear intention to limit the claim scope" to these disclosed embodiments. *See Hill-Rom*, 755 F.3d at 1372. All the material cited in Intuitive's answering brief—provisional claims, prior art, and illustrative figures—is consistent with Rex Medical's interpretation of this term, i.e., it all shows that staple pushers are components that push staples. (*See supra* at 47.) None of the material requires that a staple pusher contact (or "press against") the staple or amounts to a clear disavowal of a staple pusher that does not. *See Hill-Rom*, 755 F.3d at 1371 ("The standards for finding lexicography and disavowal are exacting.").

Intuitive's sole reasoning for limiting the scope of the claims is its unfounded fear that the jury will somehow be confused by the plain language of the claims and Rex Medical's straightforward application of the term. Intuitive invokes the specter of potential "mischief" by building a strawman: that Rex Medical's construction amounts to "anything that pushes anything that pushes staples." (*See supra* at 45-47.) But this is not Rex Medical's construction; nor is it the

plain and ordinary meaning of the term "staple pusher."[21] "Staple pusher" is not a term of art with some specialized meaning. It is not a term with a specific connotation when used in conjunction with the asserted '650 patent. As even laypersons will understand, a "staple pusher" in this context is exactly that: a component that pushes staples.

The Court should thus reject Intuitive's bid to improperly limit the scope of the claims and impose an additional "presses against" limitation for this term.

### iv.   Defendants' Sur-Reply Position

Rex argues in its reply that its construction is *not* "anything that pushes anything that pushes staples." Yet Rex retreats in its opening brief and reply to circular definitions, i.e., "a 'staple pusher' is simply something that pushes staples" or "a component that pushes staples."

Under Intuitive's construction, the term reads on the only components identified as staple pushers by: (1) the '650 patent, i.e., staple pushers 118; (2) the prior art Tsuruta reference (Ex. R) cited in the '650 patent specification, i.e., "staple pusher 79" which "abuts on the arching end portions of the staple 22, pushing the staple 22 forward"; and (3) the PTO in applying prior art, i.e., element 284 of Green '209.  *See* Ex R, U.S. Pat. No. 5,389,098, at 15:65-16:1; 23:44-45; Ex. P, at 15:61-63.  And unlike Rex's construction, Intuitive's does not read on other components that the patentee told the public are not staple pushers but are instead other elements that perform different functions than pressing against staples, such as I-beam 70 and handle 12.  Contrary to Rex's legal argument, this evidence is appropriate to use in construing "staple pusher" because the patentee "with reasonable clarity, deliberateness, and precision" defined what is and is not a staple pusher and because the prosecution history and cited art demonstrate what the "ordinary and accustomed

---

[21] Indeed, such a component would more appropriately be called a staple pusher pusher.

meaning" of staple pusher was to a POSA.  *See Renishaw PLC v. Marposs Societa' per Azioni*, 158 F.3d 1243, 1250 (Fed. Cir. 1998).

Rex makes no attempt to explain where to draw a line in a long chain of stapler components. There is no way to knowing whether Rex's "ordinary meaning" captures I-beam member 70, flexible pusher 80, linear drive screw 76, staple driving cable 74, pinion gear 72b, gear rack 72a, and/or upper clamping handle 12b, which all enable firing of staples.  But the intrinsic evidence shows that only component 118 at the end of this chain, which presses against staples, is a staple pusher, as made clear in Rex's related application 16/185,506.  In that application, the claims recite the other moving/pushing parts as separate elements with different names and functions than "staple pusher."  In particular, the "staple pusher" is a completely separate claim element from the "linear pusher configured to move the beam . . . thereby triggering via the beam the staple pusher to move the staple."  Ex. K at 2.

In this litigation, Rex has used this limitation as a "nose of wax," i.e., broad for infringement and narrow for validity.  Intuitive's answering brief showed that Rex's infringement charts point to components that never touch a staple, presumably because the only way to meet other claim limitations is to mislabel other moving parts as staple pushers.  Ex. W at 7, 11; Ex. V at ¶¶ 58, 62. In stark contrast, Rex in its validity contentions on Jan. 10, 2020, declares without explanation that this stapler pusher element is "not disclosed by Green 209."  Ex. HH at 21.  This flies in the face of the PTO's reliance on element 284 of Green '209 as corresponding to the claimed staple pusher, and Rex's failure to challenge the PTO's conclusion.  *See* Ex. E, at 5.

> **D.** **"at least one of the lower portion or the upper portion configured to cause the staple pusher to move a staple" (Claim 6)**

| Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| Plain and ordinary meaning. | Ordinary meaning, i.e., at least one of the lower portion or the upper portion is shaped to contact the staple pusher to move a staple |

### i.     Plaintiff's Opening Position

As with "staple pusher," no specific construction is necessary for this term because—as both parties agree—the plain and ordinary meaning applies. *See, e.g.*, *Intuitive Surgical, Inc.*, 2019 WL 6840327, at *2, 9-10. Defendants' proposal merely rephrases "configured to cause" as "shaped to contact." There is no need to rewrite the claim as such because there is nothing ambiguous about this claim term. *See, e.g.*, Ex. A, Claim 6, 6:21-40. For the same reasons previously discussed, Defendants' attempt to change the unambiguous claim language is unwarranted and unnecessary, and should thus be rejected. *See U.S. Surgical Corp. v. Ethicon, Inc.* 103 F.3d 1554, 1568 (Fed. Cir. 1997) (Claim construction "is not an obligatory exercise in redundancy."); *see also 3M Innovative Properties*, 725 F.3d at 1321; *Burke*, 183 F.3d at 1340.

### ii.     Defendants' Answering Position

Intuitive's proposed construction for this term, as for other terms at issue, is the ordinary meaning.  As explained for other terms, Intuitive has have made an effort to explain what a POSA would have understood the ordinary meaning of the claim terms to be.  *Phillips v. AWH Corp.*, 415 F.3d 1303, 1313 (Fed. Cir. 2005).  For this term, a POSA would have understood, when reading the claim term in light of the rest of the patent and prosecution history, that "configured to cause the staple pusher to move a staple" meant "shaped to contact the staple pusher to move a staple."

Before turning to the specification and drawings, it is informative to look to the other claims to determine what the patentee intended its claims to mean.  *Phillips*, 415 F.3d at 1314 ("Other claims of the patent in question, both asserted and unasserted, can also be valuable sources of enlightenment as to the meaning of a claim term.") (citing *Vitronics Corp. v. Conceptronic*, 90 F.3d 1576, 1582 (Fed. Cir. 1996)).  Claim 19 of the '650 patent recites a similar but broader limitation, reciting that "one of the opposite end portions of the beam is configured to enable firing of the plurality of staples." Ex. A, claim 19.  Clearly, Rex intended the limitation in dispute in claim 6 to

be narrower than claim 19, as there is no mention of a "staple pusher to move" the staple in claim 19.  Thus, Rex intended some meaning be given to the language that at least the upper or lower portion is "configured to cause the staple pusher" to move a staple.

The specification and drawings describe only one way in which the upper or lower portion of the beam engages with the staple pushers: "*the sloped leading edge* of the upper beam portion 82 a *contacts sequentially each of a plurality of staple pushers 118* to drive them through their respective staple slots to drive the staples . . . ." Ex. A, 6:27-30 (emphasis added).  As provided in that passage, and as shown below in Figure 15, the upper portion 82a is shaped with a sloped leading edge to contact the staple pushers 118.  *Id.*, Figure 15.  Thus, a POSA would have understood— given that this the only description in the patent for how the "at least one of the lower portion or the upper portion" are "configured to cause the staple pusher to move a staple"—that the ordinary meaning of this claim term was that the at least one of the lower portion or the upper portion is shaped to contact the staple pusher to move a staple.



F I G. 15

Ex. A, Fig. 15

The provisional application (U.S. Patent Application 60/265,469) for the '650 patent also demonstrates the ordinary meaning of this term.  As shown below, the original claims of the provisional application defined that the upper portion of the beam included a surface "configured to contact the angled drive surfaces of the staple pushers . . . ." Ex. L at claim 10.  This makes it

54

even more clear that the ordinary meaning of this disputed claim term is that the beam upper or lower portion is shaped to contact the staple pushers.

> 10.    An apparatus as recited in Claim 9, ==upper portion of the I-beam== defines the driving means, and the driving means includes a camming surface ==configured to contact the angled drive surfaces of the staple pushers== as the I-beam translates in a distal direction.

Ex. L at claim 10.

Specifically with respect to the ordinary meaning of "configured" in this claim term, extrinsic evidence makes clear that "configured" means "shaped." *See* Ex. T ("relative arrangement of parts or elements: such as (1): SHAPE"). The Federal Circuit has made clear that the dictionary definition of terms is particularly informative of the ordinary meaning of claim terms where the dictionary definition is consistent with the specification, as in this case. *See Nystrom v. Trex Co.*, 424 F.3d 1136, 1147 (Fed. Cir. 2005) (holding that the correct construction of "convex" was the ordinary and customary meaning as defined in the dictionary where this definition was consistent with the use of "convex" in the specification). Thus, given that 1) the '650 patent does not mention any other way which the lower portion or the upper portion is "configured to cause the staple pusher to move a staple" other than the shaped upper portion contacting the staple pusher, and 2) the ordinary meaning of "configured" is "shaped," a POSA would have understood the ordinary meaning of this term as "at least one of the lower portion or the upper portion is shaped to contact the staple pusher to move a staple."

### iii.    Plaintiff's Reply Position

Intuitive's proposed construction for this phrase does nothing more than replace "configured to cause" with "shaped to contact." Once again, Intuitive is simply rewriting the claim language to limit the claims in ways never intended by the inventors of the '650 patent. And once again, Intuitive invites the Court to commit reversible error by improperly reading limitations into the claims. *See,*

*e.g., 3M Innovative Properties Co. v. Tredegar Corp.*, 725 F.3d 1315, 1321 (Fed. Cir. 2013) ("While we construe the claims in light of the specification, limitations discussed in the specification may not be read into the claims."); *Hill-Rom*, 755 F.3d at 1371.

Hoping one explanation will stick, Intuitive attempts to justify its improper construction in three ways: (1) by reference to unasserted claims in the '650 patent and its provisional application; (2) by limiting the term to disclosed embodiments; and (3) by consulting the dictionary for the definition of a word not present in the claims. Intuitive's analysis is incomplete, irrelevant, improper, and in conflict with well-established principles of claim construction.

First, Intuitive's reliance on *Phillips* for the proposition that "it is informative to look to other claims to determine what the patentee intended its claims to mean" is misguided. (*See supra* at 53-54.) While *Phillips* noted that "[o]ther claims of the patent in question, both asserted and unasserted, can also be valuable sources of enlightenment as to the meaning of a claim term," the Federal Circuit's analysis did not stop there. 415 F.3d at 1314. The Court continued, explaining how other claims can be used during claim construction: "Because claim terms are normally used consistently throughout the patent, the usage of a term in one claim can often illuminate the meaning of the ***same term*** in other claims. ***Differences*** among claims can also be a useful guide in understanding the meaning of particular claim terms." *Id.* (emphasis added) (internal citations omitted). When Phillips' full guidance is considered, the differences in the claim language identified by Intuitive contradict its positions.

Claim 10 of the '650 patent's provisional application highlights why it would be improper to replace "configured to cause" with "shaped to contact." As an initial matter, this claim shows that when the inventors intended to dictate the particular shape and function of the I-beam, they knew how to do so. (Ex. L at claim 10 ("the driving means includes a ***camming surface*** configured to ***contact*** the ***angled drive surfaces*** of the staple pushers") (emphasis added).) Moreover, the

56

provisional claim—unlike the asserted claims—uses the word "contact" to describe the precise relationship between the I-beam and the staple pushers. (*Id.*) Importantly, claim 6 uses a different phrase ("configured to cause") than the provisional claims ("configured to contact"). Under Federal Circuit precedent, these different claim terms are presumed to have different meanings. *See Phillips*, 415 F.3d at 1314; *see also Helmsderfer*, 527 F3d at 1382. Thus, claim 10 of the provisional application supports *Rex Medical's* position that the plain and ordinary meaning of "configured to cause" cannot be "shaped to contact."[22]

Second, Intuitive argues that merely because the "specification and drawings describe only *one way* in which the upper or lower portion of the beam engages with the staple pushers," the Court should import that limitation into the claims. (*See supra* at 54 (emphasis added); *see also id.* ("given that this [sic] the *only description* in the patent") (emphasis added).) This argument is directly contrary to the law. "Even when the specification describes only a single embodiment, the claims of the patent will not be read restrictively unless the patentee has demonstrated a clear intention to limit the claim scope using words or expressions of manifest exclusion or restriction." *Liebel-Flarsheim*, 358 F.3d at 906 (quotation omitted). Because there is no demonstration of such clear intent—and Intuitive does not even attempt to identify one—limiting the claims in the manner proposed by Intuitive would run afoul of decades of clear and consistent Federal Circuit precedent. *See, e.g., id.; Teleflex*, 299 F.3d at 1327; *3M Innovative Properties*, 725 F.3d at 1321; Hill-Rom, 755 F.3d at 1371; *Burke, Inc. v. Bruno Independent Living Aids, Inc.*, 183 F.3d 1334, 1340 (Fed. Cir. 1999).

---

[22] Intuitive's citation to claim 19 of the '650 patent is curious. (*See supra* at 54.) Intuitive baldly declares that the language of claim 19 is "similar but broader" than claim 6. (*Id.*) Because claim 19 does not even recite a staple pusher, it's unclear how this apples-to-oranges comparison is in any way relevant to the construction of the phrase ". . . configured to cause the staple pusher to move a staple."

Finally, Intuitive turns to extrinsic evidence in a final hope that the Court will rewrite the claim language. Not only is consideration of the dictionary definition improper in this instance (*see Pitney Bowes*, 182 F.3d at 1308), Intuitive does not even define the correct term. To support its claim that "configur**ed**" means "shaped," Intuitive cites to the definition of a different word entirely: "configura**tion**." (*See supra* at 55 (citing Ex. T).) And, tellingly, Intuitive does not even attempt to justify the second portion of this phrase ("cause" to "contact").[23] Intuitive cannot cherry pick partial definitions of different words in hopes of overriding the clear language of the claims. *See Quest Diagnostics*, 2020 WL 210799, at *2 ("Where the intrinsic record unambiguously describes the scope of the patented invention, reliance on any extrinsic evidence is improper.") (citation omitted). The Court should reject Intuitive's misguided attempt to replace the intrinsic record with inapposite extrinsic evidence.

The goal of claim construction is to provide meaning to disputed claim terms from the perspective of one of ordinary skill in the art. Where, as here, the meaning of terms is clear from the claim language, no construction is required. *See, e.g., Intuitive Surgical, Inc. v. Auris Health, Inc.*, No. 18-1359 (MN), 2019 WL 6840327, at *2, 9-10 (D. Del. Dec. 16, 2019). None of Intuitive's varied justifications for rewriting the plain language is persuasive. The Court should thus decline Intuitive's invitation to needlessly engage in construction of this phrase.

### iv.    Defendants' Sur-Reply Position

Intuitive rests on the arguments in its answering brief.

---

[23] Although Rex Medical does not believe it is necessary or appropriate to consult dictionary definitions in this instance, the relevant definitions show that Intuitive is improperly changing the ordinary meaning to suit its non-infringement theories. (*See* Exs. BB - CC (defining "configure" as "to set up for operation especially in a particular way");  (defining "cause" as "something that brings about an effect or a result").) Thus, Intuitive's own dictionary shows that the ordinary definition of "configured to cause" is not "shaped to contact," but more appropriately "set up for operation to bring about an effect or a result."

**E.**   **"at least a portion of the first jaw and the second jaw is curved" (Claim 12)**

| Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| Plain and ordinary meaning. | Ordinary meaning, i.e., at least a portion of both jaws form an arc along the length. |

### i.   Plaintiff's Opening Position

The claim term "at least a portion of the first jaw and the second jaw is curved" is readily understood by those skilled in the art—and indeed lay people—according to its plain and ordinary meaning without the need for further construction. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1314 (Fed. Cir. 2005) ("[T]he ordinary meaning of claim language as understood by a person of skill in the art may be readily apparent even to lay judges, and claim construction in such cases involves little more than the application of the widely accepted meaning of commonly understood words.").Yet again, Defendants take a simple, unambiguous term and insert unnecessary verbiage to manufacture a potential non-infringement position. No specific construction is necessary for this term because—as both parties agree—the plain and ordinary meaning applies. *See, e.g.*, *Intuitive Surgical, Inc.*, 2019 WL 6840327, at *2, 9-10. There is no ambiguity in the claim term's plain language. Curved means curved. Defendants simply seek to arbitrarily impose an added limitation to the claim ("along the length [of the jaws]") that is neither required nor suggested by the plain language of the claim. *See 3M Innovative Properties*, 725 F.3d at 1321; *Burke*, 183 F.3d at 1340.

Defendants' proposal here is inconsistent with their use of the "plain meaning" of this claim term in their IPR Petition. (Ex. U at 35-36). In their IPR Petition, Defendants argued that prior art discloses this limitation in the following manner:

59



(Ex. U, Paper 2 at 36 (annotations in the Petition)). Defendants' understanding of "curved" in their IPR Petition is inconsistent with their litigation-inspired construction here. Defendants cannot have it both ways.

Defendants' attempt to construe this claim term one way in this litigation and another way in their IPR Petition, despite the same claim construction standard applying, is telling. Defendants' new, self-serving, and inconsistent proposal here should be rejected.

### ii.    Defendants' Answering Position

Rex alleges for this term that "[y]et again, Intuitive takes a simple, unambiguous term and insert unnecessary verbiage to manufacture a potential non-infringement position." But, yet again, Rex misses the mark. Defendants have explained what a POSA would have understood the ordinary meaning of this claim term to be. Rex clearly disagrees with Intuitive's explanation of the ordinary meaning of this term, and thus it must be decided what the ordinary meaning is. *See O2 Micro Intern. v. Beyond Innovation Tech.*, 521 F.3d 1351, 1361 (Fed. Cir. 2008); *Eli Lilly & Co. v. Aradigm Corp.*, 376 F.3d 1352, 1360 (Fed. Cir. 2004) (claim construction is necessary "when the meaning or scope of technical terms and words of art is unclear and in dispute and requires resolution to determine the issue before the court.") (quoting *United States Surgical Corp. v. Ethicon, Inc.*, 103 F.3d 1554, 1568 (Fed. Cir. 1997)). Rex argues merely that "[c]urved means

curved," which does nothing to provide any understanding of the claim term. Intuitive, on the other hand, have looked into the intrinsic record to determine how a POSA would have understood the ordinary meaning of this term. *Phillips*, 415 F.3d at 1313-14.

The specification and drawings of the '650 patent are unequivocally clear as to the meaning of "curved." The specification, in the background of the invention, cites to a prior art reference *for the sole purpose* of describing and adopting the curved nature of the prior art reference's jaws. Specifically, the '650 patent specification refers to U.S. Patent No. 5,389,098 to Tsuruta and describes that this prior art stapling device has an increased range of motion because "a stapling assembly of this device *curves away from a central axis of the instrument* to a 90.degree. [sic] angle *so that it can more easily reach tissue spaced from the central axis*." Ex. A, 1:41-48 (emphasis added). The Tsuruta reference itself explains that "[s]ince the stapling member 5 *curves* by about 90° with respect to the axis of the insertion section 2, it can be easily inserted into the body by rotating the section 2 in the direction opposite in that direction in which the member 5 is *curving*." Ex. R, 10:10-14 (emphasis added). This curvature of the Tsuruta reference is shown in Figure 3 below.



Ex. R, Figure 3.

The '650 patent cites to this Tsuruta patent for a reason, namely that the jaws of the device of the '650 patent are curved for the same reason—to provide an increased range of motion and make it easier to navigate within the body. *See, e.g.*, Ex. A, Figure 16.  In fact, in describing its own invention, the specification of the '650 patent even recites that "actuation of the lower handle 12 a causes the C-shaped clamp member 60 to move along *an arc the length of the curved stapling assembly 16* to finely approximate the jaws 17 toward one another." Ex. A, 5:60-63 (emphasis added).  Defendants' proposal for the ordinary meaning of "curved" as "at least a portion of both jaws form an arc along the length" is taken *directly* from this language in the '650 patent.  The summary of the invention in the specification further shows that Rex used "curved" to mean that the jaws are curved along their length by generally describing the jaws as "a pair of opposed, curved tissue clamping jaws." *Id.*, 1:56-57.  Clearly, as shown in Figure 16 below, Rex used "curved" to explain the general shape of the jaws.



Ex. A, Figure 16.

The provisional application (U.S. Patent Application 60/265,469) for the '650 patent also demonstrates what Rex intended when it used the word "curved." As shown below, the original claims of the provisional application describe the entire staple carrier and anvil as "curved." Thus,

it is clear that the term "curved" was used in reference to a component's general shape, which is consistent with Intuitive's proposed construction herein.

> c)  a stapling assembly operatively associated with the distal end of the flexible body and configured for esophageal introduction, the stapling assembly including:
>
> > i)  a curved staple carrier including a tissue contacting surface having a plurality of staple carrying slots defined therein;
> >
> > ii)  a curved anvil including a staple forming surface having a plurality of staple forming pockets defined therein, the anvil mounted for

Ex. L at claim 19.

In its Opening Claim Construction Brief, Rex references the IPR Petition in IPR2020-00152 filed by Intuitive. Plaintiff cites the below-left figure from the Petition and alleges that Intuitive's proposed construction of ordinary meaning in the instant litigation differs from the construction used in the Petition. The reason for this is simple. In the IPR Petition, Intuitive applied a construction that the examiner used during prosecution of related (and previously asserted) U.S. Patent No. 10,136,892 ("the '892 patent"). *See* Ex. I, at 7-8, 11; Ex. J, at 7-8 (examiner citing to jaws of U.S. Patent No. 5,507,426 to Young). Defendants applied this construction in the IPR Petition to show, in the event that the Board finds it to be the ordinary meaning of "curved," that the prior art clearly anticipates the limitation. *See* Fed. R. Civ. P. 8(d)(3) ("A party may state as many separate claims or defenses as it has, regardless of consistency.").



Ex. U at 36.

As shown in the above-right image, the accused product does not include jaws where at least a portion of both jaws form an arc along the length.  To any extent it is found that at least a portion of the first jaw and the second jaw in Intuitive's product is curved, this limitation is clearly anticipated by the prior art, as argued in the IPR petition.  Plaintiff argues in its Opening Claim Construction Brief that "Defendants cannot have it both ways." This statement applies with even greater force for Rex—this claim term is either anticipated by the prior art under the construction used in the IPR, or Intuitive does not infringe under the construction proposed herein.

### iii.   Plaintiff's Reply Position

Once again, Intuitive ignores the plain language of this claim term in favor of its improperly narrowed interpretation. Although Intuitive purports to be applying the ordinary meaning, its proposed construction instead replaces a well-known word ("curved"), with a modification of that word ("form an arc along the length"). In essence, Intuitive asks the Court to construe "curved" to mean "curved in a particular way." But the inventors of the '650 patent did not claim that portions of the jaws are "curved in a particular way;" the inventors claimed that portions of the jaws are

simply "curved." (Ex. A, claim 12.) Nothing in the language of the claims, the specification, or the prosecution history requires or suggests a modification of the plain and ordinary meaning is warranted.

The Federal Circuit has instructed time and again that claim terms are given their plain and ordinary meaning with "only two exceptions to this general rule: 1) when a patentee sets out a definition and acts as his own lexicographer, or 2) when the patentee disavows the full scope of the claim term either in the specification or during prosecution." *Hill-Rom Servs.*, 755 F.3d at 1371 (citing *Thorner v. Sony Comput. Entm't Am. LLC*, 669 F.3d 1362, 1365 (Fed. Cir. 2012)). Neither exception applies here: 1) Intuitive does not argue that the inventors explicitly defined "curved" and 2) none of the exemplary embodiments or descriptions of prior art contained in the specification rise to the level of disavowal. *See Hill-Rom*, 755 F.3d at 1371 ("The standards for finding lexicography and disavowal are exacting.").

Yet again, Intuitive is merely trying to read limitations from the specification into the language of the claims. The '650 patent's description of Tsuruta curved jaws is inconsequential to claim 12's recitation that "at least a portion of the first jaw and the second jaw is curved." If—as Intuitive seems to imply—the inventors sought to limit their invention to the disclosures contained in Tsuruta, they would have said so. Claim 12 does not say that a portion of the jaws "curves away from a central axis of the instrument to a 90 degree angle so that it can more easily reach tissue spaced from the central axis." It simply says that a portion of the jaws "is curved." (Ex. A, claim 12.) Nor does claim 12 "adopt[] the curved nature of the prior art reference's jaws," as Intuitive argues. (*See supra* at 61.) Intuitive does not and cannot point to any language—in the claims, in the specification, or in the prosecution history—that rises to the level of disavowal of any curvature besides the curvature of Tsuruta. Intuitive's reference to the prior art is just another attempt to improperly limit the scope and rewrite the plain language of the asserted claims. *See Johnson*

*Worldwide Assocs. v. Zebco Corp.*, 175 F.3d 985, 992 (Fed. Cir. 1999) ("[M]ere inferences drawn from the description of an embodiment of the invention cannot serve to limit claim terms, as they are insufficient to require a narrower definition of a disputed term.") (internal citation omitted).

As with numerous other terms, Intuitive relies on exemplary embodiments in an effort to limit the full scope of the claims. (*See supra* Sections II.A.iii, II.B.iii, II.C.iii, II.D.iii.) Pointing to Figure 16, Intuitive argues that "Rex used 'curved' to explain the general shape of the jaws." (*See supra* at 68.) Critically, however, claim 12 does not refer to the general shape of the jaws, but rather only to "a portion" of the first and second jaws. (Ex. A, claim 12.) By contrast, claim 2 explicitly claims that "at least one of the first jaw and the second jaw is curved." (Ex. A, claim 2.) Thus, when the inventors of the '650 patent sought to limit the "general shape of the jaws," they did so explicitly in the claim language. Because they did not do so for claim 12, the Court should presume that the inventors were not referring to the general shape of the jaws, as Intuitive contends. *See Phillips*, 415 F.3d at 1314; *see also Helmsderfer*, 527 F3d at 1382. Rather, the inventors clearly claimed what they meant: only that a portion of the jaws was curved.

In defending its IPR Petition, Intuitive admits that its construction for this term depends on its litigation posture. (*See supra* at 63-64.) When arguing for invalidity, Intuitive understands—and even applies—the plain and ordinary meaning advocated by Rex Medical. When arguing for non-infringement, Intuitive disputes that meaning and instead insists upon importing limitations into the claim language. While Intuitive is certainly entitled to take conflicting positions, its lack of consistency is telling. By contrast, Rex Medical's position is the same: "curved" means "curved."

### iv.    Defendants' Sur-Reply Position

Construction is required because Rex is stretching the meaning of "curved" beyond what is described as curved to cover any slope in any direction on any jaw for any purpose.  The idea of curved jaws was incorporated into the '650 patent from the Tsuruta patent (Ex. R).  *See* Ex. A, 1:41-

50.  The express purpose in providing substantial curvature *along the length* of opposed jaws is to make it easier to reach tissue spaced from a device's central axis.  Ex. R, at 1:34-47; 2:10-19; 8:31-37; 10:10-14; 11:1-8 ("stapling member 5 curves by about 90° with respect to the axis of the insertion section 2.  It can therefore easily catch the target tissues A, particularly in the case where the tissues A are located on the axis of the section 2."); 33:61-64.

Given this teaching and purpose, a POSA would not interpret "curved" to include an instrument that is merely rounded or slanted at its distal tip, since no arc is formed and since the jaws still can only reach tissue along the device's central axis.  Similarly, a POSA would not interpret "curved" to include cylindrical jaws, since these jaws do not curve away from the central axis of the instrument.  This demonstrative shows the curved jaws in Tsuruta and the '650 patent form an arc along their length, unlike accused configurations that do not diverge from that axis:



Dated: April 10, 2020

FARNAN LLP

*/s/ Michael J. Farnan*
Brian E. Farnan (Bar No. 4089)
Michael J. Farnan (Bar No. 5165)
919 N. Market St., 12th Floor
Wilmington, DE 19801
Tel: 302-777-0300
Fax: 302-777-0301
bfarnan@farnanlaw.com
mfarnan@farnanlaw.com

OF COUNSEL:
Erik B. Milch
Stephen N. Scaife
COOLEY LLP
11951 Freedom Drive
One Freedom Square
Reston, VA 20190-5656
(703) 456-8000

Stephen C. Crenshaw
COOLEY LLP
1299 Pennsylvania Ave., N.W., Ste. 700
Washington, D.C. 20004-2400
(202) 842-7800

*Attorneys for Plaintiff*

Respectfully submitted,

SHAW KELLER LLP

*/s/ David M. Fry*
Karen E. Keller (No. 4489)
David M. Fry (No. 5486)
Nathan R. Hoeschen (No. 6232)
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
kkeller@shawkeller.com
dfry@shawkeller.com
nhoeschen@shawkeller.com

OF COUNSEL:
Steven M. Anzalone
Claire A. Fundakowski
WINSTON & STRAWN LLP
1700 K Street, N.W.
Washington, DC 20006
(202) 282-5000

Katherine Vidal
Michael Rueckheim
WINSTON & STRAWN LLP
275 Middlefield Road, Suite 205
Menlo Park, CA 94025
(650) 858-6500

*Attorneys for Defendants*