# EXHIBIT 1

# EXH. 21

Redacted Public Version

```
 1              IN THE UNITED STATES DISTRICT COURT
 2                 FOR THE DISTRICT OF DELAWARE
 3
 4   REX MEDICAL, L.P.,                )
                                       )
 5           Plaintiff,                )
                                       )
 6           vs.                       ) C.A. No. 19-005-MN
                                       )
 7   INTUITIVE SURGICAL, INC.,         )
     INTUITIVE SURGICAL OPERATIONS,    )
 8   INC. And INTUITIVE SURGICAL       )
     HOLDINGS, LLC,                    )
 9                                     )
             Defendants.               )
10   _____   )
11
12         VIRTUAL VIDEOCONFERENCE VIDEO-RECORDED
13               DEPOSITION OF LINDSAY CARTER
14
15             Wednesday, October 27, 2021
16        Remotely testifying from Washington, D.C.
17
18
19
20
21
22    Job No. 4847169
23    Reported By:
24    Hanna Kim, CLR, CSR No. 13083
25    Pages 1 - 157
```

Page 1

```
 1              IN THE UNITED STATES DISTRICT COURT
 2                FOR THE DISTRICT OF DELAWARE
 3
 4    REX MEDICAL, L.P.,              )
                                     )
 5            Plaintiff,             )
                                     )
 6            vs.                    ) C.A. No. 19-005-MN
                                     )
 7    INTUITIVE SURGICAL, INC.,      )
      INTUITIVE SURGICAL OPERATIONS, )
 8    INC. And INTUITIVE SURGICAL    )
      HOLDINGS, LLC,                 )
 9                                   )
              Defendants.            )
10    _____  )
11
12
13
14              Virtual videoconference video-recorded
15              deposition of LINDSAY CARTER, taken
16              pursuant to the stipulations of counsel
17              thereof, on Wednesday, October 27, 2021,
18              remotely testifying from Washington, D.C.,
19              beginning at 10:07 a.m., EDT and ending at
20              2:54 p.m., before Hanna Kim, CLR,
21              Certified Shorthand Reporter, No. 13083.
22
23
24
25
                                                    Page 2
```

```
 1        REMOTE VIDEOCONFERENCE APPEARANCES OF COUNSEL:

 2

 3     For Plaintiff:

 4             COOLEY LLP

 5             BY:  ERIK B. MILCH, ESQ.

 6             11951 Freedom Drive

 7             One Freedom Square

 8             Reston, VA 20190-5656

 9             703.456.8000

10             emilch@cooley.com

11

12     For Defendants:

13             WINSTON & STRAWN LLP

14             BY:  MICHAEL R. RUECKHEIM, ESQ.

15             275 Middlefield Road, Suite 205

16             Menlo Park, California 94025

17             650.858.6433

18             mrueckheim@winston.com

19

20      Also Present:

21             DYLAN BRASCH, Concierge

22             JEFREE ANDERSON, Video Operator

23

24

25
```

```
 1                    INDEX OF EXAMINATION

 2

 3    WITNESS:  LINDSAY CARTER

 4    EXAMINATION                              PAGE

 5         BY MR. RUECKHEIM:                     9

 6

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
                                        Page  4
```



```
1                    INDEX OF EXHIBITS

2

3    CARTER DEPOSITION EXHIBITS                        PAGE

4    Exhibit 1    Defendants' Notice of Rule 30(b)(6)   47

5                 Deposition of Plaintiff; 24 pages

6    Exhibit 2    Printout of Lindsay Carter's          50

7                 LinkedIn profile; 5 pages

8

25
```

Page 5

INDEX OF EXHIBITS (CONTINUED)

CARTER DEPOSITION EXHIBITS                    PAGE



Page  6



```
 1              INDEX OF EXHIBITS (CONTINUED)

 2

 3    CARTER DEPOSITION EXHIBITS                       PAGE

 4   Exhibit 17  "Appeal Brief Under 37 C.F.R.         132

 5               Section 41.37"; 19 pages

 6

11   Exhibit 19  Copy of U.S. Patent Number            136

12               9,439,650; 18 pages

13

18                      --o0o--

19

20

21

22

23

24

25

                                            Page  7
```

1      Q.   Correct.

2      A.   I don't recall what our legal approach was

3  in that case.  But I do know we just -- we viewed

4  that our filter did not infringe their -- their

5  intellectual property.                         10:35:00

6      Q.   Do you know how much EVM was demanding for

7  royalties in that case, or a license?

8      A.   I don't recall at the time.

9      Q.   What was the result of the case?

10     A.   We were victorious.  They found out we --  10:35:12

11 you know, they -- the jury found that we did not

12 infringe.

13     Q.   You said you were deposed twice in that

14 matter?

15          MR. MILCH:  Objection.  Form.            10:35:36

16          THE WITNESS:  No.  Once for the 2015

17 patent litigation, and then twice later on.  I

18 believe it was 2019.

19 BY MR. RUECKHEIM:

20     Q.   What were the depositions in the 2019     10:35:47

21 action related to?

22     A.   Product liability.

23     Q.   And what was the allegation in that case?

24     A.   I believe design defects.  We, along with

25 other medical device companies who marketed vena    10:36:07

Page 32

```
 1    cava filters, were subject to this type of mass

 2    tort litigation.

 3        Q.   The testimony you provided in that case,

 4    did that relate at all to stapling technology?

 5        A.   No.                                      10:36:25

 6        Q.   What -- what did the testimony generally

 7    relate to?

 8        A.   Inferior vena cava filters.

 9        Q.   What was the result of that case?

10        A.   We lost at trial.                        10:36:40

11        Q.   Did Rex Med- -- was Rex Medical required

12    to pay any amount in damages or otherwise?

13            MR. MILCH:  Objection.  Form.

14            Just caution the witness not to reveal any

15    confidential information in this context.         10:36:55

16            You can answer if you have nonconfidential

17    information.

18            THE WITNESS:  Everything's confidential.

19            MR. RUECKHEIM:  And, Mr. Milch, I -- I

20    believe that's an improper instruction.  It's not a  10:37:10

21    privileged instruction.  It's for confidential

22    rights, that we have a protective order in this

23    case.

24            MR. MILCH:  You can answer if there's

25    information that's available to you.              10:37:19
```

Page 33

```
 1              THE WITNESS:  The only -- I guess the only

 2      thing I can say is we came to a settlement.

 3      BY MR. RUECKHEIM:

 4          Q.   And how much was that settlement for?

 5          A.   That's confidential.                    10:37:25

 6          Q.   What was the jury award?

 7          A.   The jury -- what, the jury award after the

 8      trial?

 9          Q.   Correct.

10          A.   Was 34 million, approximately.           10:37:35

11          Q.   When you say that the settlement amount

12      was confidential, are -- who -- who's that

13      information confidential to, Rex Medical?

14          A.   Yes.  I was -- it was told to me this is

15      all confidential.                                10:37:56

16          Q.   Is it -- I -- I just want to see if I can

17      figure out your concern.

18              Is the concern that you may reveal Rex

19      Medical confidential information or confidential

20      information relating to the plaintiff in that     10:38:05

21      case?

22          A.   Rex Medical.

23          Q.   Okay.

24              MR. RUECKHEIM:  Mr. Milch, based on that,

25      I feel like the witness can answer the question.  10:38:17
```

Page 34



```
21     Q.   Did Rex Medical ever have any agreements

22   with other companies with respect to patents on

23   medical devices?

24     A.   Can you restate that, exactly what your

25   question is or what you're looking for?              10:48:18
```

Page 42



1     Q.   Sure.

23     Q.   Okay.  Can you explain to me, just high

24   level, what is an inferior vena cava filter?

25     A.   Yes.  Essentially, a vena cava filter is   10:49:40

Page 43

```
 1     implanted in the IVC, the inferior vena cava.

 2          What happens is, if you heard of pulmonary

 3     embolism, it all begins with deep vein thrombosis.

 4     Clots develop in the leg, travel to the pulmonary

 5     circulation, your heart.  And if they -- they can      10:50:00

 6     kill you.  So there's, I believe, 5 to 600 -- or

 7     6- to 900,000 cases of PE each year leading to

 8     over 200,000 deaths.

 9          A vena -- a vena cava filter is kind of

10     like a catcher's mitt you put in your vena cava so     10:50:15

11     when that clot travels from your legs towards your

12     lungs, your heart, that catches -- captures that

13     clot, and it can save lives.

14     Q.   And Rex Medical, am I correct, has patents

15     on this technology?                                    10:50:30

16     A.   Yes, we do.
```

Page 44



Page 45



```
 1

 2

 3

 4

 5

 6

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21      Q.   Have you spoken with Dr. McGuckin about

22   this litigation?

23      A.   No.

24      Q.   Have you spoken to Mr. Peter Hinchliffe?

25      A.   No.                                    10:53:10
```

Page 46

```
 1              THE WITNESS:  It just came up.

 2         Okay.

 3    BY MR. RUECKHEIM:

 4       Q.   Give me one minute.  I lost my Exhibit

 5    Share.                                          13:09:45

 6         Mr. Carter, you should have in front of

 7    you a document marked as Exhibit 9.  It has the

 8    Bates number of '2536.  It bears the title

 9    of "Settlement and Patent License Agreement" and

10    appears to have a date of April 16th, 2020.     13:10:57

11         Do you see that?

12       A.   Yes.

13
```

Page 107



Page 108



Page 109



```
20   BY MR. RUECKHEIM:                                    13:16:34

21      Q.   Does Rex Medical believe that this license

22   that is Exhibit 9 is relevant to the hypothetical

23   negotiation in the case against Intuitive?

24           MR. MILCH:  Objection.  Form.

25           THE WITNESS:  Could you repeat that          13:17:19
```

Page 110

```
 1      question again?

 2      BY MR. RUECKHEIM:

 3          Q.   Sure.

 4               Does Rex Medical -- let's -- let's assume

 5      the jury finds in Rex's favor in this case and          13:17:29

 6      awards damages.

 7               Is it Rex Medical's opinion that this

 8      license that is Exhibit 9 is relevant to that

 9      damages calculation?

10               MR. MILCH:  Objection.  Form.  Outside the     13:17:41

11      scope.  Legal conclusion.

12               THE WITNESS:  Yeah, I don't know.

13      ████████████████

██      ███    ██  ██████████████████████████

██      ████████████████████                       ██████████

██      ███        ██████████  ██████████  ██████

██      ███        ██████████      ██████████████

██      ████████████

██      ███    ██  ████████████████████████

██      ██████████████████████████████████    ██████████

██      ██████████████████████████████████

██      ██████████

██      ███        ██████████  ██████████  ██████

██      ███        ██████████      ██████████████

██      ████████████                             ██████████
```

Page 111



Page 112



Page 113

1      ███████

       █    █████████  █████████  ██████

       █    █████████  █████████████

4            MR. RUECKHEIM:  No further questions.

5            MR. MILCH:  Can we take a ten-minute        14:45:08

6      break?

7            MR. RUECKHEIM:  Sure.

8            THE VIDEOGRAPHER:  Going off the record.

9      The time is 2:44 p.m.

10           (Short recess taken.)                       14:45:18

11           THE VIDEOGRAPHER:  We are back on the

12     record.  The time is 2:53 p.m.

13           MR. MILCH:  I have no questions.

14           MR. RUECKHEIM:  Okay.

15           Before we break, I do want to say that we   14:54:05

16     consider the deposition still open based on the

17     number of 30(b)(6) topics discussed where the

18     witness wasn't able to answer.

19           MR. MILCH:  Counsel, he was able to answer

20     all your questions regarding all the topics for any  14:54:18

21     questions you asked.  So we -- we disagree, but

22     fair enough.

23           MR. RUECKHEIM:  We can go off the record.

24           THE VIDEOGRAPHER:  All right.  This.

25           Marks the end of the deposition of Lindsay  14:54:24

                                              Page 154

1    Car- -- Carter.  Going off the record.  The time is

2    2:53 p.m.

3              (Proceedings concluded, 2:54 p.m., EDT,

4    October 27, 2021, EDT.)

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 155

```
 1                          JURAT

 2

 3          I, LINDSAY CARTER, do hereby certify under

 4    penalty of perjury that I have read the foregoing

 5    transcript of my deposition remotely taken on

 6    27th day of October, 2021; that I have made such

 7    corrections as appear noted herein in ink,

 8    initialed by me; that my testimony as contained

 9    herein, as corrected, is true and correct.

10

11          Dated this _____ day of _____, 2021,

12    at _____.

13

14

15

16

17

18                    _____

                      LINDSAY CARTER

19

20

21

22

23

24

25

                                        Page 156
```

```
 1              CERTIFICATE OF REPORTER

 2         I, Hanna Kim, a Certified Shorthand

 3    Reporter, do hereby certify:

 4              That prior to being examined, the witness

 5    in the foregoing proceedings was by me duly sworn

 6    to testify to the truth, the whole truth, and

 7    nothing but the truth;

 8              That said proceedings were taken before me

 9    at the time and place therein set forth and were

10    taken down by me in shorthand and thereafter

11    transcribed into typewriting under my direction and

12    supervision;

13         I further certify that I am neither

14    counsel for, nor related to, any party to said

15    proceedings, not in anywise interested in the

16    outcome thereof.

17              Further, that if the foregoing pertains to

18    the original transcript of a deposition in a

19    federal case, before completion of the proceedings,

20    review of the transcript [ ] was [ ] was not

21    requested.

22              In witness whereof, I have hereunto

23    subscribed my name.

24    Dated: 11/2/2021

25

               Hanna Kim, CLR, CSR No. 13083

                                        Page 157
```

# EXHIBIT 2

# EXH. 21

Redacted Public Version

```
 1              IN THE UNITED STATES DISTRICT COURT

 2                FOR THE DISTRICT OF DELAWARE

 3

 4   REX MEDICAL, L.P.,                )

                                       )

 5           Plaintiff,                )

                                       )

 6           vs.                       ) C.A. No. 19-005-MN

                                       )

 7   INTUITIVE SURGICAL, INC.,         )

     INTUITIVE SURGICAL OPERATIONS,    )

 8   INC. And INTUITIVE SURGICAL       )

     HOLDINGS, LLC,                    )

 9                                     )

             Defendants.               )

10   _____      )

11

12        VIRTUAL VIDEOCONFERENCE VIDEO-RECORDED

13            DEPOSITION OF LINDSAY CARTER

14

15            Wednesday, October 27, 2021

16        Remotely testifying from Washington, D.C.

17

18

19

20

21

22   Job No. 4847169

23   Reported By:

24   Hanna Kim, CLR, CSR No. 13083

25   Pages 1 - 157
```

Page 1

```
 1              IN THE UNITED STATES DISTRICT COURT
 2                FOR THE DISTRICT OF DELAWARE
 3
 4    REX MEDICAL, L.P.,                )
                                        )
 5           Plaintiff,                 )
                                        )
 6           vs.                        ) C.A. No. 19-005-MN
                                        )
 7    INTUITIVE SURGICAL, INC.,         )
      INTUITIVE SURGICAL OPERATIONS,    )
 8    INC. And INTUITIVE SURGICAL       )
      HOLDINGS, LLC,                    )
 9                                      )
             Defendants.                )
10    _____     )
11
12
13
14           Virtual videoconference video-recorded
15           deposition of LINDSAY CARTER, taken
16           pursuant to the stipulations of counsel
17           thereof, on Wednesday, October 27, 2021,
18           remotely testifying from Washington, D.C.,
19           beginning at 10:07 a.m., EDT and ending at
20           2:54 p.m., before Hanna Kim, CLR,
21           Certified Shorthand Reporter, No. 13083.
22
23
24
25

                                                 Page 2
```

```
 1       REMOTE VIDEOCONFERENCE APPEARANCES OF COUNSEL:

 2

 3    For Plaintiff:

 4           COOLEY LLP

 5           BY:  ERIK B. MILCH, ESQ.

 6           11951 Freedom Drive

 7           One Freedom Square

 8           Reston, VA 20190-5656

 9           703.456.8000

10           emilch@cooley.com

11

12    For Defendants:

13           WINSTON & STRAWN LLP

14           BY:  MICHAEL R. RUECKHEIM, ESQ.

15           275 Middlefield Road, Suite 205

16           Menlo Park, California 94025

17           650.858.6433

18           mrueckheim@winston.com

19

20     Also Present:

21            DYLAN BRASCH, Concierge

22            JEFREE ANDERSON, Video Operator

23

24

25

                                            Page  3
```

```
 1                    INDEX OF EXAMINATION

 2

 3    WITNESS:  LINDSAY CARTER

 4    EXAMINATION                              PAGE

 5         BY MR. RUECKHEIM:                     9

 6

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

Page  4



```
1                    INDEX OF EXHIBITS

2

3    CARTER DEPOSITION EXHIBITS                    PAGE

4    Exhibit 1   Defendants' Notice of Rule 30(b)(6)   47

5                Deposition of Plaintiff; 24 pages

6    Exhibit 2   Printout of Lindsay Carter's         50

7                LinkedIn profile; 5 pages

8

25

                                           Page  5
```



```
 1              INDEX OF EXHIBITS (CONTINUED)

 2

 3    CARTER DEPOSITION EXHIBITS                    PAGE

 4   Exhibit 17  "Appeal Brief Under 37 C.F.R.      132

 5               Section 41.37"; 19 pages
```



```
11   Exhibit 19  Copy of U.S. Patent Number         136

12               9,439,650; 18 pages
```

```
18                    --o0o--

19

20

21

22

23

24

25
```

Veritext Legal Solutions
866 299-5127

1        Q.    Correct.

2        A.    I don't recall what our legal approach was

3    in that case.  But I do know we just -- we viewed

4    that our filter did not infringe their -- their

5    intellectual property.                          10:35:00

6        Q.    Do you know how much EVM was demanding for

7    royalties in that case, or a license?

8        A.    I don't recall at the time.

9        Q.    What was the result of the case?

10       A.    We were victorious.  They found out we --   10:35:12

11   you know, they -- the jury found that we did not

12   infringe.

13       Q.    You said you were deposed twice in that

14   matter?

15           MR. MILCH:  Objection.  Form.              10:35:36

16           THE WITNESS:  No.  Once for the 2015

17   patent litigation, and then twice later on.  I

18   believe it was 2019.

19   BY MR. RUECKHEIM:

20       Q.    What were the depositions in the 2019      10:35:47

21   action related to?

22       A.    Product liability.

23       Q.    And what was the allegation in that case?

24       A.    I believe design defects.  We, along with

25   other medical device companies who marketed vena     10:36:07

Page 32

```
 1    cava filters, were subject to this type of mass

 2    tort litigation.

 3        Q.    The testimony you provided in that case,

 4    did that relate at all to stapling technology?

 5        A.    No.                                    10:36:25

 6        Q.    What -- what did the testimony generally

 7    relate to?

 8        A.    Inferior vena cava filters.

 9        Q.    What was the result of that case?

10        A.    We lost at trial.                      10:36:40

11        Q.    Did Rex Med- -- was Rex Medical required

12    to pay any amount in damages or otherwise?

13             MR. MILCH:  Objection.  Form.

14             Just caution the witness not to reveal any

15    confidential information in this context.        10:36:55

16             You can answer if you have nonconfidential

17    information.

18             THE WITNESS:  Everything's confidential.

19             MR. RUECKHEIM:  And, Mr. Milch, I -- I

20    believe that's an improper instruction.  It's not a  10:37:10

21    privileged instruction.  It's for confidential

22    rights, that we have a protective order in this

23    case.

24             MR. MILCH:  You can answer if there's

25    information that's available to you.             10:37:19
```

Page 33

```
 1              THE WITNESS:  The only -- I guess the only

 2      thing I can say is we came to a settlement.

 3      BY MR. RUECKHEIM:

 4          Q.   And how much was that settlement for?

 5          A.   That's confidential.                    10:37:25

 6          Q.   What was the jury award?

 7          A.   The jury -- what, the jury award after the

 8      trial?

 9          Q.   Correct.

10          A.   Was 34 million, approximately.           10:37:35

11          Q.   When you say that the settlement amount

12      was confidential, are -- who -- who's that

13      information confidential to, Rex Medical?

14          A.   Yes.  I was -- it was told to me this is

15      all confidential.                                 10:37:56

16          Q.   Is it -- I -- I just want to see if I can

17      figure out your concern.

18              Is the concern that you may reveal Rex

19      Medical confidential information or confidential

20      information relating to the plaintiff in that     10:38:05

21      case?

22          A.   Rex Medical.

23          Q.   Okay.

24              MR. RUECKHEIM:  Mr. Milch, based on that,

25      I feel like the witness can answer the question.  10:38:17
```

Page 34



Q.   Did Rex Medical ever have any agreements
with other companies with respect to patents on
medical devices?
     A.   Can you restate that, exactly what your
question is or what you're looking for?                    10:48:18

Page 42



```
 1        Q.    Sure.
 2
23        Q.    Okay.  Can you explain to me, just high
24   level, what is an inferior vena cava filter?
25        A.    Yes.  Essentially, a vena cava filter is      10:49:40
```

Page 43

```
 1     implanted in the IVC, the inferior vena cava.
 2             What happens is, if you heard of pulmonary
 3     embolism, it all begins with deep vein thrombosis.
 4     Clots develop in the leg, travel to the pulmonary
 5     circulation, your heart.  And if they -- they can      10:50:00
 6     kill you.  So there's, I believe, 5 to 600 -- or
 7     6- to 900,000 cases of PE each year leading to
 8     over 200,000 deaths.
 9             A vena -- a vena cava filter is kind of
10     like a catcher's mitt you put in your vena cava so     10:50:15
11     when that clot travels from your legs towards your
12     lungs, your heart, that catches -- captures that
13     clot, and it can save lives.
14       Q.   And Rex Medical, am I correct, has patents
15     on this technology?                                    10:50:30
16       A.   Yes, we do.
17
```

Page 44



Veritext Legal Solutions
866 299-5127



```
 1

 2

 3

 4

 5

 6

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21        Q.   Have you spoken with Dr. McGuckin about

22   this litigation?

23        A.   No.

24        Q.   Have you spoken to Mr. Peter Hinchliffe?

25        A.   No.                                      10:53:10
```

Page 46

```
 1              THE WITNESS:  It just came up.

 2         Okay.

 3    BY MR. RUECKHEIM:

 4      Q.   Give me one minute.  I lost my Exhibit

 5    Share.                                          13:09:45

 6         Mr. Carter, you should have in front of

 7    you a document marked as Exhibit 9.  It has the

 8    Bates number of '2536.  It bears the title

 9    of "Settlement and Patent License Agreement" and

10    appears to have a date of April 16th, 2020.      13:10:57

11         Do you see that?

12      A.   Yes.
```



Page 108



Page 109



```
20   BY MR. RUECKHEIM:                              13:16:34

21        Q.   Does Rex Medical believe that this license

22   that is Exhibit 9 is relevant to the hypothetical

23   negotiation in the case against Intuitive?

24             MR. MILCH:  Objection.  Form.

25             THE WITNESS:  Could you repeat that     13:17:19
```

Page 110

```
 1    question again?

 2    BY MR. RUECKHEIM:

 3        Q.   Sure.

 4            Does Rex Medical -- let's -- let's assume

 5    the jury finds in Rex's favor in this case and          13:17:29

 6    awards damages.

 7            Is it Rex Medical's opinion that this

 8    license that is Exhibit 9 is relevant to that

 9    damages calculation?

10            MR. MILCH:  Objection.  Form.  Outside the      13:17:41

11    scope.  Legal conclusion.

12            THE WITNESS:  Yeah, I don't know.

13    ████████████████

██    ████  ███████████████████████

██    █████████████████████             █████

██    ████████████  ███████████  █████

██    ████████████  █████████████

██    █████████████

██    ████  ████████████████████████

██    ████████████████████████████  ███████████

██    ██████████████████████████████

██    █████████████

██    ████████████  ███████████  █████

██    ████████████  ██████████████████

██    ██████████████                    ██████████
```



Page 112



Page 113

```
1      ███████████

       █    ████████  ████████  █████

       █    ████████  ████████████

4              MR. RUECKHEIM:  No further questions.

5              MR. MILCH:  Can we take a ten-minute        14:45:08

6      break?

7              MR. RUECKHEIM:  Sure.

8              THE VIDEOGRAPHER:  Going off the record.

9      The time is 2:44 p.m.

10             (Short recess taken.)                       14:45:18

11             THE VIDEOGRAPHER:  We are back on the

12     record.  The time is 2:53 p.m.

13             MR. MILCH:  I have no questions.

14             MR. RUECKHEIM:  Okay.

15             Before we break, I do want to say that we   14:54:05

16     consider the deposition still open based on the

17     number of 30(b)(6) topics discussed where the

18     witness wasn't able to answer.

19             MR. MILCH:  Counsel, he was able to answer

20     all your questions regarding all the topics for any  14:54:18

21     questions you asked.  So we -- we disagree, but

22     fair enough.

23             MR. RUECKHEIM:  We can go off the record.

24             THE VIDEOGRAPHER:  All right.  This.

25             Marks the end of the deposition of Lindsay  14:54:24
```

                                                    Page 154

1    Car- -- Carter.  Going off the record.  The time is

2    2:53 p.m.

3              (Proceedings concluded, 2:54 p.m., EDT,

4    October 27, 2021, EDT.)

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 155

```
 1                              JURAT

 2

 3            I, LINDSAY CARTER, do hereby certify under

 4     penalty of perjury that I have read the foregoing

 5     transcript of my deposition remotely taken on

 6     27th day of October, 2021; that I have made such

 7     corrections as appear noted herein in ink,

 8     initialed by me; that my testimony as contained

 9     herein, as corrected, is true and correct.

10

11            Dated this _____ day of _____, 2021,

12     at _____.

13

14

15

16

17

18                       _____

                         LINDSAY CARTER

19

20

21

22

23

24

25

                                          Page 156
```

```
 1                CERTIFICATE OF REPORTER
 2          I, Hanna Kim, a Certified Shorthand
 3     Reporter, do hereby certify:
 4              That prior to being examined, the witness
 5     in the foregoing proceedings was by me duly sworn
 6     to testify to the truth, the whole truth, and
 7     nothing but the truth;
 8              That said proceedings were taken before me
 9     at the time and place therein set forth and were
10     taken down by me in shorthand and thereafter
11     transcribed into typewriting under my direction and
12     supervision;
13          I further certify that I am neither
14     counsel for, nor related to, any party to said
15     proceedings, not in anywise interested in the
16     outcome thereof.
17              Further, that if the foregoing pertains to
18     the original transcript of a deposition in a
19     federal case, before completion of the proceedings,
20     review of the transcript [ ] was [ ] was not
21     requested.
22              In witness whereof, I have hereunto
23     subscribed my name.
24     Dated: 11/2/2021
25
                    Hanna Kim, CLR, CSR No. 13083

                                        Page 157
```

# EXHIBIT 3

# EXHIBIT A

Redacted Public Version

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| REX MEDICAL, L.P., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | C.A. No. 19-cv-5-MN |
| v. | ) | |
| | ) | |
| INTUITIVE SURGICAL, INC., INTUITIVE | ) | |
| SURGICAL OPERATIONS, INC. and | ) | |
| INTUITIVE SURGICAL HOLDINGS, LLC, | ) | |
| | ) | |
| Defendants. | ) | |

**REX MEDICAL, L.P.'S SIXTH SUPPLEMENTAL RESPONSES AND OBJECTIONS
TO DEFENDANTS' FIRST SET OF INTERROGATORIES**

Pursuant to Rule 26 and 33 of the Federal Rules of Civil Procedure, Plaintiff Rex Medical, L.P. ("Rex Medical") hereby supplements its responses to Defendants Intuitive Surgical, Inc., Intuitive Surgical Operations, Inc., and Intuitive Surgical Holdings, LLC's (collectively "Intuitive") First Set of Interrogatories. Rex Medical incorporates by reference its prior responses and objections, including paragraphs 1-7 of its general responses, paragraphs 1-23 of its general objections, and those objections dated August 19, 2019, October 23, 2019, November 15, 2019, January 10, 2020, September 14, 2021, and October 15, 2021. Discovery remains on-going and Rex Medical reserves the right to supplement and amend any of its responses.

**INTERROGATORY NO. 1:**

For each asserted claim of the patents-in-suit, describe in detail the facts and circumstances relating to the development and making of the claimed subject matter, including but not limited to: identifying the earliest claimed date(s) of invention, conception and reduction to practice; identifying when and where such conception and reduction to practice occurred; identifying the nature and extent of each individual's involvement in and their relative contribution to such activities; identifying the persons most knowledgeable regarding the foregoing; and identifying all relevant documents and tangible things relating to the foregoing. Your response should include a

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

contentions are incorporated by reference here. 

Additionally, Rex Medical continues to object to the extent this

interrogatory prematurely seeks expert testimony or information requiring expert analysis.

**THIRD SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 8 (OCT. 15, 2021):**

Rex Medical further responds as follows:  Pursuant to Rule 33(d), Rex Medical also directs

Intuitive to the document at beginning Bates number RM0007663.

**FOURTH SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 8:**

Rex Medical further responds as follows:  Pursuant to Rule 33(d), Rex Medical directs

Intuitive to the deposition testimony of Mr. Peter Hinchliffe, Mr. Lindsay Carter, and Dr. Jim

McGuckin.

**INTERROGATORY NO. 9:**

For each asserted claim of the patents-in-suit, describe in detail the facts and circumstances for your damages contentions, including but not limited to: identifying the factual and legal bases for your damages contentions; identifying the amount of damages Rex is seeking; identifying the basis for Rex's statement in its Disclosures Pursuant To Paragraph 7(A) Of The Court's Scheduling Order that damages should be based on "industry practice; royalty structures used by others in the industry that have licensed comparable technologies; relevant factual information identified either through formal discovery or research of publicly-available information relevant to the calculation or other determination of a reasonable royalty; and other facts and circumstances associated with this case"; identifying the factual and legal basis for your contention that damages should be enhanced (if any); identifying your contention that attorneys' fees should be awarded (if any); identifying the persons most knowledgeable regarding the foregoing; and identifying all relevant documents and tangible things relating to the foregoing.

**RESPONSE TO INTERROGATORY NO. 9 (AUG. 19, 2019):**

Rex Medical incorporates by reference its General Responses and Objections. Rex Medical

objects to this Interrogatory as overly broad, unduly burdensome, and not proportional to the needs

of the case. Rex Medical further objects to this Interrogatory to the extent it seeks information

protected by the attorney-client privilege, the work product doctrine, or any other applicable

privilege or protection from discovery. Rex Medical further objects to this Interrogatory on the

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

grounds that it seeks a legal conclusion or legal analysis. Rex Medical further objects to this Interrogatory to the extent that it seeks expert opinion testimony and/or analysis. Rex Medical further objects to this Interrogatory as premature, prematurely seeking expert testimony or information requiring expert analysis. Rex Medical further objects to this Interrogatory to the extent it is compound, conjunctive, and/or ambiguous. Rex Medical further objects to this Interrogatory on the grounds that "describe in detail," "facts and circumstances," and "damages contentions" are vague, overly broad, and ambiguous.

Subject to the foregoing general and specific objections, Rex Medical responds as follows: Under 35 U.S.C. § 284, Rex Medical is entitled to damages adequate to compensate for Intuitive's infringement and in no event less than a reasonable royalty. Rex Medical expects that its expert(s) will provide opinions regarding at least the proper amount of a reasonable royalty under the *Georgia-Pacific* framework.

Many data points are relevant to the reasonable royalty, including, but not limited to (i) comparable licenses to the Patents-in-Suit; (ii) financial data related to sales of the accused products; (iii) financial data related to sales of comparable products; (iv) surveys related to the value of the relevant technology; (v) Intuitive's statements and actions related to the relevant technology and accused products; (vi) third parties' statements and actions related to the relevant technology and accused products; and (vii) any other evidence relevant under the *Georgia-Pacific* framework. Intuitive's revenues for the accused products (including any convoyed sales, *e.g.*, maintenance and support fees) may be the starting point for determining the royalty base.

Discovery is ongoing and Rex Medical reserves the right to amend, supplement, or otherwise change its response to this Interrogatory.

**SECOND SUPP. CORRECTED RESPONSE TO ROG. NO. 9 (JAN. 2020, SEPT. 2021):**

As noted above, Rex Medical objects to this interrogatory as premature to the extent

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

it seeks expert testimony, either from technical or damages experts.  Such information and opinions will be provided according to the Court's Scheduling Order.  In view of subsequent developments in the case, Rex Medical hereby amends and replaces its response to this interrogatory as follows.  Rex Medical's prior response no longer applies given additional facts that have occurred since that response.

Rex Medical presently seeks a reasonable royalty.  At this time, Rex Medical is not seeking lost profits.  A reasonable royalty is determined, at least in part, by applying the *Georgia-Pacific* factors.  The *Georgia-Pacific* factors include:

1.  The royalties received by the patentee for the licensing of the patent in suit, proving or tending to prove an established royalty.

2.  The rates paid by the licensee for the use of other patents comparable to the patent in suit.

3.  The nature and scope of the license, as exclusive or non-exclusive; or as restricted or non-restricted in terms of territory or with respect to whom the manufactured product may be sold.

4.  The licensor's established policy and marketing program to maintain his patent monopoly by not licensing others to use the invention or by granting licenses under special conditions designed to preserve that monopoly.

5.  The commercial relationship between the licensor and licensee, such as, whether they are competitors in the same territory in the same line of business; or whether they are inventor and promoter.

6.  The effect of selling the patented specialty in promoting sales of other products of the licensee; that existing value of the invention to the licensor as a generator of sales of his non-patented items; and the extent of such derivative or convoyed sales.

7.  The duration of the patent and the term of the license.

8.  The established profitability of the product made under the patent; its commercial success; and its current popularity.

9.  The utility and advantages of the patent property over the old modes or devices, if any, that had been used for working out similar results.

10.  The nature of the patented invention; the character of the commercial embodiment of it as owned and produced by the licensor; and the benefits to those who have used the invention.

11.  The extent to which the infringer has made use of the invention; and any evidence probative of the value of that use.

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

12.  The portion of the profit or of the selling price that may be customary in the particular business or in comparable businesses to allow for the use of the invention or analogous inventions.

13.  The portion of the realizable profit that should be credited to the invention as distinguished from non-patented elements, the manufacturing process, business risks, or significant features or improvements added by the infringer.

14.  The opinion testimony of qualified experts.

15.  The amount that a licensor (such as the patentee) and a licensee (such as the infringer) would have agreed upon (at the time the infringement began) if both had been reasonably and voluntarily trying to reach an agreement; that is, the amount which a prudent licensee— who desired, as a business proposition, to obtain a license to manufacture and sell a particular article embodying the patented invention— would have been willing to pay as a royalty and yet be able to make a reasonable profit and which amount would have been acceptable by a prudent patentee who was willing to grant a license.

*Georgia-Pac. Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970).  As noted in the *Georgia-Pacific* factors, Rex Medical reserves the right to rely upon the analysis and opinions of qualified experts, including damages and technical experts.  Analysis under the *Georgia-Pacific* factors will be based on expert testimony to be provided according to the Scheduling Order.  Nevertheless, based on the limited discovery available to date, Rex Medical directs Intuitive to the license to the patent-in-suit:  RM0002536-RM0002552 and *see also* RM0007541, pursuant to Rule 33(d).  Rex Medical may also rely upon agreements entered into by Defendants Intuitive, including, for example INTUITIVE0030956; INTUITIVE0031048; INTUITIVE0042559; and the agreements produced at RM0001313; RM0001302, but additionally reserves the right to rely upon any additional documents, information, and agreements produced during discovery or in view of further discovery, including witness testimony, as discovery remains ongoing.  To date, Intuitive has failed to produce all relevant agreements and relevant updated financial information, and therefore, Rex Medical reserves the right to provide its damages response based on further discovery and investigation.  The analysis under the *Georgia-Pacific* factors and any adjustments upwards and downwards will be made based on expert analysis in view of comparable agreements and facts Intuitive has yet to fully provide.

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

Discovery is ongoing and Rex Medical reserves the right to amend, supplement, or otherwise change its response to this interrogatory.

**THIRD SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 9 (SEPT. 14, 2021):**

As noted above, Rex Medical objects to this interrogatory as premature to the extent it seeks expert testimony, either from technical or damages experts.  Such information and opinions will be provided according to the Court's Scheduling Order.

Based on the discovery to date, Rex Medical nevertheless supplements its response as follows:  Pursuant to Rule 33(d), Rex Medical directs Intuitive to RM0002536-RM0002552; INTUITIVE0057438; INTUITIVE0057444; INTUITIVE0030863.  Rex Medical further directs Intuitive to its letters, dated June 2, 2020, and August 19, 2019, containing sales figures.

The accused features are fundamental and critical to the success of the accused products. For example, Intuitive's infringement has enabled it to market and sell products that have captured significant market share and Intuitive has reaped the benefits of Rex Medical's ideas.

Rex Medical directs Intuitive, for example, to Rex Medical's final infringement contentions, dated August 27, 2021, which are incorporated herein.  As one example,

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

███████████████████████████████ The infringing feature of the accused

products prevents this.  For example, ████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

█████████████████████████████████   ███████████████████████████

████████████████████████████████████████ As explained in

Rex Medical's contentions, █████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

█████████████████████████████████████████ By using Rex Medical's patented

invention without paying, Intuitive has improperly benefited.  There are many documents outlining

██████████████████████████████████████████████; pursuant to

Rule 33(d), Rex Medical directs Intuitive to at least INTUITIVE0000017; INTUITIVE0000032-

INTUITIVE0000072;      INTUITIVE0000663-INTUITIVE0000691;      INTUITIVE0016404-

INTUITIVE0016499;      INTUITIVE0016501-INTUITIVE0016596;      INTUITIVE0018697-

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

INTUITIVE0018708;      INTUITIVE0018709-INTUITIVE0018720;      INTUITIVE0033911-

INTUITIVE0034060;           INTUITIVE0040730-           INTUITIVE0040731;

INTUITIVE0043812-      INTUITIVE0043825;      INTUITIVE0044567-      INTUITIVE0044580;

INTUITIVE0045226-      INTUITIVE0045285;      INTUITIVE0045294-      INTUITIVE0045370;

INTUITIVE0049265-      INTUITIVE0049270;      INTUITIVE0053736-      INTUITIVE0053812;

INTUITIVE0054497-      INTUITIVE0054567;      INTUITIVE0054992-      INTUITIVE0055052;

INTUITIVE0056515- INTUITIVE0056557. ███████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

Intuitive has improperly taken Rex Medical's invention and marketed its accused products, including the da Vinci® System with SureForm products, as enabling surgeons to operate with enhanced vision, precision, and control.  According to a lawsuit Intuitive filed against Auris, the da Vinci® Systems are in use in 64 countries, all 50 U.S. States, and all top-ranked U.S. hospitals for cancer, urology, gynecology or gastroenterology, including:  Memorial Sloan Kettering Cancer Center, University of Texas-M.D. Anderson Cancer Center, the Mayo Clinic, Johns Hopkins Hospital, the Cleveland Clinic, Christiana Care Health System and Beebe Healthcare.  More than 5 million procedures using the da Vinci® System have been performed worldwide.  The use of the da Vinci® System has transformed patient care, including through less blood loss, fewer complications, shorter hospital stays, smaller incisions for minimal scarring, and faster recovery

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

and return to daily life. *See* RM0007504-RM0007517; *Intuitive Surgical, et al. v. Auris Health*, No. 18-cv-1359, D.I. 1 (D. Del.). Pursuant to Rule 33(d), Rex Medical further directs Intuitive to RM0005769-RM0005772; RM0005773-RM0005880; RM0005881-RM0006007; RM0005522-RM0005529; RM0005530-RM0005537; RM0005538-RM0005545; RM0005546-RM0005554; RM0005555-RM0005562; RM0005563-RM0005573; RM0005574-RM0005583; RM0005584-RM0005598; RM0005599-RM0005609; RM0005610-RM0005622; RM0006281-RM0006290; RM0005623-RM0005625; RM0005626-RM0005660; RM0005661-RM0005768; RM0006008-RM0006128; RM0006129-RM0006131; RM0006132-RM0006262; RM0006263-RM0006265; RM0006266-RM0006270; RM0006271-RM0006280; RM0006291-RM0006396; RM0006397-RM0006408; RM0006610-RM0006612; RM0006613-RM0006644; RM0006645-RM0006673; RM0006409-RM0006449; RM0006450-RM0006459; RM0006460-RM0006500; RM0006501-RM0006542; RM0006543-RM0006552; RM0006553-RM0006609; RM0006674-RM0006711; RM0006712-RM0006788; RM0006789-RM0006791; RM0006792RM0006796; RM0006797-RM0006807; RM0006808-RM0006818; RM0007211-RM0007214; RM0007215-RM0007221; RM0006819-RM0006832; RM0006833-RM0006876; RM0006877-RM0006887; RM0006888-RM0006930; RM0006931-RM0006941; RM0006942-RM0007036; RM0007037-RM0007083; RM0007084-RM0007206; RM0007207-RM0007210; RM0007222-RM0007229; RM0007230-RM0007232; RM0007398-RM0007448; RM0007449-RM0007494; RM0007233-RM0007243; RM0007244-RM0007254; RM0007255-RM0007265; RM0007266-RM0007316; RM0007317-RM0007329; RM0007330-RM0007397; RM0007541-RM0007542; RM0007495-RM0007497; RM0007498-RM0007500; RM0007534-RM0007536; RM0007501-RM0007503; RM0007504-RM0007517; RM0007518-RM0007533.

As discovery remains on-going; Rex Medical reserves the right to supplement its response.

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

For example, Intuitive has been improperly withholding responsive documents and refusing to supplement its document production, notwithstanding repeated requests from Rex Medical.  (*E.g.*, Letter to counsel for Intuitive, dated June 28, 2021; email to counsel for Intuitive, dated July 7, 2021; letter to counsel for Intuitive, dated August 4, 2021; email to counsel for Intuitive, dated August 9, 2021; email to counsel for Intuitive, dated August 12, 2021; email to Intuitive, dated August 19, 2021; letter to counsel for Intuitive, dated August 24, 2021; letter to counsel for Intuitive, dated August 31, 2021; email to counsel for Intuitive, dated September 8, 2021.) Intuitive's numerous discovery deficiencies, particularly failure to produce responsive documents and provide Rule 30(b)(6) witness testimony, is highly prejudicial.

Additionally, Rex Medical continues to object to the extent that this interrogatory prematurely seeks expert testimony or information requiring expert analysis.

**FOURTH SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 9 (OCT. 15, 2021):**

Rex Medical further responds as follows:  Pursuant to Rule 33(d), Rex Medical also directs Intuitive to the following exemplary documents produced at the following beginning Bates numbers      INTUITIVE0096466;      INTUITIVE0029763;      INTUITIVE0033152; INTUITIVE0042718;      INTUITIVE0042849;      INTUITIVE0042913;      INTUITIVE0042952; INTUITIVE0042976;      INTUITIVE0047726;      INTUITIVE0057261;      INTUITIVE0060764; INTUITIVE0062858;      INTUITIVE0094816;      INTUITIVE0095630;      INTUITIVE0096323; INTUITIVE0096468;      INTUITIVE0096715;      INTUITIVE0097051;      INTUITIVE0097245; INTUITIVE0097422;      INTUITIVE0097722;      INTUITIVE0098120;      INTUITIVE0101024; INTUITIVE0101607;      INTUITIVE0101668;      INTUITIVE0101850;      INTUITIVE0103420; INTUITIVE0103419;      INTUITIVE0103418;      INTUITIVE0103417;      INTUITIVE0103416; INTUITIVE0103415;      INTUITIVE0103353;      INTUITIVE0103352;      INTUITIVE0029763; INTUITIVE0032624;      INTUITIVE0032725;      INTUITIVE0030956;      INTUITIVE0042535;

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

INTUITIVE0042559;   RM0001302,   1313;   INTUITIVE0031048;   INTUITIVE0031930;

RM0002536;        INTUITIVE0033146;        INTUITIVE0033152;        INTUITIVE0033154;

INTUITIVE0033157;   INTUITIVE0033165;   INTUITIVE0033991;   INTUITIVE0042718;

INTUITIVE0042741;   INTUITIVE0042766;   INTUITIVE0042792;   INTUITIVE0042804;

INTUITIVE0042869;   INTUITIVE0042913;   INTUITIVE0042917;   INTUITIVE0057702;

INTUITIVE0057976;   INTUITIVE0058065;   INTUITIVE0060764;   INTUITIVE0060884;

INTUITIVE0060964;   INTUITIVE0062858;   INTUITIVE0064376;   INTUITIVE0067746;

INTUITIVE0074269;   INTUITIVE0094057;   INTUITIVE0094542;   INTUITIVE0094816;

INTUITIVE0095630;   INTUITIVE0095728;   INTUITIVE0095732;   INTUITIVE0095832;

INTUITIVE0095940;   INTUITIVE0096216;   INTUITIVE0096323;   INTUITIVE0101024;

INTUITIVE0101198;   INTUITIVE0101222;   INTUITIVE0101514;   INTUITIVE0101514;

INTUITIVE0101607;   INTUITIVE0101607;   INTUITIVE0101668;   INTUITIVE0101668;

INTUITIVE0101730; INTUITIVE0101850.  Rex Medical also directs Intuitive to the deposition

testimony of Lindsay Carter, Dr. Jim McGuckin, and of Intuitive's witnesses, including Jonathan

Simpson, Dan Jones, Patrick Swindon, Bob DeSantis.

**FIFTH SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 9:**

As noted above, Rex Medical objects to this interrogatory as premature to the extent

it seeks expert testimony, either from technical or damages experts.  Such information and

opinions will be provided according to the Court's Scheduling Order.

Based on the discovery to date, Rex Medical supplements its response as follows:  Pursuant

to Rule 33(d), Rex Medical directs Intuitive to INTUITIVE0103862; INTUITIVE0103840;

INTUITIVE0103759;   INTUITIVE0042603;   INTUITIVE0042585;   INTUITIVE0031003;

INTUITIVE0103416;   INTUITIVE0103418;   INTUITIVE0096466;   INTUITIVE0103419;

INTUITIVE0103420; INTUITIVE0103421; INTUITIVE0057438.  For clarity of record, with

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

respect to Rex Medical's responses to Interrogatory No. 9 collectively, by identifying Bates numbers of documents Intuitive produced, Rex Medical does not concede that any particular Intuitive agreement is comparable for purposes of determining a reasonable royalty rate or otherwise relevant to any issue in the case, which may be the subject of expert testimony in accordance with the Court's scheduling order.   Additionally, notwithstanding Rex Medical requesting Rule 30(b)(6) depositions of Intuitive since at least July 2021 (D.I. 85), Intuitive has refused to provide any of its witnesses for deposition until recently.   Intuitive refused to offer Mr. Jonathan Simpson for deposition until Friday, October 22, 2021 (Rule 30(b)(6)), Mr. Dan Jones for deposition until Thursday, October 28 (Rule 30(b)(6)), Mr. Bob DeSantis for deposition until Friday, October 29, and Mr. Patrick Swindon for deposition until October 25.   Mr. Simpson is described as knowledgeable about "[t]he marketing of Intuitive's SureForm 60 stapler; financial information regarding product sales and development costs for Intuitive's SureForm 60 stapler." Mr. Jones is not listed on Intuitive's initial disclosures, but is designated on at least topics 15, 22, 23, 24, 25, 28, 46, and 47 (D.I. 85).   And Mr. Simpson is designated on at least topics 2, 3, 9, 10, 11, 16, 17, 18, 20, 21, 26, 30, 31, 33, 42 and 43 (D.I. 85).   Rex Medical reserves all rights to rely on their testimony for damages and any documents or information produced in connection with those depositions.

**INTERROGATORY NO. 10:**

For each asserted claim of the patents-in-suit, describe in detail the facts and circumstances relating to Rex's contentions that Intuitive indirectly infringes, contributorily infringes, or induces infringement, including but not limited to: identifying the factual and legal basis for your contention; identifying the direct infringer; identifying your contention as to when Intuitive had knowledge of the patents-in-suit; identifying your contention as to whether Intuitive intended to induce infringement; identifying your contentions for contributory infringement; identifying the time frame in which the indirect infringement occurred; identifying the persons most knowledgeable regarding the foregoing; and identifying all relevant documents and tangible things relating to the foregoing.

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

not in Rex Medical's possession, custody, or control.

Based on Rex Medical's understanding of the scope of this Interrogatory as informed by counsel for Intuitive's explanation during the parties' September 13, 2019 meet-and-confer and subject to the foregoing general and specific objections, Rex Medical supplements its prior response as follows: On January 26, 2016, Oleg F. Kaplun, Esq. signed a substitute statement averring to the USPTO that inventors James F. McGuckin, Jr. and Peter Hinchliffe could not be found or reached after diligent effort. Pursuant to 37 CFR § 1.64(e), this substitute statement contained an acknowledgment that any willful false statement made in such statement is punishable under 18 U.S.C. § 1001 by fine or imprisonment of not more than 5 years, or both.

Discovery is ongoing and Rex Medical reserves the right to amend, supplement, or otherwise change its response to this Interrogatory.

**SECOND SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 12 (OCT. 15, 2021):**

Rex Medical further responds as follows:  Pursuant to Rule 33(d), Rex Medical also directs Intuitive to the deposition testimony of Lindsay Carter, Peter Hinchliffe, and Dr. Jim McGuckin.

Dated: October 22, 2021

Respectfully submitted,

FARNAN LLP

/s/ Michael J. Farnan
Brian E. Farnan (Bar No. 4089)
Michael J. Farnan (Bar No. 5165)
919 N. Market St., 12th Floor
Wilmington, DE 19801
Tel: 302-777-0300
Fax: 302-777-0301
bfarnan@farnanlaw.com
mfarnan@farnanlaw.com

Erik B. Milch (admitted *pro hac vice*)
COOLEY LLP

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

11951 Freedom Drive
One Freedom Square
Reston, Virginia 20190-5656
(703) 456-8000
emilch@cooley.com

Shane Hannon (admitted *pro hac vice*)
COOLEY LLP
1299 Pennsylvania Ave., N.W., Ste. 700
Washington, D.C. 20004-2400
(202) 842-7800
shannon@cooley.com

*Attorneys for Plaintiff*

<u>CERTIFICATE OF SERVICE</u>

I, Michael J. Farnan, hereby certify that on October 22, 2021, a copy of Rex Medical,

L.P.'s Sixth Supplemental Responses and Objections to Defendants' First Set of Interrogatories

was served on the following as indicated:

<u>Via E-Mail</u>
Karen E. Keller
David M. Fry
Nathan R. Hoeschen
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
kkeller@shawkeller.com
dfry@shawkeller.com
nhoeschen@shawkeller.com

*Attorneys for Defendants*

<u>Via E-Mail</u>
Steven M. Anzalone
Claire A. Fundakowski
Katherine Vidal
Michael Rueckheim
WINSTON & STRAWN LLP
sanzalone@winston.com
cfundakowski@winston.com
kvidal@winston.com
mrueckheim@winston.com

*Attorneys for Defendants*

/s/ Michael J. Farnan
Michael J. Farnan (Bar No. 5165)

EXHIBIT 4

# EXHIBIT A

Redacted Public Version

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| REX MEDICAL, L.P., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | C.A. No. 19-cv-5-MN |
| v. | ) | |
| | ) | |
| INTUITIVE SURGICAL, INC., INTUITIVE | ) | |
| SURGICAL OPERATIONS, INC. and | ) | |
| INTUITIVE SURGICAL HOLDINGS, LLC, | ) | |
| | ) | |
| Defendants. | ) | |

## REX MEDICAL, L.P.'S SIXTH SUPPLEMENTAL RESPONSES AND OBJECTIONS TO DEFENDANTS' FIRST SET OF INTERROGATORIES

Pursuant to Rule 26 and 33 of the Federal Rules of Civil Procedure, Plaintiff Rex Medical, L.P. ("Rex Medical") hereby supplements its responses to Defendants Intuitive Surgical, Inc., Intuitive Surgical Operations, Inc., and Intuitive Surgical Holdings, LLC's (collectively "Intuitive") First Set of Interrogatories. Rex Medical incorporates by reference its prior responses and objections, including paragraphs 1-7 of its general responses, paragraphs 1-23 of its general objections, and those objections dated August 19, 2019, October 23, 2019, November 15, 2019, January 10, 2020, September 14, 2021, and October 15, 2021. Discovery remains on-going and Rex Medical reserves the right to supplement and amend any of its responses.

**INTERROGATORY NO. 1:**

For each asserted claim of the patents-in-suit, describe in detail the facts and circumstances relating to the development and making of the claimed subject matter, including but not limited to: identifying the earliest claimed date(s) of invention, conception and reduction to practice; identifying when and where such conception and reduction to practice occurred; identifying the nature and extent of each individual's involvement in and their relative contribution to such activities; identifying the persons most knowledgeable regarding the foregoing; and identifying all relevant documents and tangible things relating to the foregoing. Your response should include a

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

contentions are incorporated by reference here. 
▮▮▮▮▮▮▮▮▮ Additionally, Rex Medical continues to object to the extent this

interrogatory prematurely seeks expert testimony or information requiring expert analysis.

**THIRD SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 8 (OCT. 15, 2021):**

Rex Medical further responds as follows:  Pursuant to Rule 33(d), Rex Medical also directs

Intuitive to the document at beginning Bates number RM0007663.

**FOURTH SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 8:**

Rex Medical further responds as follows:  Pursuant to Rule 33(d), Rex Medical directs

Intuitive to the deposition testimony of Mr. Peter Hinchliffe, Mr. Lindsay Carter, and Dr. Jim

McGuckin.

**INTERROGATORY NO. 9:**

For each asserted claim of the patents-in-suit, describe in detail the facts and circumstances
for your damages contentions, including but not limited to: identifying the factual and legal bases
for your damages contentions; identifying the amount of damages Rex is seeking; identifying the
basis for Rex's statement in its Disclosures Pursuant To Paragraph 7(A) Of The Court's
Scheduling Order that damages should be based on "industry practice; royalty structures used by
others in the industry that have licensed comparable technologies; relevant factual information
identified either through formal discovery or research of publicly-available information relevant
to the calculation or other determination of a reasonable royalty; and other facts and circumstances
associated with this case"; identifying the factual and legal basis for your contention that damages
should be enhanced (if any); identifying your contention that attorneys' fees should be awarded (if
any); identifying the persons most knowledgeable regarding the foregoing; and identifying all
relevant documents and tangible things relating to the foregoing.

**RESPONSE TO INTERROGATORY NO. 9 (AUG. 19, 2019):**

Rex Medical incorporates by reference its General Responses and Objections. Rex Medical

objects to this Interrogatory as overly broad, unduly burdensome, and not proportional to the needs

of the case. Rex Medical further objects to this Interrogatory to the extent it seeks information

protected by the attorney-client privilege, the work product doctrine, or any other applicable

privilege or protection from discovery. Rex Medical further objects to this Interrogatory on the

grounds that it seeks a legal conclusion or legal analysis. Rex Medical further objects to this Interrogatory to the extent that it seeks expert opinion testimony and/or analysis. Rex Medical further objects to this Interrogatory as premature, prematurely seeking expert testimony or information requiring expert analysis. Rex Medical further objects to this Interrogatory to the extent it is compound, conjunctive, and/or ambiguous. Rex Medical further objects to this Interrogatory on the grounds that "describe in detail," "facts and circumstances," and "damages contentions" are vague, overly broad, and ambiguous.

Subject to the foregoing general and specific objections, Rex Medical responds as follows: Under 35 U.S.C. § 284, Rex Medical is entitled to damages adequate to compensate for Intuitive's infringement and in no event less than a reasonable royalty. Rex Medical expects that its expert(s) will provide opinions regarding at least the proper amount of a reasonable royalty under the *Georgia-Pacific* framework.

Many data points are relevant to the reasonable royalty, including, but not limited to (i) comparable licenses to the Patents-in-Suit; (ii) financial data related to sales of the accused products; (iii) financial data related to sales of comparable products; (iv) surveys related to the value of the relevant technology; (v) Intuitive's statements and actions related to the relevant technology and accused products; (vi) third parties' statements and actions related to the relevant technology and accused products; and (vii) any other evidence relevant under the *Georgia-Pacific* framework. Intuitive's revenues for the accused products (including any convoyed sales, *e.g.*, maintenance and support fees) may be the starting point for determining the royalty base.

Discovery is ongoing and Rex Medical reserves the right to amend, supplement, or otherwise change its response to this Interrogatory.

**SECOND SUPP. CORRECTED RESPONSE TO ROG. NO. 9 (JAN. 2020, SEPT. 2021):**

As noted above, Rex Medical objects to this interrogatory as premature to the extent

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

it seeks expert testimony, either from technical or damages experts.   Such information and opinions will be provided according to the Court's Scheduling Order.   In view of subsequent developments in the case, Rex Medical hereby amends and replaces its response to this interrogatory as follows.   Rex Medical's prior response no longer applies given additional facts that have occurred since that response.

Rex Medical presently seeks a reasonable royalty.   At this time, Rex Medical is not seeking lost profits.   A reasonable royalty is determined, at least in part, by applying the *Georgia-Pacific* factors.   The *Georgia-Pacific* factors include:

1.  The royalties received by the patentee for the licensing of the patent in suit, proving or tending to prove an established royalty.

2.  The rates paid by the licensee for the use of other patents comparable to the patent in suit.

3.  The nature and scope of the license, as exclusive or non-exclusive; or as restricted or non-restricted in terms of territory or with respect to whom the manufactured product may be sold.

4.   The licensor's established policy and marketing program to maintain his patent monopoly by not licensing others to use the invention or by granting licenses under special conditions designed to preserve that monopoly.

5.  The commercial relationship between the licensor and licensee, such as, whether they are competitors in the same territory in the same line of business; or whether they are inventor and promoter.

6.  The effect of selling the patented specialty in promoting sales of other products of the licensee; that existing value of the invention to the licensor as a generator of sales of his non-patented items; and the extent of such derivative or convoyed sales.

7.  The duration of the patent and the term of the license.

8.   The established profitability of the product made under the patent; its commercial success; and its current popularity.

9.  The utility and advantages of the patent property over the old modes or devices, if any, that had been used for working out similar results.

10.  The nature of the patented invention; the character of the commercial embodiment of it as owned and produced by the licensor; and the benefits to those who have used the invention.

11.   The extent to which the infringer has made use of the invention; and any evidence probative of the value of that use.

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

12.  The portion of the profit or of the selling price that may be customary in the particular business or in comparable businesses to allow for the use of the invention or analogous inventions.

13.  The portion of the realizable profit that should be credited to the invention as distinguished from non-patented elements, the manufacturing process, business risks, or significant features or improvements added by the infringer.

14.  The opinion testimony of qualified experts.

15.  The amount that a licensor (such as the patentee) and a licensee (such as the infringer) would have agreed upon (at the time the infringement began) if both had been reasonably and voluntarily trying to reach an agreement; that is, the amount which a prudent licensee— who desired, as a business proposition, to obtain a license to manufacture and sell a particular article embodying the patented invention— would have been willing to pay as a royalty and yet be able to make a reasonable profit and which amount would have been acceptable by a prudent patentee who was willing to grant a license.

*Georgia-Pac. Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970).  As noted in the *Georgia-Pacific* factors, Rex Medical reserves the right to rely upon the analysis and opinions of qualified experts, including damages and technical experts.  Analysis under the *Georgia-Pacific* factors will be based on expert testimony to be provided according to the Scheduling Order.  Nevertheless, based on the limited discovery available to date, Rex Medical directs Intuitive to the license to the patent-in-suit:  RM0002536-RM0002552 and *see also* RM0007541, pursuant to Rule 33(d).  Rex Medical may also rely upon agreements entered into by Defendants Intuitive, including, for example INTUITIVE0030956;  INTUITIVE0031048; INTUITIVE0042559; and the agreements produced at RM0001313; RM0001302, but additionally reserves the right to rely upon any additional documents, information, and agreements produced during discovery or in view of further discovery, including witness testimony, as discovery remains ongoing.  To date, Intuitive has failed to produce all relevant agreements and relevant updated financial information, and therefore, Rex Medical reserves the right to provide its damages response based on further discovery and investigation.  The analysis under the *Georgia-Pacific* factors and any adjustments upwards and downwards will be made based on expert analysis in view of comparable agreements and facts Intuitive has yet to fully provide.

23

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

Discovery is ongoing and Rex Medical reserves the right to amend, supplement, or otherwise change its response to this interrogatory.

**THIRD SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 9 (SEPT. 14, 2021):**

As noted above, Rex Medical objects to this interrogatory as premature to the extent it seeks expert testimony, either from technical or damages experts. Such information and opinions will be provided according to the Court's Scheduling Order.

Based on the discovery to date, Rex Medical nevertheless supplements its response as follows: Pursuant to Rule 33(d), Rex Medical directs Intuitive to RM0002536-RM0002552; INTUITIVE0057438; INTUITIVE0057444; INTUITIVE0030863. Rex Medical further directs Intuitive to its letters, dated June 2, 2020, and August 19, 2019, containing sales figures.

The accused features are fundamental and critical to the success of the accused products. For example, Intuitive's infringement has enabled it to market and sell products that have captured significant market share and Intuitive has reaped the benefits of Rex Medical's ideas.

Rex Medical directs Intuitive, for example, to Rex Medical's final infringement contentions, dated August 27, 2021, which are incorporated herein. As one example,

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

████████████████████████████████████ The infringing feature of the accused products prevents this.  For example, ████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

██████████████████████████████  █████████████████████ As explained in Rex Medical's contentions, ███████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

██████████████████████████████ By using Rex Medical's patented invention without paying, Intuitive has improperly benefited.  There are many documents outlining ██████████████████████████████████████████████; pursuant to Rule 33(d), Rex Medical directs Intuitive to at least INTUITIVE0000017; INTUITIVE0000032-INTUITIVE0000072;     INTUITIVE0000663-INTUITIVE0000691;     INTUITIVE0016404-INTUITIVE0016499;     INTUITIVE0016501-INTUITIVE0016596;     INTUITIVE0018697-

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

INTUITIVE0018708;      INTUITIVE0018709-INTUITIVE0018720;      INTUITIVE0033911-

INTUITIVE0034060;              INTUITIVE0040730-                          INTUITIVE0040731;

INTUITIVE0043812-      INTUITIVE0043825;      INTUITIVE0044567-      INTUITIVE0044580;

INTUITIVE0045226-      INTUITIVE0045285;      INTUITIVE0045294-      INTUITIVE0045370;

INTUITIVE0049265-      INTUITIVE0049270;      INTUITIVE0053736-      INTUITIVE0053812;

INTUITIVE0054497-      INTUITIVE0054567;      INTUITIVE0054992-      INTUITIVE0055052;

INTUITIVE0056515- INTUITIVE0056557. ████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

Intuitive has improperly taken Rex Medical's invention and marketed its accused products, including the da Vinci® System with SureForm products, as enabling surgeons to operate with enhanced vision, precision, and control.  According to a lawsuit Intuitive filed against Auris, the da Vinci® Systems are in use in 64 countries, all 50 U.S. States, and all top-ranked U.S. hospitals for cancer, urology, gynecology or gastroenterology, including:  Memorial Sloan Kettering Cancer Center, University of Texas-M.D. Anderson Cancer Center, the Mayo Clinic, Johns Hopkins Hospital, the Cleveland Clinic, Christiana Care Health System and Beebe Healthcare.  More than 5 million procedures using the da Vinci® System have been performed worldwide.  The use of the da Vinci® System has transformed patient care, including through less blood loss, fewer complications, shorter hospital stays, smaller incisions for minimal scarring, and faster recovery

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

and return to daily life.  *See* RM0007504-RM0007517; *Intuitive Surgical, et al. v. Auris Health*, No. 18-cv-1359, D.I. 1 (D. Del.).  Pursuant to Rule 33(d), Rex Medical further directs Intuitive to RM0005769-RM0005772; RM0005773-RM0005880; RM0005881-RM0006007; RM0005522-RM0005529; RM0005530-RM0005537; RM0005538-RM0005545; RM0005546-RM0005554; RM0005555-RM0005562; RM0005563-RM0005573; RM0005574-RM0005583; RM0005584-RM0005598; RM0005599-RM0005609; RM0005610-RM0005622; RM0006281-RM0006290; RM0005623-RM0005625; RM0005626-RM0005660; RM0005661-RM0005768; RM0006008-RM0006128; RM0006129-RM0006131; RM0006132-RM0006262; RM0006263-RM0006265; RM0006266-RM0006270; RM0006271-RM0006280; RM0006291-RM0006396; RM0006397-RM0006408; RM0006610-RM0006612; RM0006613-RM0006644; RM0006645-RM0006673; RM0006409-RM0006449; RM0006450-RM0006459; RM0006460-RM0006500; RM0006501-RM0006542; RM0006543-RM0006552; RM0006553-RM0006609; RM0006674-RM0006711; RM0006712-RM0006788; RM0006789-RM0006791; RM0006792RM0006796; RM0006797-RM0006807; RM0006808-RM0006818; RM0007211-RM0007214; RM0007215-RM0007221; RM0006819-RM0006832; RM0006833-RM0006876; RM0006877-RM0006887; RM0006888-RM0006930; RM0006931-RM0006941; RM0006942-RM0007036; RM0007037-RM0007083; RM0007084-RM0007206; RM0007207-RM0007210; RM0007222-RM0007229; RM0007230-RM0007232; RM0007398-RM0007448; RM0007449-RM0007494; RM0007233-RM0007243; RM0007244-RM0007254; RM0007255-RM0007265; RM0007266-RM0007316; RM0007317-RM0007329; RM0007330-RM0007397; RM0007541-RM0007542; RM0007495-RM0007497; RM0007498-RM0007500; RM0007534-RM0007536; RM0007501-RM0007503; RM0007504-RM0007517; RM0007518-RM0007533.

As discovery remains on-going; Rex Medical reserves the right to supplement its response.

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

For example, Intuitive has been improperly withholding responsive documents and refusing to supplement its document production, notwithstanding repeated requests from Rex Medical.  (*E.g.*, Letter to counsel for Intuitive, dated June 28, 2021; email to counsel for Intuitive, dated July 7, 2021; letter to counsel for Intuitive, dated August 4, 2021; email to counsel for Intuitive, dated August 9, 2021; email to counsel for Intuitive, dated August 12, 2021; email to Intuitive, dated August 19, 2021; letter to counsel for Intuitive, dated August 24, 2021; letter to counsel for Intuitive, dated August 31, 2021; email to counsel for Intuitive, dated September 8, 2021.) Intuitive's numerous discovery deficiencies, particularly failure to produce responsive documents and provide Rule 30(b)(6) witness testimony, is highly prejudicial.

Additionally, Rex Medical continues to object to the extent that this interrogatory prematurely seeks expert testimony or information requiring expert analysis.

**FOURTH SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 9 (OCT. 15, 2021):**

Rex Medical further responds as follows:  Pursuant to Rule 33(d), Rex Medical also directs Intuitive to the following exemplary documents produced at the following beginning Bates numbers      INTUITIVE0096466;      INTUITIVE0029763;      INTUITIVE0033152; INTUITIVE0042718;      INTUITIVE0042849;      INTUITIVE0042913;      INTUITIVE0042952; INTUITIVE0042976;      INTUITIVE0047726;      INTUITIVE0057261;      INTUITIVE0060764; INTUITIVE0062858;      INTUITIVE0094816;      INTUITIVE0095630;      INTUITIVE0096323; INTUITIVE0096468;      INTUITIVE0096715;      INTUITIVE0097051;      INTUITIVE0097245; INTUITIVE0097422;      INTUITIVE0097722;      INTUITIVE0098120;      INTUITIVE0101024; INTUITIVE0101607;      INTUITIVE0101668;      INTUITIVE0101850;      INTUITIVE0103420; INTUITIVE0103419;      INTUITIVE0103418;      INTUITIVE0103417;      INTUITIVE0103416; INTUITIVE0103415;      INTUITIVE0103353;      INTUITIVE0103352;      INTUITIVE0029763; INTUITIVE0032624;      INTUITIVE0032725;      INTUITIVE0030956;      INTUITIVE0042535;

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

INTUITIVE0042559;   RM0001302,   1313;   INTUITIVE0031048;   INTUITIVE0031930;

RM0002536;      INTUITIVE0033146;      INTUITIVE0033152;      INTUITIVE0033154;

INTUITIVE0033157;   INTUITIVE0033165;   INTUITIVE0033991;   INTUITIVE0042718;

INTUITIVE0042741;   INTUITIVE0042766;   INTUITIVE0042792;   INTUITIVE0042804;

INTUITIVE0042869;   INTUITIVE0042913;   INTUITIVE0042917;   INTUITIVE0057702;

INTUITIVE0057976;   INTUITIVE0058065;   INTUITIVE0060764;   INTUITIVE0060884;

INTUITIVE0060964;   INTUITIVE0062858;   INTUITIVE0064376;   INTUITIVE0067746;

INTUITIVE0074269;   INTUITIVE0094057;   INTUITIVE0094542;   INTUITIVE0094816;

INTUITIVE0095630;   INTUITIVE0095728;   INTUITIVE0095732;   INTUITIVE0095832;

INTUITIVE0095940;   INTUITIVE0096216;   INTUITIVE0096323;   INTUITIVE0101024;

INTUITIVE0101198;   INTUITIVE0101222;   INTUITIVE0101514;   INTUITIVE0101514;

INTUITIVE0101607;   INTUITIVE0101607;   INTUITIVE0101668;   INTUITIVE0101668;

INTUITIVE0101730; INTUITIVE0101850.  Rex Medical also directs Intuitive to the deposition

testimony of Lindsay Carter, Dr. Jim McGuckin, and of Intuitive's witnesses, including Jonathan

Simpson, Dan Jones, Patrick Swindon, Bob DeSantis.

**FIFTH SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 9:**

As noted above, Rex Medical objects to this interrogatory as premature to the extent

it seeks expert testimony, either from technical or damages experts.  Such information and

opinions will be provided according to the Court's Scheduling Order.

Based on the discovery to date, Rex Medical supplements its response as follows:  Pursuant

to Rule 33(d), Rex Medical directs Intuitive to INTUITIVE0103862; INTUITIVE0103840;

INTUITIVE0103759;   INTUITIVE0042603;   INTUITIVE0042585;   INTUITIVE0031003;

INTUITIVE0103416;   INTUITIVE0103418;   INTUITIVE0096466;   INTUITIVE0103419;

INTUITIVE0103420; INTUITIVE0103421; INTUITIVE0057438.  For clarity of record, with

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

respect to Rex Medical's responses to Interrogatory No. 9 collectively, by identifying Bates

numbers of documents Intuitive produced, Rex Medical does not concede that any particular

Intuitive agreement is comparable for purposes of determining a reasonable royalty rate or

otherwise relevant to any issue in the case, which may be the subject of expert testimony in

accordance with the Court's scheduling order.   Additionally, notwithstanding Rex Medical

requesting Rule 30(b)(6) depositions of Intuitive since at least July 2021 (D.I. 85), Intuitive has

refused to provide any of its witnesses for deposition until recently.   Intuitive refused to offer

Mr. Jonathan Simpson for deposition until Friday, October 22, 2021 (Rule 30(b)(6)), Mr. Dan

Jones for deposition until Thursday, October 28 (Rule 30(b)(6)), Mr. Bob DeSantis for deposition

until Friday, October 29, and Mr. Patrick Swindon for deposition until October 25.  Mr. Simpson

is described as knowledgeable about "[t]he marketing of Intuitive's SureForm 60 stapler; financial

information regarding product sales and development costs for Intuitive's SureForm 60 stapler."

Mr. Jones is not listed on Intuitive's initial disclosures, but is designated on at least topics 15, 22,

23, 24, 25, 28, 46, and 47 (D.I. 85).  And Mr. Simpson is designated on at least topics 2, 3, 9, 10,

11, 16, 17, 18, 20, 21, 26, 30, 31, 33, 42 and 43 (D.I. 85).  Rex Medical reserves all rights to rely

on their testimony for damages and any documents or information produced in connection with

those depositions.

**INTERROGATORY NO. 10:**

For each asserted claim of the patents-in-suit, describe in detail the facts and circumstances
relating to Rex's contentions that Intuitive indirectly infringes, contributorily infringes, or induces
infringement, including but not limited to: identifying the factual and legal basis for your
contention; identifying the direct infringer; identifying your contention as to when Intuitive had
knowledge of the patents-in-suit; identifying your contention as to whether Intuitive intended to
induce infringement; identifying your contentions for contributory infringement; identifying the
time frame in which the indirect infringement occurred; identifying the persons most
knowledgeable regarding the foregoing; and identifying all relevant documents and tangible things
relating to the foregoing.

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

not in Rex Medical's possession, custody, or control.

Based on Rex Medical's understanding of the scope of this Interrogatory as informed by counsel for Intuitive's explanation during the parties' September 13, 2019 meet-and-confer and subject to the foregoing general and specific objections, Rex Medical supplements its prior response as follows: On January 26, 2016, Oleg F. Kaplun, Esq. signed a substitute statement averring to the USPTO that inventors James F. McGuckin, Jr. and Peter Hinchliffe could not be found or reached after diligent effort. Pursuant to 37 CFR § 1.64(e), this substitute statement contained an acknowledgment that any willful false statement made in such statement is punishable under 18 U.S.C. § 1001 by fine or imprisonment of not more than 5 years, or both.

Discovery is ongoing and Rex Medical reserves the right to amend, supplement, or otherwise change its response to this Interrogatory.

**SECOND SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 12 (OCT. 15, 2021):**

Rex Medical further responds as follows:  Pursuant to Rule 33(d), Rex Medical also directs Intuitive to the deposition testimony of Lindsay Carter, Peter Hinchliffe, and Dr. Jim McGuckin.

Dated: October 22, 2021

Respectfully submitted,

FARNAN LLP

/s/ Michael J. Farnan
Brian E. Farnan (Bar No. 4089)
Michael J. Farnan (Bar No. 5165)
919 N. Market St., 12th Floor
Wilmington, DE 19801
Tel: 302-777-0300
Fax: 302-777-0301
bfarnan@farnanlaw.com
mfarnan@farnanlaw.com

Erik B. Milch (admitted *pro hac vice*)
COOLEY LLP

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

11951 Freedom Drive
One Freedom Square
Reston, Virginia 20190-5656
(703) 456-8000
emilch@cooley.com

Shane Hannon (admitted *pro hac vice*)
COOLEY LLP
1299 Pennsylvania Ave., N.W., Ste. 700
Washington, D.C. 20004-2400
(202) 842-7800
shannon@cooley.com

*Attorneys for Plaintiff*

<u>CERTIFICATE OF SERVICE</u>

I, Michael J. Farnan, hereby certify that on October 22, 2021, a copy of Rex Medical,

L.P.'s Sixth Supplemental Responses and Objections to Defendants' First Set of Interrogatories

was served on the following as indicated:

<u>Via E-Mail</u>
Karen E. Keller
David M. Fry
Nathan R. Hoeschen
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
kkeller@shawkeller.com
dfry@shawkeller.com
nhoeschen@shawkeller.com

*Attorneys for Defendants*

<u>Via E-Mail</u>
Steven M. Anzalone
Claire A. Fundakowski
Katherine Vidal
Michael Rueckheim
WINSTON & STRAWN LLP
sanzalone@winston.com
cfundakowski@winston.com
kvidal@winston.com
mrueckheim@winston.com

*Attorneys for Defendants*

/s/ Michael J. Farnan
Michael J. Farnan (Bar No. 5165)

# EXHIBIT 5

# Exhibit E

Redacted Public Version

```
 1              IN THE UNITED STATES DISTRICT COURT
 2                 FOR THE DISTRICT OF DELAWARE
 3
 4   REX MEDICAL, L.P.,                )
                                       )
 5             Plaintiff,              )
                                       )
 6             vs.                     ) C.A. No. 19-005-MN
                                       )
 7   INTUITIVE SURGICAL, INC.,         )
     INTUITIVE SURGICAL OPERATIONS,    )
 8   INC. And INTUITIVE SURGICAL       )
     HOLDINGS, LLC,                    )
 9                                     )
               Defendants.             )
10   _____  )
11
12           VIRTUAL VIDEOCONFERENCE VIDEO-RECORDED
13               DEPOSITION OF LINDSAY CARTER
14
15              Wednesday, October 27, 2021
16        Remotely testifying from Washington, D.C.
17
18
19
20
21
22   Job No. 4847169
23   Reported By:
24   Hanna Kim, CLR, CSR No. 13083
25   Pages 1 - 157
```

Page 1

1    cava filters, were subject to this type of mass

2    tort litigation.

3        Q.   The testimony you provided in that case,

4    did that relate at all to stapling technology?

5        A.   No.                                    10:36:25

6        Q.   What -- what did the testimony generally

7    relate to?

8        A.   Inferior vena cava filters.

9        Q.   What was the result of that case?

10       A.   We lost at trial.                       10:36:40

11       Q.   Did Rex Med- -- was Rex Medical required

12   to pay any amount in damages or otherwise?

13            MR. MILCH:  Objection.  Form.

14            Just caution the witness not to reveal any

15   confidential information in this context.        10:36:55

16            You can answer if you have nonconfidential

17   information.

18            THE WITNESS:  Everything's confidential.

19            MR. RUECKHEIM:  And, Mr. Milch, I -- I

20   believe that's an improper instruction.  It's not a   10:37:10

21   privileged instruction.  It's for confidential

22   rights, that we have a protective order in this

23   case.

24            MR. MILCH:  You can answer if there's

25   information that's available to you.             10:37:19

                                            Page 33

```
 1              THE WITNESS:   The only -- I guess the only

 2     thing I can say is we came to a settlement.

 3     BY MR. RUECKHEIM:

 4         Q.   And how much was that settlement for?

 5         A.   That's confidential.                      10:37:25

 6         Q.   What was the jury award?

 7         A.   The jury -- what, the jury award after the

 8     trial?

 9         Q.   Correct.

10         A.   Was 34 million, approximately.            10:37:35

11         Q.   When you say that the settlement amount

12     was confidential, are -- who -- who's that

13     information confidential to, Rex Medical?

14         A.   Yes.   I was -- it was told to me this is

15     all confidential.                                  10:37:56

16         Q.   Is it -- I -- I just want to see if I can

17     figure out your concern.

18              Is the concern that you may reveal Rex

19     Medical confidential information or confidential

20     information relating to the plaintiff in that      10:38:05

21     case?

22         A.   Rex Medical.

23         Q.   Okay.

24              MR. RUECKHEIM:   Mr. Milch, based on that,

25     I feel like the witness can answer the question.   10:38:17
```

                                                        Page 34

```
 1    So I'll -- I'll turn it to you, if you have a

 2    different instruction.

 3           MR. MILCH:  You know, we -- I have not

 4    seen the agreement, and I'm not sure what the

 5    confidentiality provisions in the agreement are,      10:38:26

 6    whether or not there's notice required before that

 7    information is disclosed.  So I can't, sitting here

 8    today, tell you that.

 9           MR. RUECKHEIM:  Okay.  Maybe if you can

10    check on a break.  Right now, the testimony is Rex     10:38:34

11    Medical, but if --

12           MR. MILCH:  Well, I don't have that

13    agreement.  I can -- we can see if we can find it.

14    But I'll -- I'll object as outside the scope and --

15    and -- and relevance as well.  But we'll try to        10:38:44

16    find it.  We don't have it here today.

17    BY MR. RUECKHEIM:

18       Q.   Do you remember the name of the plaintiff

19    in that case?

20       A.   Yes.                                           10:38:53

21       Q.   What is -- what is that person -- who is

22    that person?

23       A.   Tracy Reed-Brown.

24       Q.   T-R-A-C-Y, and then you said R-E-E

25    [verbatim], Brown?                                     10:39:08
```

Page 35

```
 1        A.   Yes.

 2        Q.   I'm going to read out that list of topics.

 3   And if you can follow along in the document and

 4   confirm whether or not you're designated on these

 5   topics.                                        10:56:14

 6             That list is:  1, 3, 5, 8, 12, 18 to 24,

 7   28 to 30, 32 to 51, 54 to 56, 60, 62, 70 to 75,

 8   and 79 to 80.

 9             Mr. Carter, can you confirm that you are

10   designated to speak on behalf of Rex Medical with   10:57:31

11   respect to those topics?

12        A.   Yes, to the best of my recollection.

13        Q.   Okay.  Do you understand that you're also

14   being deposed in your personal capacity?

15        A.   Yes.                                 10:57:43

16        Q.   Two of the topics that I just discussed,

17   Topics 34 and 35, Rex Medical also designated

18   Mr. Peter Hinchliffe; correct?

19        A.   Yes, I believe so.

20        Q.   Do you have additional information beyond   10:57:59

21   what Mr. Hinchliffe provided with respect to these

22   topics?

23             MR. MILCH:  Objection.  Form.

24   BY MR. RUECKHEIM:

25        Q.   I'm sorry.  I saw your head shake, but I   10:58:11
```

Page 49

1          MR. MILCH:  Objection.  Form.

2          THE WITNESS:  No, that's not, in fact,

3      correct.

4      BY MR. RUECKHEIM:



25     BY MR. RUECKHEIM:                            11:22:50

Page 60



1

13:12:56

16          MR. MILCH:  Objection.  Form.

17          You -- I'll instruct the witness that you

18   can answer only to the extent you can reveal

19   non-privileged communications.

20

Page 108



Page 109



Page 148



Page 149



1

2      Q.   What were the discussions?

3           MR. MILCH:   Objection.

4           Instruct the witness not to answer or

5      provide the substance of any communica- -- or any        14:38:00

6      conversations with counsel.

7      BY MR. RUECKHEIM:

8

Page 150



Page 151



Page 152



Page 153

# EXHIBIT 6

# Exhibit E

Redacted Public Version

```
 1              IN THE UNITED STATES DISTRICT COURT

 2                 FOR THE DISTRICT OF DELAWARE

 3

 4   REX MEDICAL, L.P.,                )
                                       )
 5            Plaintiff,               )
                                       )
 6            vs.                      ) C.A. No. 19-005-MN
                                       )
 7   INTUITIVE SURGICAL, INC.,         )
     INTUITIVE SURGICAL OPERATIONS,    )
 8   INC. And INTUITIVE SURGICAL       )
     HOLDINGS, LLC,                    )
 9                                     )
              Defendants.              )
10   _____   )

11

12         VIRTUAL VIDEOCONFERENCE VIDEO-RECORDED

13              DEPOSITION OF LINDSAY CARTER

14

15              Wednesday, October 27, 2021

16        Remotely testifying from Washington, D.C.

17

18

19

20

21

22   Job No. 4847169

23   Reported By:

24   Hanna Kim, CLR, CSR No. 13083

25   Pages 1 - 157
```

Page 1

1    cava filters, were subject to this type of mass

2    tort litigation.

3        Q.   The testimony you provided in that case,

4    did that relate at all to stapling technology?

5        A.   No.                                        10:36:25

6        Q.   What -- what did the testimony generally

7    relate to?

8        A.    Inferior vena cava filters.

9        Q.   What was the result of that case?

10       A.   We lost at trial.                           10:36:40

11       Q.   Did Rex Med- -- was Rex Medical required

12   to pay any amount in damages or otherwise?

13            MR. MILCH:  Objection.  Form.

14            Just caution the witness not to reveal any

15   confidential information in this context.            10:36:55

16            You can answer if you have nonconfidential

17   information.

18            THE WITNESS:  Everything's confidential.

19            MR. RUECKHEIM:  And, Mr. Milch, I -- I

20   believe that's an improper instruction.  It's not a  10:37:10

21   privileged instruction.  It's for confidential

22   rights, that we have a protective order in this

23   case.

24            MR. MILCH:  You can answer if there's

25   information that's available to you.                 10:37:19

                                              Page 33

```
 1                THE WITNESS:  The only -- I guess the only

 2      thing I can say is we came to a settlement.

 3      BY MR. RUECKHEIM:

 4           Q.   And how much was that settlement for?

 5           A.   That's confidential.                    10:37:25

 6           Q.   What was the jury award?

 7           A.   The jury -- what, the jury award after the

 8      trial?

 9           Q.   Correct.

10           A.   Was 34 million, approximately.          10:37:35

11           Q.   When you say that the settlement amount

12      was confidential, are -- who -- who's that

13      information confidential to, Rex Medical?

14           A.   Yes.  I was -- it was told to me this is

15      all confidential.                                 10:37:56

16           Q.   Is it -- I -- I just want to see if I can

17      figure out your concern.

18                Is the concern that you may reveal Rex

19      Medical confidential information or confidential

20      information relating to the plaintiff in that      10:38:05

21      case?

22           A.   Rex Medical.

23           Q.   Okay.

24                MR. RUECKHEIM:  Mr. Milch, based on that,

25      I feel like the witness can answer the question.   10:38:17
```

Page 34

1     So I'll -- I'll turn it to you, if you have a

2     different instruction.

3             MR. MILCH:  You know, we -- I have not

4     seen the agreement, and I'm not sure what the

5     confidentiality provisions in the agreement are,        10:38:26

6     whether or not there's notice required before that

7     information is disclosed.  So I can't, sitting here

8     today, tell you that.

9             MR. RUECKHEIM:  Okay.  Maybe if you can

10    check on a break.  Right now, the testimony is Rex      10:38:34

11    Medical, but if --

12            MR. MILCH:  Well, I don't have that

13    agreement.  I can -- we can see if we can find it.

14    But I'll -- I'll object as outside the scope and --

15    and -- and relevance as well.  But we'll try to        10:38:44

16    find it.  We don't have it here today.

17    BY MR. RUECKHEIM:

18       Q.   Do you remember the name of the plaintiff

19    in that case?

20       A.   Yes.                                            10:38:53

21       Q.   What is -- what is that person -- who is

22    that person?

23       A.   Tracy Reed-Brown.

24       Q.   T-R-A-C-Y, and then you said R-E-E

25    [verbatim], Brown?                                      10:39:08

                                                    Page 35

1          A.   Yes.

2          Q.   I'm going to read out that list of topics.

3     And if you can follow along in the document and

4     confirm whether or not you're designated on these

5     topics.                                      10:56:14

6               That list is:  1, 3, 5, 8, 12, 18 to 24,

7     28 to 30, 32 to 51, 54 to 56, 60, 62, 70 to 75,

8     and 79 to 80.

9               Mr. Carter, can you confirm that you are

10    designated to speak on behalf of Rex Medical with   10:57:31

11    respect to those topics?

12         A.   Yes, to the best of my recollection.

13         Q.   Okay.  Do you understand that you're also

14    being deposed in your personal capacity?

15         A.   Yes.                               10:57:43

16         Q.   Two of the topics that I just discussed,

17    Topics 34 and 35, Rex Medical also designated

18    Mr. Peter Hinchliffe; correct?

19         A.   Yes, I believe so.

20         Q.   Do you have additional information beyond   10:57:59

21    what Mr. Hinchliffe provided with respect to these

22    topics?

23               MR. MILCH:  Objection.  Form.

24    BY MR. RUECKHEIM:

25         Q.   I'm sorry.  I saw your head shake, but I    10:58:11

                                              Page 49

1          MR. MILCH:  Objection.  Form.

2          THE WITNESS:  No, that's not, in fact,

3     correct.

4     BY MR. RUECKHEIM:



25    BY MR. RUECKHEIM:                              11:22:50

Page 60



1

                              13:12:56

16          MR. MILCH:  Objection.  Form.

17          You -- I'll instruct the witness that you

18   can answer only to the extent you can reveal

19   non-privileged communications.

20

                              Page 108



Page 109



Page 148



Page 149



1

2      Q.   What were the discussions?

3           MR. MILCH:  Objection.

4           Instruct the witness not to answer or

5      provide the substance of any communica- -- or any        14:38:00

6      conversations with counsel.

7      BY MR. RUECKHEIM:

8

Page 150



Page 151



Page 152



Page 153

# EXHIBIT 7

# Exhibit H

Redacted Public Version

1                UNITED STATES DISTRICT COURT

2                FOR THE DISTRICT OF DELAWARE

3    ---------------------------------------------x

4    REX MEDICAL, L.P.,

5                     Plaintiff,

6    vs.                        C.A. No. 19-005(MN)

7    INTUITIVE SURGICAL,INC.,

     INTUITIVE SURGICAL OPERATIONS,

8    INC., and INTUITIVE SURGICAL

     HOLDINGS,

9

10                   Defendants.

11   ---------------------------------------------x

12

13      REMOTE VIDEOTAPED DEPOSITION BY VIRTUAL ZOOM OF

14                   PETER HINCHLIFFE

15              Tuesday, October 19, 2021

16

17

18

19

20

21

22

23

24   Reported By: Lynne Ledanois, CSR 6811

25   Job No. 4847168

                                        Page 1

```
 1              THE WITNESS:  Henry.              8:37AM
 2   BY MR. RUECKHEIM:                            8:37AM
 3        Q    Henry.  Thank you.                 8:37AM
 4        A    Henry, possibly.  It doesn't       8:37AM
 5   say, but I would assume.                     8:37AM
 6        Q    It discusses a meeting --          8:37AM
 7              MR. MILCH:  Objection.            8:37AM
 8              Counsel, we're going to claw      8:37AM
 9        this document back as being             8:37AM
10        privileged.                             8:37AM
11              It appears to involve             8:37AM
12        communications with Neil Gershon        8:38AM
13        and no third parties.  Neil             8:38AM
14        Gershon was the company's patent        8:38AM
15        counsel.                                8:38AM
16              MR. RUECKHEIM:  Okay.             8:38AM
17              MR. MILCH:  We'll review it,      8:38AM
18        but this appears to be a                8:38AM
19        privileged document, I would say,       8:38AM
20        inadvertently produced.                 8:38AM
21              MR. RUECKHEIM:  We can take       8:38AM
22        down Exhibit 10.                        8:38AM
23              VIDEOGRAPHER:  Okay.  I'll        8:38AM
24        close it.                               8:38AM
25              (Marked and redacted.)            8:38AM
```

Page 115

```
 1              MR. RUECKHEIM:  During this        8:38AM

 2         deposition, I would like to ask         8:38AM

 3         the witness questions on this           8:38AM

 4         document, and it appears to be          8:38AM

 5         recapping a meeting held with           8:38AM

 6         Boston Scientific.                      8:38AM

 7              MR. MILCH:  Okay.  I'll            8:38AM

 8         review it on the next break.  I         8:38AM

 9         appreciate.  There is just some         8:38AM

10         confusion in my mind.                   8:38AM

11              I don't want to take your          8:38AM

12         time now, so I'll review it at a        8:38AM

13         break and we can go back to that,       8:38AM

14         if that's okay with you.                8:38AM

15              MR. RUECKHEIM:  Understood.        8:38AM

16              MR. MILCH:  All right.             8:38AM

17         Thanks.                                 8:38AM

18              MR. RUECKHEIM:  Let's bring        8:38AM

19         up RM667 as Exhibit 11.                 8:38AM

20              (Exhibit 11 was marked.)           8:39AM

21    BY MR. RUECKHEIM:                            8:39AM

22         Q    Let me know when you have          8:39AM

23      it, Mr. Hinchliffe.                        8:39AM

24         A    Okay.  I'll let you know.          8:39AM

25              Okay.                              8:40AM
```

Page 116



```
15      Q     Have you seen Exhibit 11        8:40AM
16   before?                                  8:40AM
17      A     I don't remember.               8:40AM
18      Q     Do you remember a meeting in    8:40AM
19   Natick, Massachusetts involving FTRD     8:40AM
20   in April?                                8:40AM
21      A     I don't remember a meeting.     8:40AM
22   But, you know, whether one happened or   8:40AM
23   not, I don't remember.                   8:40AM
```

Page 117



Page 118



1

2

3

4

5

6

7

8

9

10

11

12

13

14

```
15      Q     Understood.  I think we said    8:42AM

16  earlier that you were not aware of a     8:42AM

17  stapling product at Rex Medical during   8:42AM

18  your time there.                         8:42AM

19          This question -- or, I'm         8:42AM

20  sorry, ████████████████████████          8:42AM

    ███████████████                          8:42AM

22          Does that change your memory     8:42AM

23  in any way or affect your memory in      8:42AM

24  any way?                                 8:42AM

25      █    ████████████████████████        8:42AM
```

```
 1  ████████████████████████████      ████████

    ████████████████████████          ████████

    ██████████████████████████████    ████████

    ████████████████████████          ████████

 5          And that was developed -- I        8:43AM

 6  don't know where it was developed.  It      8:43AM

 7  was before my time.                         8:43AM

 8      Q    Okay.                              8:43AM

 9      A    So I was not involved in the       8:43AM

10  development of that.                        8:43AM

11              ██████████████████████    ████████

    ████████████████████████          ████████

    ██████    ████████████████          ████████

    ████████████████                  ████████

15      Q    Understood.                        8:43AM

16          MR. RUECKHEIM:  If we can go        8:44AM

17  to -- or pull up RM0000783 as               8:44AM

18  Exhibit 12.                                 8:44AM

19          (Exhibit 12 was marked.)            8:44AM

20          THE WITNESS:  It's there.           8:45AM

21  BY MR. RUECKHEIM:                           8:45AM

22      Q    Mr. Hinchliffe, let me know        8:45AM

23  when you have Exhibit 12.                   8:45AM

24      A    Okay.  I'll let you know.          8:45AM

25          Okay.  I have Exhibit 12.           8:45AM
```

Page 120

| | | |
|---|---|---|
| 1 | That's my guess.  I can't tell if it's | 9:23AM |
| 2 | identical other than that. | 9:23AM |
| 3 | You said may have additional | 9:23AM |
| 4 | lines.  Which additional lines are you | 9:23AM |
| 5 | referring to? | 9:23AM |
| 6 | Q    Well, I thought the red was | 9:23AM |
| 7 | new, but it looks like it red might be | 9:24AM |
| 8 | the same on both, just different | 9:24AM |
| 9 | colors. | 9:24AM |
| 10 | A    Like I said, I think 13 is a | 9:24AM |
| 11 | black-and-white copy of 14.  Because | 9:24AM |
| 12 | the shading would look like -- the | 9:24AM |
| 13 | blue would come out like shading. | 9:24AM |
| 14 | MR. RUECKHEIM:  Let's bring | 9:24AM |
| 15 | up RM7546 as Exhibit 15. | 9:24AM |
| 16 | (Exhibit 15 was marked.) | 9:24AM |
| 17 | MR. MILCH:  Counsel, I want | 9:24AM |
| 18 | to let you know we just emailed | 9:24AM |
| 19 | you a redacted version of Exhibit | 9:24AM |
| 20 | 10. | 9:24AM |
| 21 | So I think if you wanted to | 9:24AM |
| 22 | go back to that at some point, I | 9:24AM |
| 23 | want to let you know that should | 9:24AM |
| 24 | be in your in-box. | 9:25AM |
| 25 | MR. RUECKHEIM:  Thank you. | 9:25AM |

Page 153

# EXHIBIT 8

# Exhibit H

Redacted Public Version

1              UNITED STATES DISTRICT COURT

2              FOR THE DISTRICT OF DELAWARE

3    ----------------------------------------x

4    REX MEDICAL, L.P.,

5                   Plaintiff,

6    vs.                      C.A. No. 19-005(MN)

7    INTUITIVE SURGICAL,INC.,

     INTUITIVE SURGICAL OPERATIONS,

8    INC., and INTUITIVE SURGICAL

     HOLDINGS,

9

10                  Defendants.

11   ----------------------------------------x

12

13     REMOTE VIDEOTAPED DEPOSITION BY VIRTUAL ZOOM OF

14                  PETER HINCHLIFFE

15               Tuesday, October 19, 2021

16

17

18

19

20

21

22

23

24   Reported By: Lynne Ledanois, CSR 6811

25   Job No. 4847168

                                      Page 1

| | | |
|---|---|---|
| 1 | THE WITNESS:  Henry. | 8:37AM |
| 2 | BY MR. RUECKHEIM: | 8:37AM |
| 3 | Q    Henry.  Thank you. | 8:37AM |
| 4 | A    Henry, possibly.  It doesn't | 8:37AM |
| 5 | say, but I would assume. | 8:37AM |
| 6 | Q    It discusses a meeting -- | 8:37AM |
| 7 | MR. MILCH:  Objection. | 8:37AM |
| 8 | Counsel, we're going to claw | 8:37AM |
| 9 | this document back as being | 8:37AM |
| 10 | privileged. | 8:37AM |
| 11 | It appears to involve | 8:37AM |
| 12 | communications with Neil Gershon | 8:38AM |
| 13 | and no third parties.  Neil | 8:38AM |
| 14 | Gershon was the company's patent | 8:38AM |
| 15 | counsel. | 8:38AM |
| 16 | MR. RUECKHEIM:  Okay. | 8:38AM |
| 17 | MR. MILCH:  We'll review it, | 8:38AM |
| 18 | but this appears to be a | 8:38AM |
| 19 | privileged document, I would say, | 8:38AM |
| 20 | inadvertently produced. | 8:38AM |
| 21 | MR. RUECKHEIM:  We can take | 8:38AM |
| 22 | down Exhibit 10. | 8:38AM |
| 23 | VIDEOGRAPHER:  Okay.  I'll | 8:38AM |
| 24 | close it. | 8:38AM |
| 25 | (Marked and redacted.) | 8:38AM |

Page 115

| | | |
|---|---|---|
| 1 | MR. RUECKHEIM:  During this | 8:38AM |
| 2 | deposition, I would like to ask | 8:38AM |
| 3 | the witness questions on this | 8:38AM |
| 4 | document, and it appears to be | 8:38AM |
| 5 | recapping a meeting held with | 8:38AM |
| 6 | Boston Scientific. | 8:38AM |
| 7 | MR. MILCH:  Okay.  I'll | 8:38AM |
| 8 | review it on the next break.  I | 8:38AM |
| 9 | appreciate.  There is just some | 8:38AM |
| 10 | confusion in my mind. | 8:38AM |
| 11 | I don't want to take your | 8:38AM |
| 12 | time now, so I'll review it at a | 8:38AM |
| 13 | break and we can go back to that, | 8:38AM |
| 14 | if that's okay with you. | 8:38AM |
| 15 | MR. RUECKHEIM:  Understood. | 8:38AM |
| 16 | MR. MILCH:  All right. | 8:38AM |
| 17 | Thanks. | 8:38AM |
| 18 | MR. RUECKHEIM:  Let's bring | 8:38AM |
| 19 | up RM667 as Exhibit 11. | 8:38AM |
| 20 | (Exhibit 11 was marked.) | 8:39AM |
| 21 | BY MR. RUECKHEIM: | 8:39AM |
| 22 | Q    Let me know when you have | 8:39AM |
| 23 | it, Mr. Hinchliffe. | 8:39AM |
| 24 | A    Okay.  I'll let you know. | 8:39AM |
| 25 | Okay. | 8:40AM |

Page 116



```
 1         ██     ████████████████          ████

           ███████████████████████          ████

           █████████     █████████████       ████

           ██████████████████████            ████

           ███████████████████████           ████

           ██████████████                    ████

                   ██████████                ████

           ██      █████                      ████

           ██      █████████████              ████

           ████████████████████████          ████

           █████████████████████             ████

           ██████████████████████████        ████

                  ████████████               ████

           ██      ████████                   ████

15         Q     Have you seen Exhibit 11        8:40AM

16    before?                                    8:40AM

17         A     I don't remember.               8:40AM

18         Q     Do you remember a meeting in    8:40AM

19    Natick, Massachusetts involving FTRD       8:40AM

20    in April?                                  8:40AM

21         A     I don't remember a meeting.     8:40AM

22    But, you know, whether one happened or     8:40AM

23    not, I don't remember.                     8:40AM

24         ██     ███████████████               ████

           ████████████████████████             ████
```

Page 117



Page 118



```
 1        ████████████                                    ████████
          ████████████████████████████                   ████████
          ██████████████████████████████████             ████████
          ██████████████████████████████████             ████████
          ████████████████████████████████               ████████
          ██████████████████████████████████████         ████████
          ████                                            ████████
          ██████████████████████████████                 ████████
          ██████████████   ████████████████              ████████
          ████████████   ████████████                    ████████
          ████████████████████████████                   ████████
          ████████████████████████████████               ████████
          ██████████████████████████████                 ████████
          ████████████████████                           ████████

15        Q      Understood.  I think we said      8:42AM
16   earlier that you were not aware of a           8:42AM
17   stapling product at Rex Medical during         8:42AM
18   your time there.                               8:42AM
19             This question -- or, I'm             8:42AM
20   sorry, ██████████████████████████             ████████
         ████████████                               8:42AM
22             Does that change your memory         8:42AM
23   in any way or affect your memory in            8:42AM
24   any way?                                       8:42AM
25      ██  ████████████████████████               ████████
```

Page  119

```
 1  ███████████████████████████████      ███████

    ███████████████████████████████      ███████

    ███████████████████████████████████  ███████

    █████████████████████████            ███████

 5          And that was developed -- I        8:43AM

 6   don't know where it was developed.  It     8:43AM

 7   was before my time.                        8:43AM

 8       Q    Okay.                             8:43AM

 9       A    So I was not involved in the      8:43AM

10   development of that.                        8:43AM

11               ████████████████████████       ███████

    ██████████████████████████████        ███████

    ██████████  █████████████████████      ███████

    ███████████████████                    ███████

15       Q    Understood.                       8:43AM

16          MR. RUECKHEIM:  If we can go         8:44AM

17   to -- or pull up RM0000783 as              8:44AM

18   Exhibit 12.                                 8:44AM

19          (Exhibit 12 was marked.)            8:44AM

20          THE WITNESS:  It's there.           8:45AM

21  BY MR. RUECKHEIM:                           8:45AM

22       Q    Mr. Hinchliffe, let me know       8:45AM

23   when you have Exhibit 12.                  8:45AM

24       A    Okay.  I'll let you know.         8:45AM

25          Okay.  I have Exhibit 12.           8:45AM
```

Page 120

```
 1      That's my guess.  I can't tell if it's        9:23AM
 2      identical other than that.                     9:23AM
 3              You said may have additional           9:23AM
 4      lines.  Which additional lines are you         9:23AM
 5      referring to?                                  9:23AM
 6       Q    Well, I thought the red was              9:23AM
 7      new, but it looks like it red might be         9:24AM
 8      the same on both, just different               9:24AM
 9      colors.                                        9:24AM
10       A    Like I said, I think 13 is a             9:24AM
11      black-and-white copy of 14.  Because           9:24AM
12      the shading would look like -- the             9:24AM
13      blue would come out like shading.              9:24AM
14              MR. RUECKHEIM:  Let's bring            9:24AM
15          up RM7546 as Exhibit 15.                   9:24AM
16              (Exhibit 15 was marked.)               9:24AM
17              MR. MILCH:  Counsel, I want            9:24AM
18          to let you know we just emailed            9:24AM
19          you a redacted version of Exhibit         9:24AM
20          10.                                        9:24AM
21              So I think if you wanted to            9:24AM
22          go back to that at some point, I          9:24AM
23          want to let you know that should          9:24AM
24          be in your in-box.                         9:25AM
25              MR. RUECKHEIM:  Thank you.             9:25AM
```

Page 153

# EXHIBIT 9

EXH. 3

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

Page 1

```
 1              IN THE UNITED STATES DISTRICT COURT

 2                 FOR THE DISTRICT OF DELAWARE

 3

 4    REX MEDICAL, L.P.,                )

                                        )

 5            Plaintiff,                )

                                        )

 6            vs.                       ) C.A. No. 19-cv-5-MN

                                        )

 7    INTUITIVE SURGICAL, INC.,         )

      INTUITIVE SURGICAL OPERATIONS,    )

 8    INC. And INTUITIVE SURGICAL       )

      HOLDINGS, LLC,                    )

 9                                      )

              Defendants.              )

10    _____   )

11

12         HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

13           VIRTUAL VIDEOCONFERENCE VIDEO-RECORDED

14                 DEPOSITION OF DON WILSON

15

16              Wednesday, November 17, 2021

17       Remotely Testifying from Sunnyvale, California

18

19

20

21

22

23      Reported By:

24      Hanna Kim, CLR, CSR No. 13083

25      Job No. 4893671
```

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

Page 66

1    preferred because of the fewer number of fires.

2    BY MR. MILCH:

3        Q.   Did Intuitive ever explore development of

4    an ███████████████████████████?

5        A.   Yes.                                      11:47:05

6        Q.   When was that?

7        A.   I don't know exactly, but I would -- well,

8    I would speculate it was right around the same

9    time that we started the ████████████.  So it

10   would have been ████ time frame.                   11:47:20

11       Q.   Were you involved with Intuitive's

12   exploration of an ████████████████?

13       A.   I was not too involved in that.  At the

14   time that that was being looked at, as I

15   mentioned, I was -- my focus was around launching  11:47:38

16   the ████████████████, which was a huge

17   undertaking.

18           So I know there was some work done by

19   engineering and some other, you know, management

20   to look at alternative options, such as an         11:47:52

21   ████████████.

22       Q.   Do you know who in engineering was working

23   on the ████████████████████████████

24   ████████?

25       A.   I know Matt Wixey looked at it, did some   11:48:03

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

Page 88

1          Q.   And do you know what SOLIDWORKS files are?

2          A.   They're CAD files.

3          Q.   And do you know if any SOLIDWORKS files

4     were collected?  Whether you collected them or

5     someone else, are you sure -- are you aware          12:33:20

6     whether anybody collected any SOLIDWORKS files?

7          A.   I don't know.

8          Q.   Did Intuitive ever create these SOLIDWORKS

9     models of a hypothetical ████████████████████?

10              MR. RUECKHEIM:  Object to the form.          12:33:37

11              THE WITNESS:  I don't know exactly what

12     was created with respect to that -- that design.

13     BY MR. MILCH:

14          Q.   And what phase of development at Intuitive

15     do you typically create SOLIDWORKS files?          12:33:51

16              MR. RUECKHEIM:  Object to the form.

17              THE WITNESS:  ██████████████████████████

18     ████████  ████████████████████████████████████

19     ██████████████████████

20     BY MR. MILCH:          12:34:12

21          Q.   Do you know if there are any SOLIDWORKS

22     files created for the SureForm 60 product?

23          A.   ████████████████████

24          Q.   Do you know if those were -- strike that.

25              So I -- if you go back into Exhibit          12:34:26

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

Page 102

1   on?

2       A.   Just the -- the number of people involved

3   and potentially the duration.

4       Q.   Is there anything else that's not listed

5   in this second supplemental response to                12:54:11

6   Interrogatory 4 that would have been considered in

7   designing the ████████████████████████████?

8           MR. RUECKHEIM:  Object to the form.

9           THE WITNESS:  I'm not aware of anything.

10  BY MR. MILCH:                                          12:54:29

11      Q.   So earlier you said that the ████████████

12  ████████████████████████████████████████████████

13  ████████████████; is that correct?

14          MR. RUECKHEIM:  Object to the form.

15          THE WITNESS:  Yes, it -- it would require   12:54:52

16  a ████████████████████████.

17  BY MR. MILCH:

18      Q.   Would there be costs associated with

19  designing and releasing ████████████ to work with

20  the ████████████████████████?                          12:55:08

21      A.   Yes, there would be.

22      Q.   Any sense of what that cost would be?

23      A.   I believe those are actually included in

24  this -- these estimates here.  I don't know the

25  breakdown.                                             12:55:27

# EXHIBIT 10

EXH. 3

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 1

1            IN THE UNITED STATES DISTRICT COURT

2              FOR THE DISTRICT OF DELAWARE

3

4    REX MEDICAL, L.P.,                )
                                       )
5            Plaintiff,                )
                                       )
6            vs.                       ) C.A. No. 19-cv-5-MN
                                       )
7    INTUITIVE SURGICAL, INC.,         )
     INTUITIVE SURGICAL OPERATIONS,    )
8    INC. And INTUITIVE SURGICAL       )
     HOLDINGS, LLC,                    )
9                                      )
             Defendants.               )
10   _____  )

11

12       HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

13         VIRTUAL VIDEOCONFERENCE VIDEO-RECORDED

14              DEPOSITION OF DON WILSON

15

16           Wednesday, November 17, 2021

17     Remotely Testifying from Sunnyvale, California

18

19

20

21

22

23     Reported By:

24     Hanna Kim, CLR, CSR No. 13083

25     Job No. 4893671

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

Page 66

1    preferred because of the fewer number of fires.

2    BY MR. MILCH:

3        Q.   Did Intuitive ever explore development of

4    an ████████████████████████████?

5        A.   Yes.                                      11:47:05

6        Q.   When was that?

7        A.   I don't know exactly, but I would -- well,

8    I would speculate it was right around the same

9    time that we started the ████████████.  So it

10   would have been ████ time frame.                   11:47:20

11       Q.   Were you involved with Intuitive's

12   exploration of an ████████████████████?

13       A.   I was not too involved in that.  At the

14   time that that was being looked at, as I

15   mentioned, I was -- my focus was around launching  11:47:38

16   the ████████████████, which was a huge

17   undertaking.

18           So I know there was some work done by

19   engineering and some other, you know, management

20   to look at alternative options, such as an         11:47:52

21   ████████████.

22       Q.   Do you know who in engineering was working

23   on the ████████████████████████████

24   ████████?

25       A.   I know Matt Wixey looked at it, did some   11:48:03

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

Page 88

1      Q.   And do you know what SOLIDWORKS files are?

2      A.   They're CAD files.

3      Q.   And do you know if any SOLIDWORKS files

4   were collected?  Whether you collected them or

5   someone else, are you sure -- are you aware        12:33:20

6   whether anybody collected any SOLIDWORKS files?

7      A.   I don't know.

8      Q.   Did Intuitive ever create these SOLIDWORKS

9   models of a hypothetical ████████████████?

10          MR. RUECKHEIM:  Object to the form.        12:33:37

11          THE WITNESS:  I don't know exactly what

12   was created with respect to that -- that design.

13   BY MR. MILCH:

14      Q.   And what phase of development at Intuitive

15   do you typically create SOLIDWORKS files?          12:33:51

16          MR. RUECKHEIM:  Object to the form.

17          THE WITNESS:  ███████████████████

18   █████ █████████████████████████████

19   ████████████████

20   BY MR. MILCH:                                      12:34:12

21      Q.   Do you know if there are any SOLIDWORKS

22   files created for the SureForm 60 product?

23      A.   ████████████████

24      Q.   Do you know if those were -- strike that.

25          So I -- if you go back into Exhibit         12:34:26

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

Page 102

1    on?

2        A.    Just the -- the number of people involved

3    and potentially the duration.

4        Q.    Is there anything else that's not listed

5    in this second supplemental response to                  12:54:11

6    Interrogatory 4 that would have been considered in

7    designing the ████████████████████████████?

8            MR. RUECKHEIM:  Object to the form.

9            THE WITNESS:  I'm not aware of anything.

10   BY MR. MILCH:                                             12:54:29

11       Q.    So earlier you said that the ████████████

12   ███████████████████████████████████████████

13   ███████████████; is that correct?

14           MR. RUECKHEIM:  Object to the form.

15           THE WITNESS:  Yes, it -- it would require   12:54:52

16   a ████████████████████████.

17   BY MR. MILCH:

18       Q.    Would there be costs associated with

19   designing and releasing ███████████  to work with

20   the ██████████████████████████?                          12:55:08

21       A.    Yes, there would be.

22       Q.    Any sense of what that cost would be?

23       A.    I believe those are actually included in

24   this -- these estimates here.  I don't know the

25   breakdown.                                                12:55:27

# EXHIBIT 11

# EXH. 7

HIGHLY CONFIDENTIAL ATTORNEY'S EYES ONLY

```
                                              Page 1

 1            IN THE UNITED STATES DISTRICT COURT

 2              FOR THE DISTRICT OF DELAWARE

 3     - - - - - - - - - - - - - - - - - x

 4       REX MEDICAL, L.P.              :

                                        :

 5          Plaintiff                   :

                                        :

 6         v.                           : Case No.

                                        :

 7       INTUITIVE SURGICAL, INC.,      : 19-cv-5-MN

         INTUITIVE SURGICAL             :

 8       OPERATIONS, INC., and          :

         INTUITIVE SURGICAL             :

 9       HOLDINGS, LLC                  :

                                        :

10          Defendants                  :

11     - - - - - - - - - - - - - - - - - x

12

                             - - -

13

                    Thursday, October 10, 2021

14

                             - - -

15

16                   Highly Confidential

17                   Attorneys' Eyes Only

18

19     REMOTE ZOOM videotaped deposition of MATT WIXEY

20     beginning at 10:03 a.m. EST, before Christina S.

21     Hotsko, RPR, CRR, when were present on behalf of

22     the respective parties:
```

HIGHLY CONFIDENTIAL ATTORNEY'S EYES ONLY

Page 106

1      Q.  How would -- strike that.

2          So you identified a bunch of documents to

3      be potentially produced in connection with this

4      litigation, correct?

5      A.  Correct.

6      Q.  And presumably some or all of those

7      documents were produced, and I understand that you

8      don't know what was produced.

9          How would somebody, just looking at a

10     collection of documents, be able to identify what

11     the commercial version of the particular component

12     was?

13     A.  Someone looking at physical documents?

14     Q.  Looking at the documents as we're looking

15     at them today.

16     A.  I don't think you can do that from

17     looking at the documents today.  You would need

18     access to -- you would need to know the current

19     BOM structure.

20     Q.  And do you know if that was identified to

21     be produced in this litigation?

22     A.  I don't know for certain, but I did

HIGHLY CONFIDENTIAL ATTORNEY'S EYES ONLY

Page 111

1       Q.   Have you seen this document before?

2       A.   Yes.

3       Q.   And what is this document?

4       A.   This is a drawing for an anvil for

5    60-millimeter SureForm.

6       Q.   Okay.  And is there any way for you to

7    tell, looking at this document, whether this is

8    the version that was included in the commercial

9    product of the SureForm 60?

10      A.   I think that this is not the version

11   because I don't see the artwork on it.

12      Q.   And what do you mean by the artwork?

13      A.   There would have been some branding on

14   the top of the anvil.

15      Q.   Oh, I see.  So are you looking at page 2

16   of the document, which is Bates --

17      A.   Correct.

18      Q.   -- 4325?

19      A.   Page 2.

20      Q.   And you're looking at the figure sort of

21   in the middle of the page on the right-hand side?

22      A.   Correct.

HIGHLY CONFIDENTIAL ATTORNEY'S EYES ONLY

Page 112

1    Q.  So if this had artwork, would that

2    indicate to you that it was the final version?

3    A.  I would still have to go back to look in

4    the Agile system to make sure what's the current

5    version and what was a production version.

6    Q.  So at this point, which is -- the date of

7    this document is ███████████████ -- do you know

8    what additional revisions might have been done to

9    the anvil?  And, you know, maybe if you look at

10   the revision history or notes on page 1, that

11   could help.

12   A.  I mean, I don't know specifically what

13   would have happened between here and production

14   and today.

15   Q.  Would you classify any changes between

16   this document and production as minor changes?

17   A.  I believe they would have been minor if

18   there were changes.

19   Q.  And why do you believe they would be

20   minor?

21   A.  This was a part that ███████████████████

22   ██████████, and I'm pretty certain that it was pretty

# EXHIBIT 12

# EXH. 7

HIGHLY CONFIDENTIAL ATTORNEY'S EYES ONLY

Page 1

1          IN THE UNITED STATES DISTRICT COURT

2             FOR THE DISTRICT OF DELAWARE

3    - - - - - - - - - - - - - - - - x

4      REX MEDICAL, L.P.              :

                                      :

5          Plaintiff                  :

                                      :

6        v.                           : Case No.

                                      :

7      INTUITIVE SURGICAL, INC.,      : 19-cv-5-MN

       INTUITIVE SURGICAL             :

8      OPERATIONS, INC., and          :

       INTUITIVE SURGICAL             :

9      HOLDINGS, LLC                  :

                                      :

10         Defendants                 :

11   - - - - - - - - - - - - - - - - x

12

                          - - -

13

                 Thursday, October 10, 2021

14

                          - - -

15

16              Highly Confidential

17              Attorneys' Eyes Only

18

19   REMOTE ZOOM videotaped deposition of MATT WIXEY

20   beginning at 10:03 a.m. EST, before Christina S.

21   Hotsko, RPR, CRR, when were present on behalf of

22   the respective parties:

HIGHLY CONFIDENTIAL ATTORNEY'S EYES ONLY

Page 106

1      Q.  How would -- strike that.

2          So you identified a bunch of documents to

3  be potentially produced in connection with this

4  litigation, correct?

5      A.  Correct.

6      Q.  And presumably some or all of those

7  documents were produced, and I understand that you

8  don't know what was produced.

9          How would somebody, just looking at a

10  collection of documents, be able to identify what

11  the commercial version of the particular component

12  was?

13      A.  Someone looking at physical documents?

14      Q.  Looking at the documents as we're looking

15  at them today.

16      A.  I don't think you can do that from

17  looking at the documents today.  You would need

18  access to -- you would need to know the current

19  BOM structure.

20      Q.  And do you know if that was identified to

21  be produced in this litigation?

22      A.  I don't know for certain, but I did

HIGHLY CONFIDENTIAL ATTORNEY'S EYES ONLY

Page 111

1          Q.   Have you seen this document before?

2          A.   Yes.

3          Q.   And what is this document?

4          A.   This is a drawing for an anvil for

5     60-millimeter SureForm.

6          Q.   Okay.  And is there any way for you to

7     tell, looking at this document, whether this is

8     the version that was included in the commercial

9     product of the SureForm 60?

10         A.   I think that this is not the version

11    because I don't see the artwork on it.

12         Q.   And what do you mean by the artwork?

13         A.   There would have been some branding on

14    the top of the anvil.

15         Q.   Oh, I see.  So are you looking at page 2

16    of the document, which is Bates --

17         A.   Correct.

18         Q.   -- 4325?

19         A.   Page 2.

20         Q.   And you're looking at the figure sort of

21    in the middle of the page on the right-hand side?

22         A.   Correct.

HIGHLY CONFIDENTIAL ATTORNEY'S EYES ONLY

Page 112

1     Q.  So if this had artwork, would that

2  indicate to you that it was the final version?

3     A.  I would still have to go back to look in

4  the Agile system to make sure what's the current

5  version and what was a production version.

6     Q.  So at this point, which is -- the date of

7  this document is ███████████████ -- do you know

8  what additional revisions might have been done to

9  the anvil?  And, you know, maybe if you look at

10  the revision history or notes on page 1, that

11  could help.

12     A.  I mean, I don't know specifically what

13  would have happened between here and production

14  and today.

15     Q.  Would you classify any changes between

16  this document and production as minor changes?

17     A.  I believe they would have been minor if

18  there were changes.

19     Q.  And why do you believe they would be

20  minor?

21     A.  This was a part that ██████████████████

22  ██████, and I'm pretty certain that it was pretty

EXHIBIT 13

# Exhibit G

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| REX MEDICAL, L.P., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | C.A. No. 19-cv-5-MN |
| INTUITIVE SURGICAL, INC., INTUITIVE | ) | |
| SURGICAL OPERATIONS, INC. and | ) | |
| INTUITIVE SURGICAL HOLDINGS, LLC, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**DEFENDANTS' SUPPLEMENTAL RESPONSES TO REX MEDICAL, L.P.'S
SECOND SET OF INTERROGATORIES**

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure and the applicable Local Rules of the United States District Court for the District of Delaware, Intuitive Surgical, Inc., Intuitive Surgical Operations, Inc., and Intuitive Surgical Holdings, LLC (collectively, "Defendants" or "Intuitive"), by and through their attorneys, hereby object and respond to Plaintiff Rex Medical, L.P.'s ("Plaintiff" or "Rex Medical") Second Set of Interrogatories ("Interrogatories").

**PRELIMINARY STATEMENT**

Intuitive has not completed its investigation of the facts related to this case at this early stage of discovery. The following responses are based upon information presently available to Intuitive, and found within Intuitive's possession, custody, or control, after a reasonable search. Intuitive reserves the right to amend, supplement, or otherwise alter its responses to these Interrogatories.

**FIRST SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 12:**

Subject to and without waiving the foregoing objections, to the extent that Intuitive

understands this Interrogatory, Intuitive responds as follows:

Intuitive stipulates that, to the best of Intuitive's present knowledge and based on Rex

Medical's infringement contentions, ████████████████████████████████████████

are representative for purposes of the infringement and noninfringement issues in this case.  The

components listed on the sample products (INTUITIVE-PHYSICAL001 and INTUITIVE-

PHYSICAL002) are thus representative of all accused devices for purposes of this litigation.

**INTERROGATORY NO. 13:**

Separately for each of the Accused Products, describe in detail any and all uses and/or
benefits provided by the I-beam, including any impacts the I-beam has on the features and
functionalities of the Accused Products, including, without limitation, the I-beam's impact on
staple formation and staple line, the I-beam's contribution to the SmartClamp feature, and the I-
beam's contribution to the SmartFire feature. Your answer should reference by Bates number
specific documents relied upon in formulating Your response.

**RESPONSE TO INTERROGATORY NO. 13:**

Intuitive objects to this Interrogatory to the extent that it requests information not relevant to

any party's claim or defenses and is disproportional to the needs of the case.

Intuitive objects to this Interrogatory to the extent it seeks information that is not within

Intuitive's possession, custody, or control, or that is within the custody or control of a third party.

Intuitive objects to the phrases "describe in detail," "any and all uses and/or benefits," "any

impacts," "impact" and "contribution" as overbroad, vague and subject to multiple interpretations.

Intuitive objects to the interrogatory as compound and containing multiple discrete

subparts.  Federal Rule of Civil Procedure 33 sets a limit of "25 written interrogatories including

all discrete subparts."  *See also* D.I. 21 ("A maximum of 25 interrogatories, including contention

interrogatories, are permitted for each side.").   When the multiple discrete subparts of this

# EXHIBIT 14

# Exhibit G

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| REX MEDICAL, L.P., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| INTUITIVE SURGICAL, INC., INTUITIVE | ) | C.A. No. 19-cv-5-MN |
| SURGICAL OPERATIONS, INC. and | ) | |
| INTUITIVE SURGICAL HOLDINGS, LLC, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**DEFENDANTS' SUPPLEMENTAL RESPONSES TO REX MEDICAL, L.P.'S
SECOND SET OF INTERROGATORIES**

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure and the applicable Local Rules of the United States District Court for the District of Delaware, Intuitive Surgical, Inc., Intuitive Surgical Operations, Inc., and Intuitive Surgical Holdings, LLC (collectively, "Defendants" or "Intuitive"), by and through their attorneys, hereby object and respond to Plaintiff Rex Medical, L.P.'s ("Plaintiff" or "Rex Medical") Second Set of Interrogatories ("Interrogatories").

## PRELIMINARY STATEMENT

Intuitive has not completed its investigation of the facts related to this case at this early stage of discovery. The following responses are based upon information presently available to Intuitive, and found within Intuitive's possession, custody, or control, after a reasonable search. Intuitive reserves the right to amend, supplement, or otherwise alter its responses to these Interrogatories.

**FIRST SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 12:**

Subject to and without waiving the foregoing objections, to the extent that Intuitive understands this Interrogatory, Intuitive responds as follows:

Intuitive stipulates that, to the best of Intuitive's present knowledge and based on Rex Medical's infringement contentions, ███████████████████████████ are representative for purposes of the infringement and noninfringement issues in this case. The components listed on the sample products (INTUITIVE-PHYSICAL001 and INTUITIVE-PHYSICAL002) are thus representative of all accused devices for purposes of this litigation.

**INTERROGATORY NO. 13:**

Separately for each of the Accused Products, describe in detail any and all uses and/or benefits provided by the I-beam, including any impacts the I-beam has on the features and functionalities of the Accused Products, including, without limitation, the I-beam's impact on staple formation and staple line, the I-beam's contribution to the SmartClamp feature, and the I-beam's contribution to the SmartFire feature. Your answer should reference by Bates number specific documents relied upon in formulating Your response.

**RESPONSE TO INTERROGATORY NO. 13:**

Intuitive objects to this Interrogatory to the extent that it requests information not relevant to any party's claim or defenses and is disproportional to the needs of the case.

Intuitive objects to this Interrogatory to the extent it seeks information that is not within Intuitive's possession, custody, or control, or that is within the custody or control of a third party.

Intuitive objects to the phrases "describe in detail," "any and all uses and/or benefits," "any impacts," "impact" and "contribution" as overbroad, vague and subject to multiple interpretations.

Intuitive objects to the interrogatory as compound and containing multiple discrete subparts. Federal Rule of Civil Procedure 33 sets a limit of "25 written interrogatories including all discrete subparts." *See also* D.I. 21 ("A maximum of 25 interrogatories, including contention interrogatories, are permitted for each side."). When the multiple discrete subparts of this

# EXHIBIT 15

# Exhibit I

CONFIDENTIAL VERSION

# UNITED STATES INTERNATIONAL TRADE COMMISSION
### Washington, D.C.

In the Matter of

**CERTAIN LAPAROSCOPIC SURGICAL STAPLERS, RELOAD CARTRIDGES, AND COMPONENTS THEREOF**

Investigation No. 337-TA-1167

## COMMISSION OPINION

### CONTENTS



CONFIDENTIAL VERSION



**CERTAIN LAPAROSCOPIC SURGICAL STAPLERS,**                    Inv. No. 337-TA-1167
**RELOAD CARTRIDGES, AND COMPONENTS THEREOF**

## CONFIDENTIAL CERTIFICATE OF SERVICE

I, Lisa R. Barton, hereby certify that the attached **OPINION, COMMISSION** has been served upon the following parties as indicated, on **October 15, 2021.**

Lisa R. Barton, Secretary
U.S. International Trade Commission
500 E Street, SW, Room 112
Washington, DC  20436

**On Behalf of Complainants Ethicon LLC, Ethicon Endo-Surgery,**
**Inc., and Ethicon US, LLC:**

| | |
|---|---|
| Anish R. Desai, Esq. | ☐ Via Hand Delivery |
| **WEIL, GOTSHAL & MANGES LLP** | ☐ Via Express Delivery |
| 765 5th Avenue | ☐ Via First Class Mail |
| New York, NY 10153 | ☒ Other: Email Notification of |
| Email: anish.desai@weil.com | Availability for Download |

**On Behalf of Respondents Intuitive Surgical Inc., Intuitive Surgical**
**Operations, Inc., Intuitive Surgical Holdings, LLC, and Intuitive**
**Surgical S.DE R.L. DE C.V:**

| | |
|---|---|
| Richard A. Sterba, Esq. | ☐ Via Hand Delivery |
| **FISH & RICHARDSON P.C.** | ☐ Via Express Delivery |
| 1000 Maine Avenue, SW,  1000 | ☐ Via First Class Mail |
| Washington, D.C. 20024 | ☒ Other: Email Notification of |
| Email: sterba@fr.com | Availability for Download |

# EXHIBIT 16

# Exhibit I

**CONFIDENTIAL VERSION**

**UNITED STATES INTERNATIONAL TRADE COMMISSION**
**Washington, D.C.**

In the Matter of

**CERTAIN LAPAROSCOPIC SURGICAL STAPLERS, RELOAD CARTRIDGES, AND COMPONENTS THEREOF**

**Investigation No. 337-TA-1167**

**COMMISSION OPINION**

CONTENTS



**CONFIDENTIAL VERSION**



**CERTAIN LAPAROSCOPIC SURGICAL STAPLERS,**                    Inv. No. 337-TA-1167
**RELOAD CARTRIDGES, AND COMPONENTS THEREOF**

## CONFIDENTIAL CERTIFICATE OF SERVICE

I, Lisa R. Barton, hereby certify that the attached **OPINION, COMMISSION** has been served upon the following parties as indicated, on **October 15, 2021.**

Lisa R. Barton, Secretary
U.S. International Trade Commission
500 E Street, SW, Room 112
Washington, DC 20436

**On Behalf of Complainants Ethicon LLC, Ethicon Endo-Surgery, Inc., and Ethicon US, LLC:**

Anish R. Desai, Esq.                              ☐ Via Hand Delivery
**WEIL, GOTSHAL & MANGES LLP**      ☐ Via Express Delivery
765 5th Avenue                                      ☐ Via First Class Mail
New York, NY 10153                             ☒ Other: Email Notification of
Email: anish.desai@weil.com               Availability for Download

**On Behalf of Respondents Intuitive Surgical Inc., Intuitive Surgical Operations, Inc., Intuitive Surgical Holdings, LLC, and Intuitive Surgical S.DE R.L. DE C.V:**

Richard A. Sterba, Esq.                         ☐ Via Hand Delivery
**FISH & RICHARDSON P.C.**              ☐ Via Express Delivery
1000 Maine Avenue, SW, 1000             ☐ Via First Class Mail
Washington, D.C. 20024                        ☒ Other: Email Notification of
Email: sterba@fr.com                             Availability for Download

# EXHIBIT 17

# Exhibit J

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| REX MEDICAL, L.P., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | C.A. No. 19-cv-5-MN |
| INTUITIVE SURGICAL, INC., INTUITIVE | ) | |
| SURGICAL OPERATIONS, INC. and | ) | |
| INTUITIVE SURGICAL HOLDINGS, LLC, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## DEFENDANTS' SUPPLEMENTAL RESPONSES TO
## PLAINTIFF REX MEDICAL. L.P.'S FIRST SET OF INTERROGATORIES

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure and the applicable Local Rules of the United States District Court for the District of Delaware, Intuitive Surgical, Inc., Intuitive Surgical Operations, Inc., and Intuitive Surgical Holdings, LLC (collectively, "Defendants" or "Intuitive"), by and through their attorneys, hereby object and respond to Plaintiff Rex Medical, L.P.'s ("Plaintiff" or "Rex Medical") First Set of Interrogatories ("Interrogatories").

## PRELIMINARY STATEMENT

Intuitive has not completed its investigation of the facts related to this case at this early stage of discovery. The following responses are based upon information presently available to Intuitive, and found within Intuitive's possession, custody, or control, after a reasonable search. Intuitive reserves the right to amend, supplement, or otherwise alter its responses to these Interrogatories.

## GENERAL OBJECTIONS

The following General Objections are incorporated into each individual response as if they were fully set forth therein, and are in addition to any Specific Objections.

## SECOND SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 4:

Subject to and without waiving the foregoing General and Specific Objections, to the extent that Intuitive understands this Interrogatory, Intuitive responds as follows: Intuitive incorporates the testimony of its 30(b)(6) corporate witness Matt Wixey. Intuitive further responds that the International Trade Commission has determined that ███████████████ ███████████████████████████████████████ *See* Investigation no. 337-TA-1167 October 15, 2021 Commission Opinion at 77-79. Intuitive also estimates that it would have been ████████████████████████████████ than it was to develop the SureForm 60 design, and would include an ████████████████████████████████████ ████████████████████████████████████.

Intuitive further responds that the commercial version of the Accused SureForm products do not infringe and are therefore non-infringing alternatives to the asserted claims. Many other non-infringing alternatives exist including designs, like Intuitive's Accused SureForm products, that do not have "staple carrying portion of the first jaw defining slots through which staples are configured to pass" and instead have a reload channel that does not include staples or any other alternative mechanism for example as shown in the prior art; do not include "at least one of a gear and a cable operatively coupled to at least one of" a first jaw and second jaw, and instead use a design that moves an alleged I-beam through a drive rod coil design and a SmartFire algorithm or any other alternative mechanism for example as shown in the prior art; do not include a beam to maintain "alignment" of the alleged jaws, and instead use a structural stiffness in the design to maintain alignment or any other alternative mechanism for example as shown in the prior art; do not include "an upper portion and a lower portion … configured to cause the staple pusher to move a staple as the beam moves from a proximal location to a distal location, the upper portion and the

lower portion configured to cooperatively engage the first jaw and the second jaw to align the slots with a staple forming portion on the anvil surface" and instead use a central portion of the alleged I-beam to abut a shuttle that contacts staple pushers or any other alternative mechanism for example as shown in the prior art; and do not include a "cutting blade" on the alleged I-beam and instead use a separate knife or any other alternative mechanism for example as shown in the prior art. Intuitive estimates that the design costs for these alternatives are already included in its Accused SureForm design or would be de minimis. Intuitive further responds that because this Interrogatory calls for expert analysis, Intuitive anticipates submitting an expert report on this topic pursuant to the Court's Scheduling Order.

## INTERROGATORY NO. 5

Describe in detail all facts that support or contradict Your damages analysis in the Present Litigation, including all facts relating to a reasonable royalty, including identification of all documents or other evidence that relate to any Georgia-Pacific factor (*see Georgia-Pacific Corp. v. United States Plywood Corp.*, 318 F. Supp. 1116, 1119-20 (S.D.N.Y. 1970)), or relating to lost profits of any kind.

## RESPONSE TO INTERROGATORY NO. 5

Intuitive objects to this Interrogatory to the extent that it requests information not relevant to any party's claim or defenses and is disproportional to the needs of the case.

Intuitive objects to this Interrogatory to the extent that it seeks information or documents protected by the attorney-client privilege, the attorney work product doctrine, and/or other applicable privileges.

Intuitive objects to this Interrogatory to the extent that it requests premature disclosure of information that is properly the subject of expert discovery.

Intuitive objects to this Interrogatory as overbroad, irrelevant, and directed to waived subject matter to the extent it seeks information to support a damages model based in any part on a claim for "lost profits." Pursuant to the Court's Scheduling Order of May 20, 2019, Plaintiff was

# EXHIBIT 18

# Exhibit J

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| REX MEDICAL, L.P., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | C.A. No. 19-cv-5-MN |
| INTUITIVE SURGICAL, INC., INTUITIVE | ) | |
| SURGICAL OPERATIONS, INC. and | ) | |
| INTUITIVE SURGICAL HOLDINGS, LLC, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## DEFENDANTS' SUPPLEMENTAL RESPONSES TO
## PLAINTIFF REX MEDICAL. L.P.'S FIRST SET OF INTERROGATORIES

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure and the applicable Local Rules of the United States District Court for the District of Delaware, Intuitive Surgical, Inc., Intuitive Surgical Operations, Inc., and Intuitive Surgical Holdings, LLC (collectively, "Defendants" or "Intuitive"), by and through their attorneys, hereby object and respond to Plaintiff Rex Medical, L.P.'s ("Plaintiff" or "Rex Medical") First Set of Interrogatories ("Interrogatories").

## PRELIMINARY STATEMENT

Intuitive has not completed its investigation of the facts related to this case at this early stage of discovery. The following responses are based upon information presently available to Intuitive, and found within Intuitive's possession, custody, or control, after a reasonable search. Intuitive reserves the right to amend, supplement, or otherwise alter its responses to these Interrogatories.

## GENERAL OBJECTIONS

The following General Objections are incorporated into each individual response as if they were fully set forth therein, and are in addition to any Specific Objections.

**SECOND SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 4:**

Subject to and without waiving the foregoing General and Specific Objections, to the extent that Intuitive understands this Interrogatory, Intuitive responds as follows: Intuitive incorporates the testimony of its 30(b)(6) corporate witness Matt Wixey. Intuitive further responds that the International Trade Commission has determined that ███████████████ ███████████████████████████████████████████ *See* Investigation no. 337-TA-1167 October 15, 2021 Commission Opinion at 77-79. Intuitive also estimates that it would have been ████████████████████████████████ than it was to develop the SureForm 60 design, and would include an ██████████████████████████████████ ███████████████████████████████████████████.

Intuitive further responds that the commercial version of the Accused SureForm products do not infringe and are therefore non-infringing alternatives to the asserted claims. Many other non-infringing alternatives exist including designs, like Intuitive's Accused SureForm products, that do not have "staple carrying portion of the first jaw defining slots through which staples are configured to pass" and instead have a reload channel that does not include staples or any other alternative mechanism for example as shown in the prior art; do not include "at least one of a gear and a cable operatively coupled to at least one of" a first jaw and second jaw, and instead use a design that moves an alleged I-beam through a drive rod coil design and a SmartFire algorithm or any other alternative mechanism for example as shown in the prior art; do not include a beam to maintain "alignment" of the alleged jaws, and instead use a structural stiffness in the design to maintain alignment or any other alternative mechanism for example as shown in the prior art; do not include "an upper portion and a lower portion … configured to cause the staple pusher to move a staple as the beam moves from a proximal location to a distal location, the upper portion and the

lower portion configured to cooperatively engage the first jaw and the second jaw to align the slots with a staple forming portion on the anvil surface" and instead use a central portion of the alleged I-beam to abut a shuttle that contacts staple pushers or any other alternative mechanism for example as shown in the prior art; and do not include a "cutting blade" on the alleged I-beam and instead use a separate knife or any other alternative mechanism for example as shown in the prior art.  Intuitive estimates that the design costs for these alternatives are already included in its Accused SureForm design or would be de minimis.  Intuitive further responds that because this Interrogatory calls for expert analysis, Intuitive anticipates submitting an expert report on this topic pursuant to the Court's Scheduling Order.

**INTERROGATORY NO. 5**

      Describe in detail all facts that support or contradict Your damages analysis in the Present Litigation, including all facts relating to a reasonable royalty, including identification of all documents or other evidence that relate to any Georgia-Pacific factor (*see Georgia-Pacific Corp. v. United States Plywood Corp.*, 318 F. Supp. 1116, 1119-20 (S.D.N.Y. 1970)), or relating to lost profits of any kind.

**RESPONSE TO INTERROGATORY NO. 5**

      Intuitive objects to this Interrogatory to the extent that it requests information not relevant to any party's claim or defenses and is disproportional to the needs of the case.

      Intuitive objects to this Interrogatory to the extent that it seeks information or documents protected by the attorney-client privilege, the attorney work product doctrine, and/or other applicable privileges.

      Intuitive objects to this Interrogatory to the extent that it requests premature disclosure of information that is properly the subject of expert discovery.

      Intuitive objects to this Interrogatory as overbroad, irrelevant, and directed to waived subject matter to the extent it seeks information to support a damages model based in any part on a claim for "lost profits."  Pursuant to the Court's Scheduling Order of May 20, 2019, Plaintiff was

13

# EXHIBIT 19

# Exhibit K



Deposition of:
# Don Wilson

*November 17, 2021*

In the Matter of:

# Rex Medical, L.P. v Intuitive Surgical, Inc.

Veritext Legal Solutions
800-734-5292 | calendar-dmv@veritext.com |

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

Page 1

1          IN THE UNITED STATES DISTRICT COURT

2             FOR THE DISTRICT OF DELAWARE

3

4    REX MEDICAL, L.P.,                 )
                                        )
5             Plaintiff,                )
                                        )
6             vs.                       ) C.A. No. 19-cv-5-MN
                                        )
7    INTUITIVE SURGICAL, INC.,          )
     INTUITIVE SURGICAL OPERATIONS,     )
8    INC. And INTUITIVE SURGICAL        )
     HOLDINGS, LLC,                     )
9                                       )
              Defendants.               )
10   _____   )

11

12       HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

13         VIRTUAL VIDEOCONFERENCE VIDEO-RECORDED

14              DEPOSITION OF DON WILSON

15

16            Wednesday, November 17, 2021

17     Remotely Testifying from Sunnyvale, California

18

19

20

21

22

23    Reported By:

24    Hanna Kim, CLR, CSR No. 13083

25    Job No. 4893671

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

Page 6

1          Remotely Testifying from Sunnyvale, California

2          Wednesday, November 17, 2021; 10:08 a.m., PST

3                          --oOo--

4              THE VIDEOGRAPHER:  Good morning.  We're on

5      the record at 10:07 a.m. on November 17th, 2021.      10:08:00

6              This is the video-recorded deposition of

7      Don Wilson, Jr.

8              My name is Jefree Anderson, here with our

9      court reporter, Hanna Kim.

10             We're here from Veritext Legal Solutions      10:08:18

11     at the request of counsel for defendant.

12             This deposition is being held as a remote

13     proceeding using Zoom.

14             The caption of this case is Rex Medical,

15     L.P., versus Intuitive Surgical, Inc.                10:08:25

16             Case Number:  19005 MN.

17             Please note that the microphones may pick

18     up background noise, private conversations, and

19     interference if unmuted.

20             When muted, remember to unmute to speak on    10:08:46

21     the record.

22             Audio and video recording will continue to

23     take place unless all parties agree to go off the

24     record.

25             Beginning with the noticing attorney,        10:08:51

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

Page 14

```
 1              (Wilson Deposition Exhibit PX-0059 was

 2              marked.)

 3      BY MR. MILCH:

 4         Q.   And I don't think you have to download

 5      this one.  I just want to ask one or two          10:16:33

 6      questions.

 7         A.   Okay.

 8              I have it open.

 9         Q.   Have you seen this document before?

10         A.   Yes.                                       10:16:43

11         Q.   And so are you aware that you're here

12      testifying in connection with this deposition

13      notice?

14         A.   Yes, I'm aware of that.

15         Q.   Okay.  And you're prepared to testify     10:17:03

16      regarding the -- if you look at the third line,

17      regarding non-infringing alternatives and the Endo

18      GIA?

19              MR. RUECKHEIM:  Object to the form.

20              THE WITNESS:  Can you repeat the question, 10:17:19

21      please.

22      BY MR. MILCH:

23         Q.   Are -- are you prepared to testify

24      regarding non-infringing alternatives and the Endo

25      GIA?                                              10:17:29
```

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

```
                                                        Page 15
 1              MR. RUECKHEIM:  Same objection.

 2              THE WITNESS:  Yes.

 3     BY MR. MILCH:

 4         Q.   Okay.  You can close that document or go

 5     back.  If you just hit the back arrow on the top     10:17:42

 6     left, it will bring you back to the -- the menu.

 7         A.   Okay.

 8         Q.   And if you could then open what's been

 9     marked as PX-0060.

10              (Wilson Deposition Exhibit PX-0060 was      10:17:58

11              marked.)

12         A.   Okay.  The document is open.

13     BY MR. MILCH:

14         Q.   And have you seen this document before in

15     this form?                                          10:18:05

16         A.   No, I have not.

17         Q.   Okay.  Do you have a sense of what this

18     document represents?

19         A.   Yes, I do.

20         Q.   And what is that?                           10:18:18

21         A.   Okay.  It appears to be content from my

22     LinkedIn page.

23         Q.   And does this content accurately represent

24     your employment history?  And take as much time as

25     you need to review it.  And we -- we'll go           10:18:46
```

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

Page 70

1    goods"?

2        A.   Yes.

3        Q.   And what is "cost of goods"?

4        A.   Basically the cost of the components that

5    it takes to build a product.                      11:52:39

6        Q.   So the -- would the cost of goods for the

7    ███████████████████████  be higher or lower

8    than the cost of goods for the SureForm 60

9    stapler?

10       A.   It would be higher.                       11:52:54

11       Q.   And why would it have been higher?

12       A.   ████████████████████████

13   ████████████████████████████████████████████

14   ███████████████████████████████████████████

15   ████████████████████████████████            11:53:13

16       Q.   Is that the only reason?

17       A.   That and -- yeah.  No, I think that's it,

18   actually.

19       Q.   Did Intuitive ever consider making the

20   ████████████████████████████?                 11:53:39

21       A.   I don't know.

22       Q.   Do you know why Intuitive didn't make the

23   ████████████████████████████?

24       A.   I assume it would be related to cost, the

25   cost of goods sold.                              11:54:02

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

                                                        Page 81

1     load of the tissue at one time.

2          Q.   What about the -- the channel of the

3     ██████████  versus the channel of the SureForm, are

4     the thicknesses the same or different?

5          A.   I mean, they -- they have variable wall      12:22:14

6     thicknesses.  But in general, the ██████████████████

7     ████████████████████.

8          Q.   And why is that?

9          A.   To maintain stiffness.

10         Q.   Do the thicker components make the           12:22:35

11    ████████████████████  versus the SureForm, or is that

12    not part of ██████████████████

13              MR. RUECKHEIM:  Object to the form.

14              THE WITNESS:  To be -- no, I'd -- I'd say

15    it's not related.                                      12:22:59

16    BY MR. MILCH:

17         Q.   Do you know if there are more components

18    in the ██████████ or the SureForm in the distal

19    end?

20         A.   I don't.                                     12:23:17

21         Q.   Did you assist counsel in collecting

22    documents in connection with this case?

23         A.   Collecting documents, no.  No -- well,

24    I -- I put together the cost estimate that I

25    referred to earlier.                                   12:23:47

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

Page 82

1       Q.   And did --

2       A.   Those --

3       Q.   I'm sorry.

4       A.   I'm sorry, that was the extent of it that

5   I recall.                                          12:23:55

6       Q.   And do you remember when you put together

7   the cost estimate?

8       A.   I don't know the exact date.  I believe it

9   was in the ████████████████

10      Q.   And just so I'm clear, when you're         12:24:08

11  referring to the cost estimate, what are you

12  referring to?

13      A.   Yes, the cost estimate of what would be

14  required to develop ███████████████

15      Q.   And you hadn't previ- -- previously done   12:24:23

16  that analysis ████████████████

17      A.   I did not, no.

18      Q.   So if you go back into Exhibit Share, I've

19  marked a couple more documents.  If you could look

20  at -- if you could pull up PX-0063.                12:24:55

21          (Wilson Deposition Exhibit PX-0063 was

22          marked.)

23          THE WITNESS:  3.  Okay.

24  BY MR. MILCH:

25      Q.   And --                                     12:25:03

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

Page 109

1      Q.   Are you being paid by Intuitive as an

2   expert in this case to testify or provide an

3   expert opinion?

4      A.   Not that I'm aware of.

5      Q.   Do you know the -- the shaft diameter of      01:03:39

6   Covidien's minimally invasive surgical staplers?

7      A.   I don't know the exact diameter.  I -- I

8   believe it's roughly 12 millimeters.

9      Q.   And is that the same as the SureForm 60?

10      A.   SureForm is -- is larger than that.         01:04:05

11      Q.   Are you familiar with ETHICON's ECHELON

12   surgical stapling product?

13      A.   Yes.

14      Q.   And do you know the shaft diameter of

15   ETHICON's ECHELON product?                          01:04:25

16      A.   I don't know the exact diameter; but,

17   again, they're referred to as 12-millimeter shaft

18   diameters.

19           MR. MILCH:  I have no further questions.

20   I pass the witness.                                 01:04:40

21           MR. RUECKHEIM:  No questions here.

22           We can go off the record.

23           THE VIDEOGRAPHER:  This marks the end of

24   the deposition of Don Wilson, Jr.

25           We're going off the record.  The time is    01:04:52

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

Page 110

1      1:04 p.m.

2               (Proceedings concluded, 1:04 p.m., PST,

3      November 17, 2021.)

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

# EXHIBIT 20

# Exhibit K



Deposition of:
# Don Wilson

*November 17, 2021*

In the Matter of:

# Rex Medical, L.P. v Intuitive Surgical, Inc.

Veritext Legal Solutions
800-734-5292 | calendar-dmv@veritext.com |

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

Page 1

```
 1            IN THE UNITED STATES DISTRICT COURT
 2               FOR THE DISTRICT OF DELAWARE
 3
 4     REX MEDICAL, L.P.,              )
                                       )
 5            Plaintiff,               )
                                       )
 6            vs.                      ) C.A. No. 19-cv-5-MN
                                       )
 7     INTUITIVE SURGICAL, INC.,       )
       INTUITIVE SURGICAL OPERATIONS,  )
 8     INC. And INTUITIVE SURGICAL     )
       HOLDINGS, LLC,                  )
 9                                     )
              Defendants.              )
10     _____ )
11
12        HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY
13          VIRTUAL VIDEOCONFERENCE VIDEO-RECORDED
14               DEPOSITION OF DON WILSON
15
16             Wednesday, November 17, 2021
17      Remotely Testifying from Sunnyvale, California
18
19
20
21
22
23     Reported By:
24     Hanna Kim, CLR, CSR No. 13083
25     Job No. 4893671
```

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

                                                          Page 6

 1        Remotely Testifying from Sunnyvale, California

 2        Wednesday, November 17, 2021; 10:08 a.m., PST

 3                         --o0o--

 4             THE VIDEOGRAPHER:  Good morning.  We're on

 5    the record at 10:07 a.m. on November 17th, 2021.    10:08:00

 6             This is the video-recorded deposition of

 7    Don Wilson, Jr.

 8             My name is Jefree Anderson, here with our

 9    court reporter, Hanna Kim.

10             We're here from Veritext Legal Solutions    10:08:18

11    at the request of counsel for defendant.

12             This deposition is being held as a remote

13    proceeding using Zoom.

14             The caption of this case is Rex Medical,

15    L.P., versus Intuitive Surgical, Inc.                10:08:25

16             Case Number:  19005 MN.

17             Please note that the microphones may pick

18    up background noise, private conversations, and

19    interference if unmuted.

20             When muted, remember to unmute to speak on   10:08:46

21    the record.

22             Audio and video recording will continue to

23    take place unless all parties agree to go off the

24    record.

25             Beginning with the noticing attorney,        10:08:51

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

```
                                                    Page 14
 1              (Wilson Deposition Exhibit PX-0059 was

 2              marked.)

 3      BY MR. MILCH:

 4          Q.   And I don't think you have to download

 5      this one.  I just want to ask one or two        10:16:33

 6      questions.

 7          A.   Okay.

 8               I have it open.

 9          Q.   Have you seen this document before?

10          A.   Yes.                                    10:16:43

11          Q.   And so are you aware that you're here

12      testifying in connection with this deposition

13      notice?

14          A.   Yes, I'm aware of that.

15          Q.   Okay.  And you're prepared to testify   10:17:03

16      regarding the -- if you look at the third line,

17      regarding non-infringing alternatives and the Endo

18      GIA?

19               MR. RUECKHEIM:  Object to the form.

20               THE WITNESS:  Can you repeat the question,  10:17:19

21      please.

22      BY MR. MILCH:

23          Q.   Are -- are you prepared to testify

24      regarding non-infringing alternatives and the Endo

25      GIA?                                             10:17:29
```

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

```
                                                        Page 15

  1              MR. RUECKHEIM:  Same objection.

  2              THE WITNESS:  Yes.

  3      BY MR. MILCH:

  4         Q.   Okay.  You can close that document or go

  5      back.  If you just hit the back arrow on the top     10:17:42

  6      left, it will bring you back to the -- the menu.

  7         A.   Okay.

  8         Q.   And if you could then open what's been

  9      marked as PX-0060.

 10              (Wilson Deposition Exhibit PX-0060 was       10:17:58

 11              marked.)

 12         A.   Okay.  The document is open.

 13      BY MR. MILCH:

 14         Q.   And have you seen this document before in

 15      this form?                                           10:18:05

 16         A.   No, I have not.

 17         Q.   Okay.  Do you have a sense of what this

 18      document represents?

 19         A.   Yes, I do.

 20         Q.   And what is that?                            10:18:18

 21         A.   Okay.  It appears to be content from my

 22      LinkedIn page.

 23         Q.   And does this content accurately represent

 24      your employment history?  And take as much time as

 25      you need to review it.  And we -- we'll go           10:18:46
```

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

```
                                                        Page 70

  1     goods"?

  2          A.    Yes.

  3          Q.    And what is "cost of goods"?

  4          A.    Basically the cost of the components that

  5     it takes to build a product.                    11:52:39

  6          Q.    So the -- would the cost of goods for the

  7     ██████████████████████████████  be higher or lower

  8     than the cost of goods for the SureForm 60

  9     stapler?

 10          A.    It would be higher.                   11:52:54

 11          Q.    And why would it have been higher?

 12          A.    ██████████████████████████████

 13     ██████████████████████████████████████████████

 14     ██████████████████████████████████████████████

 15     ███████████████████████████████████            11:53:13

 16          Q.    Is that the only reason?

 17          A.    That and -- yeah.  No, I think that's it,

 18     actually.

 19          Q.    Did Intuitive ever consider making the

 20     ████████████████████████████████?               11:53:39

 21          A.    I don't know.

 22          Q.    Do you know why Intuitive didn't make the

 23     ████████████████████████████████?

 24          A.    I assume it would be related to cost, the

 25     cost of goods sold.                              11:54:02
```

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

Page 81

1     load of the tissue at one time.

2         Q.   What about the -- the channel of the

3     ███████   versus the channel of the SureForm, are

4     the thicknesses the same or different?

5         A.   I mean, they -- they have variable wall      12:22:14

6     thicknesses.  But in general, the ███████████

7     ███████████.

8         Q.   And why is that?

9         A.   To maintain stiffness.

10        Q.   Do the thicker components make the            12:22:35

11    ███████████████   versus the SureForm, or is that

12    not part of ██████████

13            MR. RUECKHEIM:  Object to the form.

14            THE WITNESS:  To be -- no, I'd -- I'd say

15    it's not related.                                      12:22:59

16    BY MR. MILCH:

17        Q.   Do you know if there are more components

18    in the ██████████ or the SureForm in the distal

19    end?

20        A.   I don't.                                      12:23:17

21        Q.   Did you assist counsel in collecting

22    documents in connection with this case?

23        A.   Collecting documents, no.  No -- well,

24    I -- I put together the cost estimate that I

25    referred to earlier.                                   12:23:47

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

Page 82

1      Q.   And did --

2      A.   Those --

3      Q.   I'm sorry.

4      A.   I'm sorry, that was the extent of it that

5   I recall.                                          12:23:55

6      Q.   And do you remember when you put together

7   the cost estimate?

8      A.   I don't know the exact date.  I believe it

9   was in the █████████████

10     Q.   And just so I'm clear, when you're          12:24:08

11  referring to the cost estimate, what are you

12  referring to?

13     A.   Yes, the cost estimate of what would be

14  required to develop ████████████████

15     Q.   And you hadn't previ- -- previously done    12:24:23

16  that analysis ████████████████

17     A.   I did not, no.

18     Q.   So if you go back into Exhibit Share, I've

19  marked a couple more documents.  If you could look

20  at -- if you could pull up PX-0063.                12:24:55

21          (Wilson Deposition Exhibit PX-0063 was

22          marked.)

23          THE WITNESS:  3.  Okay.

24  BY MR. MILCH:

25     Q.   And --                                     12:25:03

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

Page 109

1      Q.   Are you being paid by Intuitive as an

2   expert in this case to testify or provide an

3   expert opinion?

4      A.   Not that I'm aware of.

5      Q.   Do you know the -- the shaft diameter of      01:03:39

6   Covidien's minimally invasive surgical staplers?

7      A.   I don't know the exact diameter.  I -- I

8   believe it's roughly 12 millimeters.

9      Q.   And is that the same as the SureForm 60?

10     A.   SureForm is -- is larger than that.          01:04:05

11     Q.   Are you familiar with ETHICON's ECHELON

12   surgical stapling product?

13     A.   Yes.

14     Q.   And do you know the shaft diameter of

15   ETHICON's ECHELON product?                          01:04:25

16     A.   I don't know the exact diameter; but,

17   again, they're referred to as 12-millimeter shaft

18   diameters.

19          MR. MILCH:  I have no further questions.

20   I pass the witness.                                 01:04:40

21          MR. RUECKHEIM:  No questions here.

22          We can go off the record.

23          THE VIDEOGRAPHER:  This marks the end of

24   the deposition of Don Wilson, Jr.

25          We're going off the record.  The time is    01:04:52

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

Page 110

1     1:04 p.m.

2              (Proceedings concluded, 1:04 p.m., PST,

3     November 17, 2021.)

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25