IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| REX MEDICAL, L.P., )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>INTUITIVE SURGICAL, INC., INTUITIVE )<br>SURGICAL OPERATIONS, INC. and )<br>INTUITIVE SURGICAL HOLDINGS, LLC, )<br>)<br>Defendants. ) | C.A. No. 19-00005-MN |

## ORDER AFTER PRETRIAL CONFERENCE

At Wilmington, this 13th day of October 2022, after a Pretrial Conference and upon consideration of the: (1) Proposed Pretrial Order (D.I. 211), (2) parties' *Daubert* motions (D.I. 159, 162, 165 & 167) and (3) discussion at the October 5, 2022 Pretrial Conference (D.I. 220), IT IS HEREBY ORDERED that:

1. The Proposed Pretrial Order is ADOPTED as modified by any discussion at the Pretrial Conference. (*See* D.I. 220).

2. A five-day jury trial will begin on October 17, 2022 at 9:30 a.m.[1] with jury selection.[2] Subsequent trial days will begin at 9:00 a.m. Each side should be prepared to present its case until 4:30 p.m. of each trial day, although the end of the trial day may, at the discretion of the Court, be earlier than 4:30 p.m.

---

[1] As discussed at the Pretrial Conference, parties will convene at 8:15 a.m. on October 17, 2022 for Defendants' proffer of testimony regarding the admissibility of the Endo GIA device. (*See* D.I. 220 at 18:11-24).

[2] Plaintiff is responsible for providing enough copies of the *voir dire* and a writing utensil for each member of the jury pool, which is estimated to be forty (40) people. Those must be delivered to the Clerk's office by 12:00 p.m. on October 14, 2022.

3. The trial will be timed. Each side is allowed up to eleven (11) hours in the jury trial for its opening statement, its direct and cross-examination of witnesses, closing arguments, and argument of evidentiary issues. Each side shall reserve one (1) hour of its eleven (11) hours for closing arguments. Time during the trial day that does not neatly fit into one of those categories will be attributed to one side or the other as the Court deems appropriate.

4. There will be thirty minutes to forty-five minutes for lunch and a fifteen-minute break in the morning and in the afternoon each day.

5. Issues that need to be addressed outside the presence of the jury will be taken up at 8:30 a.m., at lunch or at the end of the day. Those issues – including objections to anticipated exhibits or demonstratives – must be brought to the attention of the Court's judicial administrator by 7:00 a.m. on the day on which the evidence objected to will be adduced.

6. Each side may have no more than nine (9) people in the courtroom at any given time. In its discretion and at any time, the Court may modify these limitations or impose additional restrictions to ensure the safety of all persons attending trial.

7. For the reasons stated at the Pretrial Conference, Plaintiff's Motion (D.I. 159) to Preclude Portions of Expert Report of Dr. Robert D. Howe is GRANTED-IN-PART with respect to Dr. Howe's "configured to cause" arguments that conflict with the Court's claim construction and Dr. Howe's reliance on the ITC opinion and DENIED-IN-PART with respect to all other issues[3]; Plaintiff's Motion (D.I. 162) to Preclude Portions of the Damages Expert Report of W. Todd Schoettelkotte is DENIED; Defendants' Motion (D.I. 167) to Preclude Expert Testimony of Albert Juergens, III is DENIED; Defendants' Motion *in Limine* No. 1 (D.I. 211, Ex. 16a) is

---

[3] As stated at the Pretrial Conference, Plaintiff may take the depositions of Mr. Wixey and Mr. Wilson. (*See* D.I. 220 at 36:10-24).

GRANTED-IN-PART with respect to statements made in the course of the Rex Medical/Covidien mediation and DENIED-IN-PART with respect to "Kidder 8," the document produced in the course of litigation; Defendants' Motion *in Limine* No. 2 (D.I. 211, Ex. 17a) is GRANTED-IN-PART with respect to the Akrotome, ODS, JustRight and InTouch agreements[4] and DENIED-IN-PART with respect to the PMI, Cardica and McGuckin/BSC agreements; Defendants' Motion *in Limine* No. 3 (D.I. 211, Ex. 18a) is DENIED as moot; Plaintiff's Motion *in Limine* No. 1 (D.I. 211, Ex. 13a) is DENIED; Plaintiff's Motion *in Limine* No. 2 (D.I. 211, Ex. 14a) is DENIED; and Plaintiff's Motion *in Limine* No. 3 (D.I. 211, Ex. 15a) is GRANTED-IN-PART with respect to the ITC opinion and DENIED-IN-PART with respect to all other portions.  (*See* D.I. 220 at 22:8-89:17).

8. With respect to Plaintiff's Motion *in Limine* No. 3, the parties raised additional issues at the Pretrial Conference regarding Defendants' ability to impeach Dr. McGuckin through cross-examination with other proceedings. (*See* D.I. 220 at 85:23-86:13). The Motion is DENIED.  Under Rule 608(b), a "court may at its discretion permit questioning about specific instances of conduct on cross-examination" if the conduct is "probative of the witness's character for truthfulness or untruthfulness."  *United States v. Williams*, 464 F.3d 443, 448 (3d Cir. 2006) (citing Fed. R. Evid. 608(b)).  As discussed at the Pretrial Conference, Defendants will be required to raise the matter of impeachment with other proceedings with the Court prior to cross-examining Dr. McGuckin with any such evidence. (*See* D.I. 220 at 89:2-9).  At that time, the Court will, at its discretion, determine whether to allow the proceedings in as impeachment under Rule 608(b).

---

[4] As stated at the Pretrial Conference, Plaintiffs may use these four agreements for impeachment purposes.  (*See* D.I. 220 at 78:17-79:3).  To be clear, however, any document that is used for impeachment that is not on the exhibit list will not be admitted into evidence.

9. At the Pretrial Conference, the Court reserved ruling on Defendants' Motion (D.I. 165) to Preclude Certain Expert Testimony of Douglas Kidder. (*See* D.I. 220 at 56:21 & 60:11). Upon further consideration of the record, the motion is GRANTED-IN-PART and DENIED-IN-PART. First, Defendants contend that Mr. Kidder failed to properly apportion the Covidien license to account for other patents under *Apple Inc. v. Wi-LAN Inc.*, 25 F.4th 960 (Fed. Cir. 2022). The Covidien license stems from prior litigation between Rex Medical and third-party Covidien. In 2019, Rex Medical sued Covidien, asserting infringement of the '650 patent and the '892 patent. (*See* D.I. 166 at 4). Prior to settlement negotiations, Rex Medical dropped the '650 patent from its case. (*See id.*). Rex Medical and Covidien then settled the litigation and entered into a license agreement (*i.e.*, "the Covidien license") that covers the '650 patent and '892 patent along with eight other U.S. patents, seven U.S. patent applications and nineteen patents or applications from countries outside the United States. (*See id.*). The '650 patent is the only patent asserted in this case. Both parties' experts in this litigation have used the Covidien license as a starting point to assess the result of the hypothetical negotiation between the parties and estimate a reasonably royalty. (*See* D.I. 166, Ex. 7 ¶ 59 & D.I. 164, Ex. 1 ¶ 40).

10. Defendants contend that Mr. Kidder used unreliable methods because (1) he failed to apportion the value of the Covidien license between the '650 and '892 patents and (2) he failed to adequately address the value of the patents licensed other than the '650 and '892 patents. (*See* D.I. 166 at 6-10). In *Apple*, the defendant's damages expert, Mr. Kennedy, had relied on "comparable agreements" that defendant was a party to in order to estimate a reasonable royalty. *Apple Inc.*, 25 F.4th at 971-72. One of the agreements listed one of the patents at issue as an "Asserted Patent" along with five other asserted patents. *Id.* at 973. The court observed, "Mr. Kennedy failed to address the extent to which these other patents contributed to the royalty rate in

the Vertu license. Yet he opined that excluding these patents (and the rest of [defendant's] portfolio) from the hypothetical negotiation would have netted Apple only a 25 percent discount." *Id.* The court thus held that "Mr. Kennedy's silence on these equally situated patents is troubling and makes his opinion unreliable." *Id.* at 973-74.

   11. Here, Mr. Kidder assesses the relative value of the patents with the following:

> Most of the value to a license to Rex Medical's patent portfolio to Covidien and/or Intuitive is contained in a license to either the '892 Patent or the '650 Patent. The fact that Rex Medical has only asserted the '892 Patent and the '650 Patent against Covidien and Intuitive indicates that these two patents have the most value to these two companies. Additionally, as discussed previously, the '892 Patent and the '650 Patent describe different design choices but the same stapling innovation. The Rex Medical patent portfolio thus appears to follow the extreme skew in values for most patent portfolios – most, if not all, of the value is contained in the most valuable patent or patents. Thus, the additional value obtained by Covidien for rights to patents other than the '650 and '892 Patents likely accounted for little-to-no value to Covidien. . . . This agreement suggests that a starting point for a Georgia-Pacific analysis is [the lump sum paid by Covidien], subject to some adjustment due to the fact that Covidien obtained rights to patents other than the '650 Patent.

(*See* D.I. 166, Ex. 7 ¶¶ 69-71) (internal citations omitted). Plaintiff argues that Mr. Kidder properly apportioned between the '650 patent and the other patents in the Covidien license. With respect to Defendants' first contention, Plaintiff argues that Mr. Kidder properly explained his apportionment between the '650 and '892 patents because "[i]n Mr. Kidder's opinion, the rights to one of the patents granted the majority of the value; rights to the second patent added only minor design modifications." (D.I. 182 at 9). Plaintiff, however, cites to nothing in Mr. Kidder's report in support of this assertion, and the Court is unable to find this explanation in Mr. Kidder's reports. Rather, Mr. Kidder admitted that he "didn't allocate the [lump sum] at all between the '650 and '892 patent[s]." (D.I. 166, Ex. 1 at 49:6-13). With respect to Defendants' second contention,

Plaintiff points to Mr. Kidder's opinion that the other patents "likely accounted for little-to-no value to Covidien." (*See* D.I. 182 at 11 (quoting D.I. 166, Ex. 7 ¶ 69)). Mr. Kidder based his opinion on the fact that the '650 and '892 patents were the only patents originally asserted and cover "different design choices but the same stapling innovation." (*See* D.I. 166, Ex. 7 ¶ 69). Mr. Kidder, however, admitted that he never "analyze[d] whether any of Rex Medical's licensed foreign patents cover the same stapling innovation as the '650 or '892 patents" and never "analyze[d] whether any of Rex Medical's licensed foreign patents cover any of Covidien's products." (D.I. 166, Ex. 1 at 55:10-56:7). Mr. Kidder thus cannot reliably opine that the other patents account for "little-to-no value to Covidien." Mr. Kidder has failed to adequately address the extent to which '892 and the other patents contributed to the lump sum payment in the Covidien license. Therefore, the Court finds that Mr. Kidder's methods in relying on the Covidien license are unreliable and must be excluded. The Court will grant this portion of Defendants' motion.

12. Second, Defendants take issue with Mr. Kidder's reliance on "Kidder 8" to estimate Covidien sales of licensed products relevant to the Covidien license given that the document is "facially unreliable." (*See* D.I. 166 at 10-16). Kidder 8 is a document that lists product codes and associated financial data. (*See id.* at 11). Prior to the Pretrial Conference, there was confusion regarding the source of the document. Plaintiff clarified at the Pretrial Conference that the document was produced by Covidien in response to a discovery request in the course of the Rex Medical/Covidien litigation. (*See* D.I. 220 at 72:4-22). Therefore, the Court does not see any reliability issues with the document that require exclusion at this time. Defendants' remaining concerns with Mr. Kidder's reliance on the document point to a factual issue. That is, whether this document more accurately reflects the products covered by the Covidien agreement compared

6

with the data Defendants put forth. (*See* D.I. 220 at 56:23-60:10 & D.I. 166 at 14-16). This is a matter properly dealt with through cross-examination. Therefore, the Court denies Defendants' request to preclude Mr. Kidder's reliance on Kidder 8. Finally, Defendants argue that Mr. Kidder's analysis of *Georgia-Pacific* factors 9 and 10 is flawed because he analyzes the benefits of the invalidated claims rather than the asserted one. (*See* D.I. 166 at 17-20). For the reasons stated at the Pretrial Conference, the Court denies this portion of Defendants' Motion. (*See* D.I. 220 at 63:13-64:24).

13.     As explained at the Pretrial Conference, the parties may not provide witness binders or physical copies of documents (demonstratives, deposition transcripts, etc.) to the Court, but the parties must provide witness binders to the witnesses. The parties shall provide electronic copies of ALL trial exhibits to the Courtroom Deputy and Judicial Administrator by NOON on October 14, 2022. The trial exhibits must be labeled with JTX, DTX, or PTX prefixes with exhibit numbers, and the trial exhibits must be organized in a single folder. Additionally, no later than 7:30 a.m. each trial day, the parties shall provide to the Courtroom Deputy and Judicial Administrator electronic copies of witness folders containing the exhibits and demonstratives (if any) to be used on direct examination and cross-examination[5] of any witnesses expected to be called that day.

14.     Any document that is used for impeachment that is not on the exhibit list will not be admitted into evidence.

15.     Any trial logistics should be coordinated through the Courtroom Deputy.

                                                                                          */s/ Maryellen Noreika*
                                                                                          The Honorable Maryellen Noreika
                                                                                          United States District Judge

---

[5]     This includes any deposition transcripts or expert reports to be used with witnesses.